ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAY 10 2004
CLERK, U.S. DISTRICT COURT
By _____ Deputy

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| **RICHARD MOORE, et al.** | : |
| Plaintiff, | : |
| v. | : Civil Action No.: 3: 02-CV 1152-N |
| | : THIS DOCUMENT RELATES |
| **HALLIBURTON COMPANY, et al.** | : TO ALL ACTIONS |
| Defendants. | : |

## MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

### I. INTRODUCTION

Plaintiffs[1], by their undersigned Lead and Liaison Counsel, hereby move this Court for an Order (the "Order"), in the form attached as Exhibit 1 to the Stipulation of Settlement dated May 10, 2004 (the "Stipulation"), granting preliminary approval to the proposed settlement ("Settlement") of the above-captioned securities litigation as embodied in the Stipulation, approving the form and manner of giving notice of the Settlement to the proposed class, and setting a hearing for final approval thereof. The settlement provides for a cash payment for the benefit of the class of $6 million, plus interest earned from the date of deposit with the Escrow Agent.

Plaintiffs respectfully submit this Memorandum in support of the Settlement and request that the Motion be granted because: 1) public policy favors the settlement of litigation, and 2) the Settlement is fair, reasonable and adequate under the governing

---

[1] "Plaintiffs" refers to the three Lead Plaintiffs who are parties to the Memorandum of Understanding and the settlement.

standards in this Circuit for evaluating class action settlements. *Ayers v. Thompson*, 358 F.3d 356 (5th Cir. 2004).[2]

In determining whether preliminary approval of the Settlement is warranted, the sole issue before the Court is whether the Settlement is within the range of what could be found to be fair, adequate, and reasonable, so that notice should be given to the proposed Class, and a hearing scheduled to consider final approval of the settlement. The Court is not required to make a final determination of the merits of the proposed Settlement at this point. *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 430 (N.D. Tx. 2002) ("purpose of preliminary approval is to detect *obvious* defects that will preclude final approval of the settlement, and the purpose of initial certification is so that notice may be sent to the proposed class) (citing, *Manual for Complex Litigation, Third* at 236-37).

As stated in the *Manual for Complex Litigation, Third*, § 23.14 at 187 (West ed. 2000):

> First, the court reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing.

The *Manual Third* defines the Court's duty as follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Id.* at § 30.41, at 285.

---

[2] Derivative Plaintiff's Counsel is submitting a Motion for Preliminary Approval concurrently with the submission of the Plaintiffs' Motion for Preliminary Approval in this settlement. Derivative Plaintiff's Counsel is also submitting a Memorandum in Support of Preliminary Approval of the Derivative Settlement separately.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Description of Litigation

On June 3, 2002, a complaint was filed in this Court against Halliburton and certain of its then-current of former officers and directors, generally alleging violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78 et seq., and Rule 10b-5 promulgated thereunder, on behalf of a class of investors who purchased the common stock of Halliburton on the open market at artificially-inflated prices and were damaged thereby. More particularly, Plaintiffs alleged that Defendants knowingly or recklessly failed to disclose that in the fourth quarter of 1998 Halliburton changed its method of accounting for unapproved claims for cost overruns on long-term, fixed-price design, engineering, procurement and construction projects predominately performed overseas so as to record revenue on such claims when liability was probable and the expected recovery could not be reliably estimated, and that Defendants allegedly knew or recklessly disregarded that Halliburton's reported revenues were overstated due to the inclusion of the unapproved claim revenue (the "Contract Claims.").

Subsequently, eighteen other similar actions were filed. By an Order dated August 12, 2002 (the "Consolidation Order), the Honorable Samuel A. Lindsey consolidated eleven of the securities class actions that had been filed in the District Court for the Northern District of Texas, Dallas Division. At the same time, the consolidated cases were transferred to the Honorable David Godbey. Subsequently, by Joint Stipulation and Pretrial Order No. 1 "Pretrial Order No. 1", the Court consolidated the remainder of the initially-filed eighteen actions under the caption *Moore et al. v. Halliburton et al.*

