# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| THE ERICA P. JOHN FUND, INC., et al., *On Behalf of Itself and All Others Similarly Situated*,<br><br>Plaintiff,<br><br>vs.<br><br>HALLIBURTON COMPANY and DAVID J. LESAR,<br><br>Defendants. | CIVIL ACTION NO.: 3:02-CV-1152-M<br><br><br>CLASS ACTION |

## LEAD PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Kim E. Miller
*(admitted pro hac vice)*
KAHN SWICK & FOTI, LLC
250 Park Avenue, Suite 2040
New York, NY 10177
Tel: (212) 696-3730
Fax: (504) 455-1498

Lewis S. Kahn
Neil Rothstein
*(admitted pro hac vice)*
KAHN SWICK & FOTI, LLC
206 Covington Street
Madisonville, LA 70447
Tel: (504) 455-1400
Fax: (504) 455-1498

***SPECIAL COUNSEL TO LEAD PLAINTIFF, THE ERICA P. JOHN FUND, INC., AND THE CLASS***

David Boies
*(admitted pro hac vice)*
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY  10504
Tel:  (914) 749-8200
Fax: (914) 749-8300

Carl E. Goldfarb
*(admitted pro hac vice)*
BOIES, SCHILLER & FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL  33301
Tel:  (954) 356-0011
Fax: (954) 356-0022

***LEAD COUNSEL TO LEAD PLAINTIFF, THE ERICA P. JOHN FUND, INC., AND THE CLASS***

# **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................. 4

A.    The 30(b)(6) Topics are Relevant to Plaintiff's Claims and Reasonably Calculated to Lead to the Discovery of Admissible Evidence ................................. 4

    1.    Allegations Regarding the Dresser Merger Have Been Upheld ................. 4

    2.    The Vacated and Reversed Class Certification Opinions Do Not Govern this Motion ...................................................................................... 7

    3.    Defendants' Willingness to Produce Documents Related to the Merger Allegations Undermines Their Argument that Merger Allegations are Irrelevant .................................................................................................... 11

    4.    Plaintiff Has Not Exceeded Its Number of 30(b)(6) Depositions .............. 12

B.    Defendants' Premature Puffery and Confirmatory Statement Arguments Fail Nonetheless ............................................................................................................ 13

    1.    Defendants' Misleading Statements Regarding the Dresser Merger Are Not Inactionable Puffery .......................................................................... 13

    2.    The July 23, 1999 Misleading Statement is Not Confirmatory ................. 15

C.    The 30(b)(6) Topic Relating to Halliburton's Prior Consideration of the Dresser Merger is Relevant to Defendants' Scienter ............................................ 17

# TABLE OF AUTHORITIES

**Page**

## Cases

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5thCir. 2009) ..................................................................... 3, 16

*Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co*,
   597 F.3d 330 (5th Cir. 2010) ..................................................................... 3, 13

*County of Los Angeles v. Davis*,
   440, U.S. 625 (1979) ........................................................................... 1, 10, 11

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   131 S. Ct. 2179 (U.S. 2011) ....................................................................... 7, 10

*FindWhat Investor Group v. FindWhat.com*,
   658 F.3d 1282 (11th Cir. 2011) .................................................................. 3, 16

*Greenberg v. Crossroads Systems, Inc.*,
   364 F.3d 657 (5th Cir. 2004) .......................................................................... 17

*Hoffman v. L&M Arts*,
   No. 3:10-cv-0953-D, 2013 U.S. Dist. LEXIS 24170 (N.D. Tex. Feb. 21, 2013) .................. 5, 6

*In re Bristol-Myers Squibb Sec. Litig.*,
   No. 00-1990, 2005 U.S. Dist. LEXIS 18448 (D. N.J. August 17, 2005)................................. 15

*In re Pfizer Inc., Sec. Litig.*,
   936 F. Supp. 2d 252 (S.D.N.Y. 2013).............................................................. 16

*In re Toyota Motor Corp. Sec. Litig.*,
   2012 U.S. Dist. LEXIS 124438 (C.D. Cal. Mar. 9, 2012)............................... 8, 9, 18

*In re Vivendi Universal, S.A. Sec. Litig.*,
   765 F. Supp. 2d 512 (S.D.N.Y. 2011).............................................................. 16

*Jackson v. Wilson Welding Serv.*,
   2011 U.S. Dist. LEXIS 121725 (E.D. La. Oct. 20, 2011) ...................................... 17

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ......................................................................... 11

*Marathon Oil Co. v. A.G. Ruhrgas*,
   145 F.3d 211 (5th Cir. 1998) ......................................................................... 11

*Martin v. Allstate Insurance Co.*,
   292 F.R.D. 361 (N.D. Tex. 2013) ............................................................... 5, 6, 7

*Mason v. Texaco, Inc.*,
   948 F.2d 1546 (10th Cir. 1991) ......................................................................... 8

*Nathenson v. Zonagen Inc.*,
   267 F.3d 400 (5th Cir. 2001) ......................................................................... 16

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978)......................................................................................... 5

*Quaak v. Dexia, S.A.*,
   445 F. Supp. 2d 130 (D. Mass. 2006) ............................................................. 16

*Ralston Purina Co. v. McFarland*,
   550 F.2d 967 (4th Cir. 1977) ........................................................................... 5

