IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE ERICA P. JOHN FUND, INC., On Behalf of Itself and All Others Similarly Situated, <br><br>  Lead Plaintiff, <br><br> vs. <br><br> HALLIBURTON COMPANY and DAVID J. LESAR, <br><br>  Defendants. | § § § § § § § § § § § § § | Civil Action No. 3:02-CV-1152-M |

**HALLIBURTON'S REPLY IN SUPPORT OF ITS MOTION
FOR AN ORDER PROTECTING IT FROM THE FUND'S
<u>REQUEST FOR TESTIMONY IRRELEVANT TO PRICE IMPACT</u>**

The Fund continues to make the same argument this Court rejected more than two months ago when staying merits discovery: that Mr. Lesar and Mr. Foshee "may have information . . . regarding how [] asbestos verdicts and judgments as well as other corrective disclosures affected Halliburton's stock price."[1]  In support, the Fund now cites internal and public statements concerning two dates on which Halliburton's stock price declined following disclosures the Fund contends were corrective.  But this Court and the Fifth Circuit have determined that neither of these disclosures were corrective.  And none of the statements by Mr. Lesar or Mr. Foshee indicate that either has any personal knowledge relevant to the question before the Court—whether any *alleged misrepresentation* or the *correction* of any alleged misrepresentation actually affected the price of the stock.  *Halliburton Co. v. Erica P. John Fund, Inc. ("Halliburton II")*, 134 S. Ct. 2398, 2414 (2014).  Because the testimony the Fund seeks is not relevant to price impact, and would serve only to burden Halliburton's CEO and a

---

[1] Pl.'s Post-Hr'g Br. on Mot. to Stay, D.E. 559, Ex. A at 1 (July 21, 2014).

1

third party, Halliburton's motion for protection should be granted.

I. **The only evidence relevant to price impact is evidence of whether any alleged misrepresentation affected the stock price at the time it was made.**

Halliburton may rebut the fraud-on-the-market presumption through "evidence that the asserted misrepresentation (or its correction) did not affect the market price of [its] stock." *Halliburton II*, 134 S. Ct. at 2414. Mr. Lesar's and Mr. Foshee's testimony is not relevant to price impact because it is not relevant to (1) whether any of the Fund's alleged corrective disclosures were "correction[s]" of any "asserted misrepresentation," or (2) whether such a correction "affect[ed] the market price," resulting in a statistically significant decline in the stock price. *Id.*; *see In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480, 490 (S.D.N.Y. 2011).

II. **Mr. Lesar's testimony is not relevant to price impact.**

The Fund argues that Mr. Lesar's testimony will be relevant to two of the ten dates on which the Fund alleges corrective disclosures: June 28 and December 7, 2001. Resp. at 4, 7. On June 28, Halliburton announced that Harbison-Walker recently requested that Halliburton provide it with financial assistance related to asbestos claims Harbison-Walker had assumed in 1992. Compl. ¶ 170; *Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co. ("AMSF I")*, No. 3:02-CV-1152-M, 2008 WL 4791492, at *5 & n.26 (N.D. Tex. Nov. 4, 2008). On December 7, Halliburton issued a press release discussing recent asbestos verdicts against the Company. Compl. ¶ 191; *AMSF I*, 2008 WL 4791492, at *9.

*June 28, 2001.* The only potential testimony the Fund identifies concerning the June 28 disclosure concerns statements Mr. Lesar made eight days later in a July 6, 2001 letter to Halliburton's directors. The Fund argues that this letter is "probative of how the June 28 press release impacted Halliburton's stock price." Resp. at 6. However, the question relevant to price impact is not whether the June 28 press release impacted Halliburton's stock price, but rather

2

whether "*the alleged misrepresentations* affected the market price in the first place." *Halliburton II*, 134 S. Ct. at 2414 (emphasis added).  This question turns on (1) whether the June 28 press release was a "correction" of any "asserted misrepresentation," and if so, (2) whether that correction resulted in any statistically significant drop in the stock price.  *Id*.; *see Moody's*, 274 F.R.D. at 490.  The Fund provides no basis for concluding that Mr. Lesar has any admissible testimony concerning either issue.

First, the question whether the June 28 disclosure was "corrective" is one that this Court and the Fifth Circuit have previously answered by comparing the disclosure itself to the alleged misrepresentations.  *AMSF I*, 2008 WL 4791492, at *5–*6 (holding that "the disclosure does not specifically reveal any misrepresentation of fraud in Halliburton's prior asbestos estimates") (internal quotation marks omitted); *Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co. ("AMSF II")*, 597 F.3d 330, 339–40 (5th Cir. 2010) ("The June 28, 2001 press release does not correct a specific misrepresentation by revealing any previously obscured truth.  Nowhere in the release is there any mention of prior asbestos reserve estimates, and Plaintiff makes no argument that Halliburton made prior statements about exposure from claims related to Harbison-Walker.").