On April 11, 2003, pursuant to the terms of Pretrial Order No. 1, Lead Plaintiffs' Counsel filed the Consolidated Amended Class Action Complaint, which alleged with greater specificity the Contract Claims. Effective on May 29, 2003, following lengthy settlement negotiations between and among Lead Plaintiffs' Counsel, plaintiff's counsel in the Derivative Action, counsel for Defendants, those parties, as well as counsel for two of the other Lead Plaintiffs, executed a written Memorandum of Understanding ("MOU") setting forth the principle terms of the Settlements of the Securities and Derivative Actions.[3] The fourth Lead Plaintiff, the Archdiocese of Milwaukee Supporting Fund, Inc. ("AMSF"), which is represented by the law firm of Scott & Scott, (AMSF and Scott & Scott are referred to herein as AMSF) did not sign the MOU and expressed their belief that the settlement was not adequate.

Soon thereafter, on June 16, 2003, Lead Plaintiffs' Counsel moved the Court to amend the Complaint – to file a Second Consolidated Amended Class Action Complaint (the "Complaint"). The Complaint generally alleges not only the Contract Claims, but also that: (i) Defendants failed to perform adequate due diligence in connection with Halliburton's 1998 merger with Dresser Industries, Inc. ("Dresser"); (ii) as a consequence of such failure, Halliburton acquired substantial, potential and actual, asbestos liability exposure; (iii) Defendants knowingly or recklessly failed to disclose until June 28, 2001 the true nature and scope of Halliburton's acquired asbestos liability and exposure as a result; and (iv) Defendants improperly accounted for the Dresser merger after it became

---

[3] Pretrial Order No. 1 authorized Lead Plaintiffs' Counsel, Schiffrin & Barroway, LLP, to conduct settlement negotiations with the Settling Securities Defendants. Lead Plaintiffs' Counsel has a direct representation relationship with only one of the four Lead Plaintiffs. Each of the other three Lead Plaintiffs have direct representation relationships with other law firms, each of which is involved in the litigation.

effective by knowingly or recklessly overstating and failing to writedown the value of the assets acquired from Dresser (the "Asbestos Claims.").

In August 2003, two months after Lead Plaintiffs' Counsel sought to amend the Complaint, AMSF filed a purported class action federal securities action against Defendants in this Court, captioned *Kimble v. Halliburton et al.* (the "*Kimble* Action"). The *Kimble* complaint also sets forth the Contract Claims and the Asbestos Claims. On or about March 30, 2004, the *Kimble* Action was consolidated with this Action.

Thereafter, AMSF filed a motion with the Court to have Lead Plaintiffs' Counsel removed from that position on the grounds that Plaintiffs' Lead Counsel had not kept Scott & Scott adequately informed of the settlement negotiations and requested that the Court appoint Scott & Scott as lead counsel. AMSF further argued in support of their motion that the Settlement is allegedly not fair, adequate and in the best interests of the proposed Class because the Lead Plaintiffs' Counsel did not properly value the Settled Claims. AMSF filed this motion without having had access to any formal discovery or any of the confirmatory discovery that Plaintiffs obtained after the parties signed the MOU. The Court denied AMSF's motion after a hearing, but did so without prejudice to renewal of the motion at the Final Settlement Fairness Hearing. The Court noted that AMSF's arguments went primarily to the issue of the fairness of the Settlement, and that the Court would not have a sufficient understanding of the settlement to properly evaluate the merits until the matter was formally put before it at a fairness hearing held for that purpose.

Plaintiffs have entered into this Settlement with an understanding of the strengths and weaknesses of Plaintiffs' claims. This understanding is based on: 1) the investigation

relating to the events and transactions underlying Plaintiffs' claims, including, (a) review and analysis of the public filings made by Halliburton with the SEC; (b) review and analysis of Halliburton's public conference calls, as well as press releases and other public statements issued on behalf of Halliburton; and (c) review and analysis of securities analysts' reports concerning Halliburton: 2) extensive confirmatory discovery, consisting of: (a) the review and analysis of sworn deposition testimony of current and former Halliburton officers, directors and employees and members of Halliburton's outside auditing firm during the Class Period taken by members of the enforcement staff of the SEC's Ft. Worth, Texas Regional Office in connection with their investigation of Halliburton with respect to the Contract Claims and related matters; (b) interviews with current Halliburton employees regarding the claims arising out of and relating to the Dresser merger; (c) review and analysis of the Halliburton documents marked as exhibits by the SEC depositions of Halliburton officers, directors, and employees; (d) review and analysis of other documents regarding the Contract Claims and other matters provided to the SEC by Halliburton; (d) review and analysis of documents relating to the Dresser merger and related issues; and (e) review and analysis of other publicly available information concerning Halliburton, including news articles.