*Ross v. Abercrombie & Fitch Co.*,

2010 U.S. Dist. LEXIS 47620 (S.D. Ohio May 14, 2010) ................................................... 4, 18

*Sao Paulo of the Federative Republic of Braz. v. Am. Tobacco Co.*,
2003 U.S. Dist. LEXIS 3356 (E.D. La. Feb. 25, 2003) ............................................................ 8

*SEC v. Cuban*,
620 F.3d 551 (5th Cir. 2010) ................................................................................................ 9, 10

*SEC v. Cuban*,
2013 U.S. Dist. LEXIS 30324 (N.D. Tex. Mar. 5, 2013) ........................................................ 10

*State Indus. v. Fain*,
2002 U.S. Dist. LEXIS 4506 (N.D. Tex. Mar. 18, 2002) .......................................................... 8

*Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*,
242 F.R.D. 1 (D.D.C. 2007) .................................................................................................... 13

*Thompson v. Altheimer & Gray*,
2001 U.S. Dist. LEXIS 20993 (N.D. Ill. Dec. 18, 2001) .................................................... 8, 10

*Vosgerichian* v. *Commodore Int'l Ltd*,
No. CIV. A 92-CV-4867, 1998 U.S. Dist. LEXIS 17681 (E.D. Pa. Nov. 6, 1998) ................. 15

*Zelman v. JDS Uniphase Corp.*,
376 F. Supp. 2d 956 (N.D. Cal. 2005) .................................................................................... 17

## **Rules**
Fed. R. Civ. P. 26(b) .................................................................................................................. 4
Fed. R. Civ. P. 30(b)(6) ............................................................................................................ 12

## <u>INTRODUCTION</u>

Defendants seek an order discharging themselves of the responsibility to present a corporate representative to testify on topics related to Halliburton's merger with Dresser Industries, even though—as Defendants concede—this is one of three main issues with respect to which Plaintiff alleges Defendants made material misrepresentations. *See* Halliburton's Motion for an Order Protecting It from Plaintiff's Amended Rule 30(b)(6) Deposition Notice Concerning Halliburton's Merger with Dresser Industries [D.E. 527] at 2. All alleged misrepresentations and omissions pertaining to all three of these topics were upheld in the Court's March 28, 2007 Order denying Defendants' motion to dismiss.[1] No binding order has since dismissed or limited these claims. Yet, without citing a single case on-topic, Defendants argue that the Dresser merger allegations were rendered "irrelevant" due to dicta in the reversed District Court and vacated Fifth Circuit class certification opinions that certain statements were either confirmatory or inactionable puffery. D.E. 527 at 8. This argument has no support in the law of this circuit or any other. To the contrary, the Supreme Court of the United States—in a case cited by Defendants—has held that "a decision vacating a judgment necessarily prevents the opinion of the lower court from being the law of the case..." *County of Los Angeles v. Davis*, 440, U.S. 625, 646 n.10 (1979). Thus, the Supreme Court's June 6, 2011 Order vacating the judgment of the Fifth Circuit, and, in turn, the Fifth Circuit's July 20, 2011 Order reversing in full the judgment of this Court, "necessarily prevents" any binding effect of the conclusions reached by this Court and the Fifth Circuit in the November 4, 2008 and February 12, 2010 Orders.

Given the unambiguous controlling authority against them, Defendants quickly retreat from their position, arguing that the vacated or reversed orders, "even if not law of the case, are

---

[1] The March 28, 2007 Order [D.E. 313] denied the motions to dismiss of Defendants David Lesar and Halliburton, but granted the motions to dismiss of Gary Morris, Charles Muchmore and Doug Foshee.

persuasive authority." D.E. 527 at 10.  Defendants are again unable to cite any authority—and Plaintiff is unaware of any—that would apply to the present case, in which Defendants attempt to use the vacated or reversed orders as precedent to dispose of live claims in a discovery motion. Defendants' authority is limited to situations where the courts specifically endorsed a certain aspect of the lower court's decision and the lower court's rulings as to those matters were persuasive at a similar proceeding.  Here, this Court was not instructed to maintain any aspect of its November 4, 2008 Order on remand from the Supreme Court or the Fifth Circuit, and indeed, the Court did not address the issues of puffery or confirmatory statements in its January 27, 2012 Order granting class certification.

Defendants' own conduct throughout the discovery process undercuts their current position, as Defendants—since the vacated November 4, 2008 Order and reversed February 12, 2010 Orders—have agreed to and subsequently produced documents responsive to discovery requests relating to the merger allegations.  *See*, *e.g.*, Halliburton's Responses to Lead Plaintiff's Third Request for Production of Documents Response Nos. 49-50, 54, 56 ("Halliburton agrees to produce non-privileged documents in its possession, custody, or control, if any, relating to any statements in the current complaint made during the class period about the projected savings form the Dresser merger.") App. 05-09.  Defendants willingly produced relevant documents responsive to Plaintiff's document requests regarding the Dresser merger allegations; therefore, Halliburton's argument that presenting a corporate representative on these same topics would cause them "undue burden" and "expense" rings hollow.