Consistent with this Court's and the Fifth Circuit's conclusions, Halliburton's expert, Lucy Allen, has opined that this is a question that can and should be answered based on publicly available information.  She concluded "[t]here is no indication from my review of the public record that the market believed Halliburton released information on June 28, 2001 that revealed a prior falsity."[2]  Ms. Allen acknowledged public comments concerning the potential impact of the change in circumstances described in the announcement—for example, she cites one analyst report stating that the announcement "could depress [Halliburton's] multiple" and another stating

---

[2]   Allen Rpt. ¶ 282, D.E. 573-1, App. 000128.

"[w]e do not believe HAL will be materially impacted."[3] But her analysis focused on the proper question—whether the announcement was *corrective* of the alleged misrepresentation.[4]

Mr. Lesar's July 6 letter addresses the aftermath of the June 28th announcement of news concerning the Harbison-Walker liabilities, but it does not touch on whether that announcement *corrected* a prior alleged misrepresentation. Because the letter does not address or indicate whether the announcement was corrective, it is not, as the Fund claims, inconsistent with Ms. Allen's (and this Court's and the Fifth Circuit's) conclusion that the announcement was not corrective. Mr. Lesar also expressed no opinion in the July 6 letter on whether any stock price decline following the June 28 announcement was statistically significant. Nor does he have expertise in statistics, econometrics, or other "specialized knowledge" necessary to provide such opinion at a deposition or on the witness stand. *See* Fed. R. Evid. 701. As the Fund explains, "the question of whether a company stock experienced a statistically significant drop turns on an event study—essentially a regression analysis to determine the company-specific stock price movement on a given day after accounting for market and industry-wide effects on that day—and expert testimony about that study." Resp. at 4. Ms. Allen's report focuses on the fact that the announcement was not corrective.[5] And while she does note that "[w]hen tested in isolation, the price reaction following the June 28, 2001 announcement is statistically significant," she opines following further econometric analysis that this result "may likely be a statistical fluke because there were 35 tests of statistical significance performed."[6]

---

[3]     *Id.* ¶ 286, App. 000129.
[4]     *Id.* ¶¶ 281–88, App. 000127–30.
[5]     *Id.* ¶¶ 281–88, App. 000127–30.
[6]     *Id.* ¶ 289, App. 000130. As Ms. Allen explains in her report, "[a]n issue arises when a large number of price reactions are tested for statistical significance, since the more price reactions that are tested, the greater the probability of finding statistical significance simply due to chance (e.g., when there is no company-specific news of importance to the market)." *Id.* ¶ 23, App. 000018. Here, according to Ms. Allen, "[t]he problem of multiple comparisons is particularly relevant . . . because the Fund . . . asserted a total of 35 dates on which the alleged fraud either inflated the stock price because of an alleged misrepresentation or deflated the stock price because of an

While Halliburton's and the Fund's experts can debate this point, Mr. Lesar's opinions are irrelevant and inadmissible. He performed no event study, and is not an expert in econometrics. He does not have "specialized knowledge" necessary to form any relevant opinion on the matter. *See* Fed. R. Evid. 701. As Ms. Allen stated in her deposition, consideration of a CEO's view of "why a stock price moves or how much" is not a "generally used methodology."[7] The Fund's expert apparently agrees—his own report is due alongside the Fund's brief on October 30, but the Fund does not even seek to depose Mr. Lesar or Mr. Foshee until the following month.

Contrary to the implication of the selective quotation the Fund includes in its brief, Ms. Allen testified at her deposition that in "determining *why* the stock price dropped," she "*wouldn't* think it's particularly relevant" to look at what "someone like David Lesar . . . said about why the stock price dropped."[8] She did acknowledge that Mr. Lesar would have knowledge of his "public statement[s]," but like the market, she "would have looked at" those public statements as quoted or summarized in other sources.[9]

***December 7, 2001.*** With respect to the December 7 alleged corrective disclosure, the Fund contends that Mr. Lesar should testify concerning his contemporaneous "admission that the stock price dropped because of the adverse asbestos verdicts." Resp. at 7. Mr. Lesar indeed acknowledged the obvious—that the stock price dropped significantly following the Company's December 7 announcement of a Maryland jury verdict. *See id.* at 7–8 (quoting Fund App. 031,