Plaintiffs' have made the decision to enter into the Settlement with knowledge of the facts and circumstances underlying Plaintiffs' claims and the strengths and weaknesses of those claims. In determining to settle this securities action, Plaintiffs have evaluated the SEC discovery and other information obtained from Halliburton, and taken into account the substantial expense and length of time necessary to prosecute this securities action through trial, post-trial motions, and likely appeals, and the significant

uncertainties in predicting the outcome of this complex litigation. Counsel for Plaintiffs believe that the Settlement described herein confers very substantial benefits upon the class. Based upon their consideration of all of these factors, the Plaintiffs and their counsel have concluded that the Settlement is fair, adequate, and reasonable, and that it is in the best interest of the Plaintiffs and the class to settle this action on the terms described herein.

B. **Reasons for the Settlement**

Plaintiffs' Lead Counsel engaged in extensive and intensive arms-length negotiations with counsel for Defendants with respect to the settlement and, in determining to settle the litigation, Plaintiffs' Lead Counsel have evaluated the likelihood of succeeding on the merits, damages, and issues of liability, and believe that the six million dollar ($6,000,000) recovery confers a substantial benefit for the class. Specifically, in evaluating the likelihood of succeeding on the merits and with respect to damages, Plaintiffs' Lead Counsel took into account the risk that the Asbestos Claims may be barred by the applicable statute of limitations, and that with respect to the Contract Claims, the risk that even if liability on the part of one or more of the Defendants might be established, including a finding of materiality, Lead Plaintiffs and the other members of the class might not be able to establish that they suffered any loss or damage as a consequence thereof. Balancing these risks against the expense and length of time necessary to prosecute the Litigation through motions to dismiss, class certification proceedings, full discovery, trial, post-trial motions and likely appeals, and the significant uncertainties in predicting the outcome of the Litigation, Plaintiffs and their counsel have concluded that the Settlement described herein – conferring a

$6,000,000 benefit - is fair, reasonable, adequate and that it is in the best interests of Plaintiffs and the class to settle the litigation on the terms of the Stipulation.

## III. ARGUMENT

### Plaintiffs' Motion for an Order
### Preliminarily Approving the Settlement Should Be Granted

Public policy strongly favors the pretrial settlement of class action lawsuits. *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977); *In re South Cent. States Bakery Products Antitrust Litig.*, 88 F.R.D. 641, 644 (M.D. LA. 1980). Preliminary approval of a proposed settlement is the first step in a two-step process required before a class action may be settled. *Manual Third* at §30.41. First, the court makes a preliminary evaluation of the fairness of the settlement, prior to notice. *Id.* The court may use wide discretion in determining the information that it wishes to consider at this preliminary stage. This initial assessment can be made on the basis of information already known to the court. *Id.* "[I]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, . . . appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing . . ." *Id.* Preliminary approval permits notice to be given to the class members of a hearing on final settlement approval, at which class members and the settling parties may be heard with respect to the final approval of the litigation. *Manual Third* at §23.14.

All the indicia of procedural fairness are present here -- arm's-length negotiations, competent counsel, adequate information about the strengths and weaknesses of the case, and the Settlement falls within the range of reasonableness -- and support submitting the

proposed Settlement to the proposed class members and the Court for their consideration. In addition, the complexity, expense, uncertainty, and likely duration of the litigation also militate in favor of consummating the settlement process. *DiGiacomo v. Plains All Am. Pipeline,* Civil Action No. H-9-4137 and H-9-4212, 2001 U.S. Dist. LEXIS 25532, *14-15 (S.D. Tex. December 19, 2001) (approving securities settlement). Plaintiffs' counsel believe that the proposed Settlement of $6 million will confer upon the Class members a significant benefit, especially given the substantial risks and uncertainties which plaintiffs would have confronted with respect to the statute of limitations issue and the contested issues of materiality and damages. *Id.* *14 (given uncertainty of success in litigation, or success, but involving a small recovery, and certainty of prolonged litigation absent settlement, settlement is fair, reasonable, and adequate).