Notwithstanding the procedural deficiencies of attacking the viability of claims in a motion for protective order, Defendants' legal and factual arguments regarding puffery and confirmatory statements also fail.  First, the Fifth Circuit's vacated February 12, 2010 opinion

only addressed one statement in the context of puffery, yet Defendants extrapolate that analysis to a number of different statements not even discussed in the opinion. *Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co*, 597 F.3d 330, 342 (5th Cir. 2010). Second, Defendants' argument that certain statements—including statements concerning anticipated cost-savings as a result of the merger—are inactionable confirmatory statements, is both factually and legally wrong. As an initial matter, the July 23, 1999 statement ("The merger results from the Halliburton-Dresser merger are on or ahead of schedule ... Management [now] expects that *annualized merger cost savings* are approximately $500 million") is not confirmatory of a pre-class period March 1, 1999 statement ("cost *saving from the merger and the downturn in activity* should yield over $500 million by the end of 1999 and help offset significant pricing pressure") because the latter statement does not clearly reflect an ongoing, annual cost-saving, like the alleged misrepresentation, as opposed to a one-time saving. Moreover, the Fifth Circuit has held that a statement that moves the market is not confirmatory. *See Alaska Elec. Pension Fund v. Flowserve Corp.,* 572 F.3d 221, 232 (5th Cir. 2009) (statement that moves the market not confirmatory). This brings the Fifth Circuit in line with cases from other circuits that hold that "confirmatory information that wrongfully prolongs a period of inflation - even without increasing the level of inflation - may be actionable under the securities laws." *See FindWhat Investor Group v. FindWhat.com,* 658 F.3d 1282, 1314-15 (11th Cir. 2011). Indeed, the Fifth Circuit's February 12, 2010 Order did not find any of the statements confirmatory, which suggests that it disagreed with the District Court's analysis on this issue.

Finally, Defendants argue that Halliburton's consideration of a merger with Dresser in 1996—two years before they made an about-face and agreed to the very same combination—is not discoverable because it took place too long before the Class Period. That contention is not

consistent with Rule 26, which allows discovery as to "any nonprivileged matter that is relevant to any party's claim or defense...if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b. Particularly in the context of securities litigation, "documents generated prior to the class period can be relevant for a number of purposes. . . .[S]uch documents may well be relevant to the scienter element of the claim, showing to what extent company officials either were aware of undisclosed issues or acted recklessly in that regard." *Ross v. Abercrombie & Fitch Co.,* 2010 U.S. Dist. LEXIS 47620, 9 (S.D. Ohio May 14, 2010). The information regarding Halliburton's previous consideration and rejection of the Dresser merger is directly relevant and likely to lead to the discovery of admissible evidence concerning falsity and Defendants' scienter in connection with the allegations that Defendants overstated the anticipated benefits of the merger.

In summary, Defendants' motion is not the proper vehicle through which this Court should make a merits determination on the actionability of the Dresser allegations, and thus, Defendants' motion should be denied.

## ARGUMENT

### A.    The 30(b)(6) Topics are Relevant to Plaintiff's Claims and Reasonably Calculated to Lead to the Discovery of Admissible Evidence

#### 1.    Allegations Regarding the Dresser Merger Have Been Upheld

While acknowledging that Plaintiff's allegations regarding the Dresser merger represent one of three main categories of allegations in the Complaint[2], Defendants nonetheless argue that Plaintiff's 30(b)(6) topics related to the Dresser merger are not an appropriate area of inquiry because they are irrelevant. [D.E. 527] at 8. Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any

---

[2] The "Complaint" refers the Fourth Consolidated Amended Complaint for Violation of the Securities Exchange Act of 1934 filed on April 4, 2006 [D.E. 246].

party's claim or defense...."  Relevant information includes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Relevancy is "construed broadly" (*Id.*, at 350), such that information "germane to the subject matter of the pending action...[is] therefore properly within the scope of discovery."  *Ralston Purina Co. v. McFarland*, 550 F.2d 967, 973 (4th Cir. 1977).

Defendants point to no case—and Plaintiff does not know of one—where a court has issued a protective order because a premature merits holding in a vacated or reversed order rendered the topics pertaining to one of the plaintiff's otherwise viable claims "irrelevant." Instead, Defendants cite *Hoffman v. L&M Arts*, No. 3:10-cv-0953-D, 2013 U.S. Dist. LEXIS 24170 (N.D. Tex. Feb. 21, 2013), and *Martin v. Allstate Insurance Co.*, 292 F.R.D. 361 (N.D. Tex. 2013), in support of the issuance of protective orders for non-relevant 30(b)(6) topics. However, neither of these cases even remotely resembles the present case, which involves topics indisputably connected with claims deemed actionable.

For example, in *Hoffman*, plaintiff noticed two nearly identical 30(b)(6) notices to two different defendants and both defendants filed motions for protective orders.  2013 U.S. Dist. LEXIS 24170, at *3-5.  The magistrate judge denied one of the motions and granted the other. *Id.*  At issue in the case was an agreement to sell a painting, and the topics for which the magistrate judge found "not relevant and discoverable" as to one of the defendants involved 1) people who were unaware of or were unrelated to the painting at issue; 2) sales of unrelated pieces of artwork; and 3) complex electronic discovery issues that expanded beyond the defendant's document retention systems.  *Id.* at *4-5.  The magistrate judge allowed plaintiff to cover these same topic areas as to the other defendant, so that defendant objected to the

magistrate judge's holding.  The district court re-referred the motion to the magistrate judge with the instruction to explain why the motions received disparate treatment if the protective order is not granted, and the magistrate judge again denied the motion for protective order.  *See Hoffman v. L&M Arts*, No. 3:10-cv-0953-D, Dkt. No. 427: Sealed Amended Order Denying Motion for Protective Order (March 19, 2013).