---

alleged corrective disclosure. This means that there are 35 price reactions being tested for statistical significance, each with a 5% chance of being statistically significant simply as a result of normal fluctuations in the stock price (assuming the 95% confidence level is used). Given the number of tests performed, it would not be surprising to find a statistically significant result even when there is no company-specific news of importance to the market." *Id*. ¶ 25, App. 000019. To correct for this likelihood of false positives, Ms. Allen applied "the Bonferroni adjustment," a "commonly accepted method to correct for the multiple comparisons problem." *Id*. ¶ 26, App. 000020.

[7] D.E. 583, Fund App. 025.
[8] Fund App. 024 (emphasis added).
[9] *Id*.

066, 069). That is not in dispute. In dispute is whether the disclosure of that verdict was a "correction" of any alleged misrepresentation. *Halliburton II*, 134 S. Ct. at 2414.

The Fund's theory of price impact is its speculation that the December 7 announcement caused the stock price drop because investors "realized that the Company had been affirmatively misleading them . . . regarding the Company's asbestos exposure." Compl. ¶ 191. As with the June 28 announcement, both this Court and the Fifth Circuit have rejected this theory and held that the jury verdict announcement on December 7 was not corrective. *AMSF I*, 2008 WL 4791492, at *11–*12 ("The December 7, 2001 disclosure references the recent December verdict, which was *new* negative information, and also negative information about the September verdict, which was already known to the market."); *AMSF II*, 597 F.3d at 340 ("Neither the announcement of the Mississippi verdict nor the verdicts in other states demonstrated that Halliburton's previous estimates of asbestos liability obscured the relevant truth about the asbestos estimates."). Mr. Lesar's personal views are not relevant to whether the public announcement on December 7 corrected the alleged falsity of the prior public statements concerning Halliburton's asbestos liabilities.

### III. Mr. Foshee's testimony is not relevant to price impact.

The Fund does not contend Mr. Foshee's testimony will be relevant to any issue other than "what caused Halliburton's stock price to drop on December 7, 2001." Resp. at 7. In support, the Fund cites a single phrase Mr. Foshee spoke three days later on a December 10 investor conference call: "we believe the asbestos issue is a serious one, and we're handling it accordingly." *Id*. (quoting Fund App. 075). Nothing in this statement provides any information concerning what caused the December 7 stock price drop, let alone whether it was caused by the correction of any alleged misstatement. Nor does it provide any indication that Mr. Foshee

6

possesses such information.[10]

## CONCLUSION

For the foregoing reasons, and those in Halliburton's motion, Halliburton asks the Court to issue a protective order preventing the Fund from deposing Mr. Lesar or Mr. Foshee until the lifting of the Court's discovery stay or from calling either individual as a witness at the December 1, 2014 hearing on price impact.

---

[10] The only other substantive discussion of Mr. Foshee in the Response is the Fund's observation that Halliburton executives "acknowledged" that "Halliburton's asbestos liability impacted Halliburton's stock price," in support of which the Fund quotes Mr. Foshee's October 23, 2001 statement to investors that "we believe that the discount in our current stock price associated with asbestos is significantly larger than the liability itself." Resp. at 6 (quoting Fund App. 040). At the end of the third quarter 2001, Halliburton had a net asbestos liability of $124 million. Of course this liability "impacted" the price of its stock. The Fund does not allege any corrective disclosure on October 23. Mr. Foshee's statement has no relevance to whether any alleged corrective disclosure (on December 7 or otherwise) affected the stock price.

7

Respectfully submitted,

BAKER BOTTS L.L.P.

s/ *Jessica B. Pulliam*
Jessica B. Pulliam
State Bar No. 24037309
Thomas E. O'Brien
State Bar No. 24046543
John B. Lawrence
State Bar No. 24055825
2001 Ross Avenue, Suite 600
Dallas, Texas  75201
Telephone No. (214) 953-6500
Facsimile No.  (214) 953-6503

David D. Sterling
State Bar No. 19170000
One Shell Plaza
910 Louisiana Street
Houston, Texas  77002
Telephone No. (713) 229-1234
Facsimile No.  (713) 229-2099

*Counsel For Defendants Halliburton Company and David J. Lesar*

## **CERTIFICATE OF SERVICE**

I certify that the foregoing document was served on all counsel of record via the Court's ECF system on October 14, 2014.

s/ *Jessica B. Pulliam*  
Jessica B. Pulliam