Finally, this settlement was reached after intense arm's length negotiations between the parties. No evidence has been presented that the Settlement is collusive, and the Court should not be concerned about such issue is this case. The Settlement ensures a substantial and immediate payment to the Class, which is preferable to the very real possibility of a smaller recovery or no recovery at all. Therefore, this Court should grant preliminarily approval to the Settlement.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that their Motion for Preliminary Approval be granted and the Notice Order be entered.

*William B. Federman*

William B. Federman, TBN 00794935
**FEDERMAN & SHERWOOD**
120 N. Robinson, Suite 2720
Oklahoma City, OK 73102
(405) 235-1560/Fax (405) 239-2112
-and-
2926 Maple Avenue, Suite 200
Dallas, Texas 75201
**CO-LIAISON COUNSEL FOR SECURITIES PLAINTIFF**

**SCHIFFRIN & BARROWAY, LLP**
Richard S. Schiffrin
Marc I. Willner
Kay E. Sickles
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**LEAD PLAINTIFF'S COUNSEL**


**STULL, STULL & BRODY**
Jules Brody
6 East 45th Street, 4th Floor
New York, New York 10017

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ**
Fred T. Isquith
Gregory Nespole
270 Madison Avenue
New York, New York 10016

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 10th day of May, 2004, a true and correct copy of the above and foregoing was sent by U.S. Mail, with postage prepaid thereon, to all persons listed on the attached Service List.

*William B. Federman* (by permission)
William B. Federman

Gregory Nespole
Thomas H. Burt
Wolf Haldenstein Adler Freeman
& Herz, LLC
270 Madison Avenue
New York, NY 10016
(212) 545-4600

William B. Federman
Federman & Sherwood
120 N. Robinson, Suite 2720
Oklahoma City, OK 73102
(405) 235-1560/Fax (405) 239-2112

Theodore Carl Anderson, III
Kilgore & Kilgore
3131 McKinney Ave.
Suite 700, LBJ 103
Dallas, TX 75204
(214) 969-9099/Fax (214) 953-0133

Richard Schiffrin
Marc Willner
Schiffrin & Barroway
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004
(610) 667-7706/Fax (610) 667-7056

John Emerson, Jr.
Emerson & Poynter
830 Apollo Lane
Houston, TX 77058
(281) 488-8854/Fax (281) 488-8867

Donald E. Godwin, G. Michael Gruber
Brian N. Hail, Michael K. Hurst
Godwin Gruber
1201 Elm Street, Suite 1700
Dallas, TX 75270-2084
(214) 939-4400/Fax (214) 760-7332

David R. Scott
Scott & Scott, LLC
P. O. Box 192
Colchester, CT 06415
(860) 537-5537/Fax (860) 537-4432

Ronald Stevens
Kirkpatrick & Lockhart
10100 Santa Monica Boulevard, 7th Fl
Los Angeles, CA 90067
(310) 552-5000/Fax (310) 552-500
(215) 545-7200/FAX (215) 545-6535

Timothy R. McCormick
Thompson & Knight, LLP
1700 Pacific Avenue, Suite 3300
Dallas, TX 75201
(214) 969-1700/Fax (214) 969-1751

Robert Edwin Davis
Hughes & Luce, LLP
1717 Main Street, Suite 2800
Dallas, TX 75201
(214) 939-5500/Fax (214) 939-5849

Jules Brody
Stull Stull & Brody
6 East 45th Street
New York, NY 10017
(212) 687-7230/Fax (212) 490-2022

John Gilliam, Esq.
Jenkens & Gilchrist, P.C.
1445 Ross Avenue, Suite 3200
Dallas, Texas 75202-2770
(214) 855-4500/Fax (214) 855-4300