Unlike the 30(b)(6) topics involved in *Hoffman*, the 30(b)(6) topics covered in Plaintiff's Notice to Defendants in this case are intrinsically related to the Dresser merger allegations sustained in the Complaint.  Plaintiff is not requesting that Defendants present a corporate representative to testify regarding other mergers, but rather topics specific to the merger between Halliburton and Dresser.  Furthermore, the magistrate judge in *Hoffman* ultimately denied defendant's motion for protective order.

*Martin* is similarly distinguishable.  In *Martin*, defendant filed a motion for protective order arguing that twenty-six of the 30(b)(6) topics were not relevant to plaintiff's claims.  292 F.R.D. at 363-64.  The court held that the majority of these topics were relevant to plaintiff's claims and overruled defendant's objections.  *Id*. at 366-67.  The few topic areas to which the court granted defendant's motion were very different from those sought in this case.  For example, some of the topics included "non-merits" based discovery regarding defendants' document retention and preservation practices, defendant's efforts in responding to discovery requests, and the date by which the defendants anticipated plaintiff would sue.  *Id*. at 363-64.  Another topic which was deemed irrelevant concerned the knowledge of a third-party employee, and the court held that to the extent that plaintiff believed that information to be relevant, she could depose that individual directly.  *Id*. at 367-68.  As to the remaining two topics for which

the court granted the protective order, the court did so not on the grounds that the topics were irrelevant, but rather because the issues were either undisputed or overbroad. *Id*. at 367.

Thus, in contrast to *Hoffman* and *Martin*, the topics upon which Halliburton is asked to present a 30(b)(6) witness to testify are directly relevant to the Dresser merger allegations contained in the Complaint. In fact, Defendants do not argue that the 30(b)(6) topics are irrelevant to Dresser merger allegations—and indeed, readily admit the opposite[3]—but rather, they argue that the reversed November 4, 2008 and vacated February 12, 2010 Orders rendered the Complaint's well-pleaded allegations pertaining to those topics "irrelevant." [D.E. 527] at 7-8. Nowhere in *Hoffman* or *Martin* do the courts reach such a conclusion. If anything, *Hoffman* and *Martin* support the relevance of Plaintiff's 30(b)(6) topic areas and weaken Defendants' position for a protective order.

2.      The Vacated and Reversed Class Certification Opinions Do Not Govern this Motion

The question of whether Plaintiff established loss causation was not ripe for review at class certification, and thus, any conclusion reached by the District Court and Fifth Circuit as to that issue is not binding. *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2187 (U.S. 2011). A review of this Court's January 27, 2012, order granting class certification and the Fifth Circuit's April 30, 2013 Order affirming that order makes clear that any discussion of Defendants' alleged misleading statements and omissions relating to the Dresser merger is properly left for a later stage of the litigation as there is not a single reference in either opinion to the Dresser allegations, puffery, or confirmatory statements. In fact, this Court's Order explicitly states:

---

[3] *See, e.g.*, D.E. 527 at 12, 14-15 (Topics 5, 8-12, 17-19 all seek testimony "regarding the estimated $500 million in cost savings" from the Dresser merger; Topics 1-3, 6-7, 13-14 seek testimony regarding "Dresser merger topics."

> Following the law in the Fifth Circuit pertaining to loss causation, this Court denied class certification, stating that but for Fifth Circuit law on loss causation, it would certify the class. The Fifth Circuit affirmed on that same basis, but on June 6, 2011, the Supreme Court reversed the decision of the Fifth Circuit, holding that Plaintiff need not prove loss causation as a prerequisite to class certification.

[D.E. 470] at 1. Because the analysis of the Dresser merger allegations made by this Court and the Fifth Circuit was in the context of its premature and so improper loss causation analysis, any rulings as to the actionability of those allegations were clearly disturbed when those decisions were reversed and vacated. *State Indus. v. Fain*, 2002 U.S. Dist. LEXIS 4506, 9-10 (N.D. Tex. Mar. 18, 2002) ("By vacating the order...the Court treats the situation as though the order had never been entered."); *Sao Paulo of the Federative Republic of Braz. v. Am. Tobacco Co.*, 2003 U.S. Dist. LEXIS 3356, 7 (E.D. La. Feb. 25, 2003) (To "vacate" means "to nullify or cancel; make void; invalidate.") quoting BLACK'S LAW DICTIONARY (7th ed. 1999); *Thompson v. Altheimer & Gray*, 2001 U.S. Dist. LEXIS 20993, *19 n.10 (N.D. Ill. Dec. 18, 2001) (determining that law of the case does not apply to reversed orders because "[w]hen a higher court reverses a judgment or ruling made by a lower court...that judgment is "'without any validity, force or effect[.]'" (quoting *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1551 (10th Cir. 1991).

In *In re Toyota Motor Corp. Sec. Litig.*, 2012 U.S. Dist. LEXIS 124438 (C.D. Cal. Mar. 9, 2012), the special master rejected defendants' exact same attempts to narrow discovery using loss causation arguments. In *Toyota*, the defendants attempted to limit discovery to topics focused on "actionable statements" and that other matters were "irrelevant." *Id.* at *42, 49. These arguments were roundly rejected for the same reasons Plaintiff espouses here:

> Defendants' proposed limitation on discovery is based, in large part, on the contention that Plaintiff will not be able to prove loss causation as to other, undisclosed causes of unintended acceleration. These arguments may gain some

traction at the summary judgment or at trial; they are not relevant for purposes of limiting discovery, and defendants offer no authority to suggest otherwise.

*Id*. at 41.  The court continued:

Defendants' suggestion that discovery should be limited to discrete issues bearing on the remaining Actionable Statements is inconsistent with the liberal policies governing discovery, the allegations in the Complaint, and the Court's Order. While discovery will doubtless focus on the claims and defenses relating to those statements, the Actionable Statements do not bound the limits of relevant or potentially relevant information. As already discussed, the allegations and statements referenced in the Complaint bear directly on, and are relevant to, the falsity, materiality, and loss causation issues implicated by the Actionable Statements, including events and statements made well before the Actionable Statements were made or corrected.

*Id.* at 45.  Here, like the defendants in *Toyota*, Defendants try to conflate the pleading and proof requirements for loss causation with the scope of discovery; however, Defendants' argument is even less persuasive here where the Dresser merger allegations have been held actionable.

Defendants' cases cited in advance of their position are inapposite.  In *SEC v. Cuban*, the Fifth Circuit reviewed the district court's opinion granting a motion to dismiss, and did not reverse a portion of the district court's analysis concerning the law governing the motion.  620 F.3d 551, 558 (5th Cir. 2010) ("Given the paucity of jurisprudence on the question of what constitutes a relationship of 'trust and confidence' and the inherently fact-bound nature of determining whether such a duty exists, we decline to first determine or place our thumb on the scale in the district court's determination of its presence or to now draw the contours of any liability that it might bring, including the force of Rule 10b5-2(b)(1).").  Specifically, the Fifth Circuit agreed with the district court's analysis of how the SEC could assert an insider trading violation under a misappropriation theory.  *Id.*  Then, when the Fifth Circuit reviewed all the facts alleged in the complaint *de novo*, it reached a different conclusion regarding the adequacy of the SEC's pleading.  *Id.*  Later, when the defendant moved for summary judgment, the district

court applied the law from its vacated motion to dismiss opinion that the Fifth Circuit had specifically endorsed. *SEC v. Cuban*, 2013 U.S. Dist. LEXIS 30324, at *6 n.2 (N.D. Tex. Mar. 5, 2013).

In contrast to the Fifth Circuit's endorsement of the district court's legal analysis in *Cuban*, the Supreme Court in this case reversed the Fifth Circuit's February 12, 2010 Order in its entirety and did not speak to the analysis of either the Fifth Circuit or this Court as it related to the Dresser merger allegations. *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. at 2187. Indeed, the Supreme Court held that any analysis with regard to loss causation was premature at the class certification stage, and thus, the law of the case doctrine does not apply here. *Id.* at 2186; *County of Los Angeles v. Davis*, 440 U.S. 625, 646 n.10 (1979) ("a decision vacating a judgment necessarily prevents the opinion of the lower court from being the law of the case"); *Thompson v. Altheimer & Gray*, 2001 U.S. Dist. LEXIS 20993, *19 n.10 (N.D. Ill. Dec. 18, 2001) (holding that law of the case does not apply to reversed orders).

Anticipating the inapplicability of the law of the case doctrine in these circumstances, Defendants cite cases where courts have found lower court conclusions persuasive if they were not disturbed on appeal. Defendants' argument obfuscates the fact that if the vacated and reversed orders of this Court and the Fifth Circuit are not law of the case—and they are not—this Court cannot use those determinations as binding for the purposes of a discovery motion. *County of Los Angeles,* 440 U.S. at 646 n.10. Defendants' cases are distinguishable. Here, no aspect of the loss causation analysis was preserved. For example, in *County of Los Angeles v. Davis*, the Supreme Court left "the decision of the Court of Appeals on the merits as the most pertinent statement of the governing law, even if that decision is not directly binding." 440 U.S. at 646. The case *Marathon Oil Co. v. A.G. Ruhrgas*, also cited by Defendants, again involved a

completely different scenario. In *Marathon Oil*, a Fifth Circuit *en banc* panel vacated an earlier Fifth Circuit panel decision, and instructed the district court that it could consider a specific portion of the vacated opinion to be persuasive, but noted "that opinion has been vacated and thus is no longer binding precedent." 145 F.3d 211, 225 n.23 (5th Cir. 1998). The final case cited by Defendants, *Maher v. Zapata Corp.*, does not even resemble the case at bar. In *Maher*, the Fifth Circuit found that rulings from a parallel case in a different circuit were persuasive for determining whether a district court judge abused his discretion in approving a settlement. 714 F.2d 436, 455 (5th Cir. 1983).

Defendants do not cite a single case to support their extraordinary position that a vacated or reversed opinion on class certification has any binding or even persuasive effect on a motion for protective order. Defendants' empty prognostications as to how this Court may treat Plaintiff's claims at summary judgment do not affect Halliburton's responsibilities for producing a representative to testify at a 30(b)(6) deposition on topics relevant to Plaintiff's claims.

3.     Defendants' Willingness to Produce Documents Related to the Merger Allegations Undermines Their Argument that Merger Allegations are Irrelevant

Defendants' suggestion that the 30(b)(6) topics are irrelevant is also undermined by their willingness to produce documents on these same topics. On July 8, 2013, Plaintiff served its Third Request for the Production of Documents, of which at least nine requests concerned the Dresser merger. *See* App. 14-15, Doc. Request Nos. 49-57. Defendants later agreed to produce documents responsive to a number of these requests, indicating their acknowledgement of the relevance of these topic areas to Plaintiff's claims. *See*, *e.g.*, App. 05-09, Halliburton's Responses to Lead Plaintiff's Third Request for Production of Documents Response Nos. 49-50, 54, 56 ("Halliburton agrees to produce non-privileged documents in its possession, custody, or control, if any, relating to any statements in the current complaint made during the class period

11

about the projected savings from the Dresser merger."). Indeed, Halliburton subsequently produced documents responsive to those requests.

Notably, Defendants responded to these document requests concerning the Dresser merger on August 7, 2013, well after the issuance of the opinions that Defendants argue rendered the merger allegations irrelevant. If the reversed November 4, 2008 Class Certification Order and February 12, 2010 Fifth Circuit affirmance held any precedential weight or persuasiveness as Defendants now vigorously argue, Defendants would have refused to produce documents responsive to requests concerning the Dresser merger, on the grounds that the sought discovery was not relevant because the burden and expense of reviewing and producing such Dresser merger documents would have certainly outweighed the preparation of a corporate representative for a 30(b)(6) deposition.

4.    Plaintiff Has Not Exceeded Its Number of 30(b)(6) Depositions

Defendants' suggestion that Plaintiff has somehow reached its limit of 30(b)(6) deposition hours has no basis in law, as tellingly evidenced by their failure to cite any authority on issue. Moreover, the time Defendants spent preparing its previous 30(b)(6) deponents does not relieve them of the responsibility to present a corporate representative knowledgeable of viable claims. In reality, the Federal Rules do not restrict the number of 30(b)(6) depositions taken by a party (*see* Fed. R. Civ. P. 30(b)(6)), and bestow upon a deponent the "duty to designate more than one deponent if it is necessary to do so in order to respond to the relevant areas of inquiry that are specified with reasonable particularity by the plaintiff." *Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 242 F.R.D. 1, 5 (D.D.C. 2007) (ordering defendant "to provide as many 30(b)(6) witnesses as may be necessary to the relevant areas of inquiry."). Furthermore, Plaintiff has yet to even approach the 50 deposition limit set in the August 6, 2007 Scheduling Order, which also states: "Seven (7) hours of Rule 30(b)(6) testimony will count as

one (1) deposition under the deposition limit...irrespective of the number of witnesses who give that testimony or the number of days in which that testimony is given." D.E. 338 at 4.

> **B.** **Defendants' Premature Puffery and Confirmatory Statement Arguments Fail Nonetheless**

Defendants incorrectly argue that every alleged misleading statement and omission regarding the merger is either inactionable puffery or a confirmatory statement (D.E. 527 at 10-14).

> 1. Defendants' Misleading Statements Regarding the Dresser Merger Are Not Inactionable Puffery

Defendants' attempt to cull the Fifth Circuit's discussion of a single statement regarding the anticipated benefits of the Dresser merger, and extrapolate from that discussion a wholesale pronouncement that all 30(b)(6) topics related to the purported puffery statement are not discoverable, is specious at best. The Fifth Circuit's vacated opinion pointed to a single statement from Dick Cheney that "[t]he merger with Dresser Industries is now behind us" and "[t]he potential rewards to our shareholders are vast" and noted that "this statement, appearing in a letter in Halliburton's 1999 Annual Report, is the kind of 'generalized positive statement[ ] about a company's progress [that is] not a basis for liability.'" *Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co*, 597 F.3d 330, 342 (5th Cir. Tex. 2010). The Fifth Circuit did not discuss any other alleged misstatement in the context of puffery.

Even though the Fifth Circuit's holding has no binding or persuasive effect that would exempt Defendants from presenting a corporate representative to testify regarding that statement, Plaintiff's amended 30(b)(6) notice did not include a topic regarding the issuance of it. Defendants assert that Topic 4 seeks such testimony; however, Topic 4 only sought testimony regarding Halliburton's responses to a number of Plaintiff's interrogatories; it's in response to Interrogatory No. 12, where Defendants responded:

By the date of this statement by Mr. Cheney, more than 15 months had passed since the Halliburton-Dresser merger had closed, and almost two years had elapsed since the merger was first announced. As detailed in Halliburton's conference calls and quarterly reports, shortly after the merger closed in October 1998 and continuing through 1999, Halliburton executed a plan to merge the Halliburton and Dresser operations. As further detailed in those quarterly reports, the merger plan had been substantially completed by the end of 1999. For example, the announced plan included an estimated reduction in workforce of 10,850 employees and the closure of approximately 400 facilities. By the end of 1999, Halliburton has exceeded the total number of expected employee reductions with a net headcount reduction of over 14,000 employees since the announcement of the merger, had vacated approximately 452 facilities, and had sold o returned to the owner approximately 343 of those properties.

*See* D.E. 528 at 74..  Defendants also point to Topic 20, which seeks "information regarding the specifics of any 'rewards' the shareholders received as a result of the Dresser merger" and argue this topic is somehow off-limits for discovery because of the Fifth Circuit's discussion of puffery, yet this topic seeks information regarding actual rewards shareholders received as a result of the merger, not the potential rewards anticipated in Cheney's statement.

Defendants then argue that they should not have to "bear the burden" of presenting a corporate representative to testify regarding other Halliburton statements made during the Class Period that: 1) were not identified as misrepresentations in Plaintiff's interrogatory responses; and 2) that they deem "quintessential statements of puffery."  D.E. 527 at 11-12.  The proper scope of a 30(b)(6) deposition is not nearly as limited as Defendants suggest.  The Federal Rules of Civil Procedure plainly allow parties to seek discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense...if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b).  Furthermore, the district court already considered and rejected Defendants' arguments of puffery with regard to the various misrepresentations in the complaint (D.E. 256 at 6-7, 20; D.E. 260 at 16 n.17), and held that Plaintiff adequately alleged materially false and misleading statements concerning the

anticipated synergies arising from the merger with Dresser. *See* D.E. 313 at 1-2; *see also In re Bristol-Myers Squibb Sec. Litig.,* No. 00-1990, 2005 U.S. Dist. LEXIS 18448, at *72, *145 (D. N.J. 2005) (for purposes of puffery, court's ruling on motion to dismiss will only be reexamined at summary judgment with the presentation of evidence that alters "the fundamental nature" of the statements); *Vosgerichian* v. *Commodore Int'l Ltd,* No. CIV. A 92-CV-4867, 1998 U.S. Dist. LEXIS 17681, at *12 (E.D. Pa. Nov. 6, 1998) (finding court's ruling on issue of "puffery" on motion to dismiss binding for purposes of summary judgment).

Defendants claim in a declaration, that they estimate it would take "300 -500 hours" of attorney time, excluding the time of in-house counsel, to prepare a corporate designee to testify on the limited topics at issue.  Def. App. at 003.  Defendants' estimate equates to 1 ½ to 2 ½ months of work for a lawyer working 200 hours a month.  While Defendants are entitled to spend as much attorney time preparing a 30(b)(6) designee as they wish, voluntarily devoting an excessive and unheard of amount of time preparing a witness does not reasonably support their burdensome argument.

### 2.      The July 23, 1999 Misleading Statement is Not Confirmatory

Defendants' argument that Plaintiff's alleged misrepresentations regarding the "anticipated annual benefits of $500 million a year resulting from the Dresser merger" are confirmatory, fails for two reasons: 1) the July 23, 1999 alleged misleading statement—the first class period statement at issue—is not confirmatory of a prior statement; and 2) even if it was, the statement is actionable.

First, the July 23, 1999 alleged misleading statement is significantly different from the pre-class period statement of March 1, 1999. *Compare* the March 1, 1999 statement ("cost *saving from the merger and the downturn in activity* should yield over $500 million by the end of 1999 and help offset significant pricing pressure") *with* the July 23, 1999 statement ("The merger

results from the Halliburton-Dresser merger are on or ahead of schedule ... Management [now] expects that *annualized merger cost savings* are approximately $500 million"). *See* D.E. 246 at ¶¶93, 110. Not only does the earlier statement quantify the cost saving projected from the merger "and the downturn in activity," while the later statement is about savings from the merger alone, but the later statement also projects "annualized" savings of $500 million, while the earlier statement explains that the merger should yield the $500 million by the end of 1999, and certainly could include one-time savings.

In any event, even assuming *arguendo* that the statement is confirmatory, the Fifth Circuit's case law shows it is actionable. In *Nathenson v. Zonagen Inc.,* 267 F.3d 400, 419 (5th Cir. 2001), the court held that in "certain special circumstances" false and misleading statements that confirm what the market already believes are actionable if the statements prevent the stock price from falling to the level the market would set if the truth were revealed. That is precisely the case here. *See also Alaska Elec. Pension Fund v. Flowserve Corp.,* 572 F.3d 221,232 (5th Cir. 2009) (statement that actually moves the market not confirmatory). The approach in *Nathenson* and *Flowserve* brings the Fifth Circuit closer in line with other circuits to consider the issue, all of which hold that confirmatory statements may be actionable. *See, e.g., FindWhat Investor Group v. FindWhat.com,* 658 F.3d 1282, 1314-15 (11th Cir. 2011) ("confirmatory information that wrongfully prolongs a period of inflation - even without increasing the level of inflation - may be actionable under the securities laws."); *In re Pfizer Inc., Sec. Litig.*, 936 F. Supp. 2d 252, 264 (S.D.N.Y. 2013) ("a misstatement may cause inflation simply by maintaining existing market expectations, even if it does not actually cause the inflation in the stock price to increase on the day the statement is made.") (quoting *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 561-62 (S.D.N.Y. 2011); *see also Quaak v. Dexia, S.A.*, 445 F. Supp. 2d

16

130, 142 (D. Mass. 2006) (rejecting the defendant's argument that confirmatory information negates the fraud-on-the-market presumption, holding that *Greenberg v. Crossroads Systems, Inc.*, 364 F.3d 657 (5th Cir. 2004) "simply stands for the proposition that, at summary judgment, a plaintiff must prove "that a stock's price was actually affected by an allegedly false statement.").

Moreover, the Fifth Circuit's silence as to whether the alleged misleading statements regarding the Dresser merger were confirmatory implies that it did not agree with this Court's analysis on the issue.  Because Halliburton's stock price was affected by the misrepresentations regarding the benefits of the Dresser merger—which, again, is an issue for summary judgment, not a discovery motion—and because the July 23, 1999 alleged misleading statement is significantly different from the pre-class period statement of March 1, 1999, the Dresser merger allegations are not inactionable confirmatory statements.

### C.      The 30(b)(6) Topic Relating to Halliburton's Prior Consideration of the Dresser Merger is Relevant to Defendants' Scienter

Defendants also argue that Plaintiff cannot seek information regarding Halliburton's consideration of a merger with Dresser in 1996, because those events took place too long before the Class Period.  D.E. 527 at 15.  No such standard exists.  Generally, "[d]iscovery is to be limited to the relevant time period; but information for years prior or subsequent to the specific period covered by the dispute may still be relevant to Plaintiffs' claims." *Jackson v. Wilson Welding Serv.*, 2011 U.S. Dist. LEXIS 121725, *11 (E.D. La. Oct. 20, 2011); *Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956, 970 (N.D. Cal. 2005) ("class period dates function only to define the plaintiff class, not to restrict the universe of relevant or actionable facts in this case."). As explained by the court in *Ross v. Abercrombie & Fitch Co.*, information prior to the Class Period can be particularly relevant in securities litigation:

> [D]ocuments generated prior to the class period can be relevant for a number of purposes, including demonstrating that certain indicators, when compared to prior years or quarters, should have been signals to corporate officials that the situation was not as rosy as public announcements, projections, or failures to disclose might have portrayed. Finally, plaintiff is correct in its argument that such documents may well be relevant to the scienter element of the claim, showing to what extent company officials either were aware of undisclosed issues or acted recklessly in that regard. As a general matter, therefore, the Court finds that the documents in question fall closer to the core of plaintiff's claims than they do to the outer reaches of relevance.

2010 U.S. Dist. LEXIS 47620, 9 (S.D. Ohio May 14, 2010); *see also In re Toyota Motor Corp.*

*Sec. Litig.*, 2012 U.S. Dist. LEXIS 124438, 21 (C.D. Cal. Mar. 9, 2012) ("facts predating the

class period are relevant to establish that statements made during the class period were materially

false [and] 'to confirm what a defendant should have known during the class period.'") (allowing

discovery from over four years prior to the start of the class period.).

Here, the information sought by Plaintiff is relevant to falsity and Defendants' scienter.

Plaintiff alleges that Defendants overstated the anticipated benefits of Halliburton's merger with

Dresser, and directly relevant to whether they knew or recklessly made false statements about

that merger is their reasoning for considering, yet rejecting, such an identical transaction with

Dresser two years prior to the effectuation of the merger.

## CONCLUSION

For the foregoing reasons, Defendants' motion for a protective order should be denied.

Dated:  June 19, 2014                             Respectfully submitted,

/s/ Kim E. Miller                                 David Boies
Kim E. Miller                                     *(admitted pro hac vice)*
*(admitted pro hac vice)*                         BOIES, SCHILLER & FLEXNER LLP
KAHN SWICK & FOTI, LLC                            333 Main Street
250 Park Avenue, Suite 2040                       Armonk, NY 10504
New York, NY 10177                                Tel:  (914) 749-8200
Tel: (212) 696-3730                               Fax:  (914) 749-8300
Fax: (504) 455-1498

                                                  Carl E. Goldfarb

Lewis S. Kahn
Michael Swick
Neil Rothstein
*(admitted pro hac vice)*
KAHN SWICK & FOTI, LLC
206 Covington Street
Madisonville, LA 70447
Tel: (504) 455-1400
Fax: (504) 455-1498

***SPECIAL COUNSEL TO LEAD
PLAINTIFF, THE ERICA P. JOHN
FUND, INC., AND THE CLASS***

*(admitted pro hac vice)*
BOIES, SCHILLER & FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
Tel: (954) 356-0011
Fax: (954) 356-0022

***LEAD COUNSEL TO LEAD PLAINTIFF,
THE ERICA P. JOHN FUND, INC., AND
THE CLASS***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 19, 2014, I served the attached document via

CM/ECF System to the following counsel of record.

Robb L. Voyles
Jessica B. Pulliam
Tom O'Brien
John Lawrence
Amanda Hix
BAKER BOTTS, LLP
2001 Ross Avenue, Suite 600
Dallas, Texas 75201-2980
Tel.: (512) 322-2500
Fax: (512) 322-2501
**Robb.Voyles@bakerbotts.com**
**Jessica.Pulliam@bakerbotts.com**
**tom.obrien@bakerbotts.com**
**john.lawrence@bakerbotts.com**
**amanda.hix@bakerbotts.com**

David D. Sterling
Leslie Buenzow
BAKER BOTTS, LLP
910 Louisiana Street
Houston, Texas 77002-4995
Tel: (713) 229-1234
Fax: (713) 229-2099
**David.Sterling@bakerbotts.com**
**leslie.buenzow@bakerbotts.com**

/s/ Kim E. Miller
    Kim E. Miller