# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |
|---|---|
| THE ERICA P. JOHN FUND, INC., et al., *On Behalf of Itself and All Others Similarly Situated*, | |
| Plaintiff, | **CIVIL ACTION NO.: 3:02-CV-1152-M** |
| vs. | |
| HALLIBURTON COMPANY and DAVID J. LESAR, | **CLASS ACTION** |
| Defendants. | **FILED UNDER SEAL** |

## LEAD PLAINTIFF'S OPPOSITON TO
## DEFENDANTS' RENEWED MOTION FOR A PROTECTIVE ORDER

Kim E. Miller
*(admitted pro hac vice)*
KAHN SWICK & FOTI, LLC
250 Park Avenue, Suite 2040
New York, NY 10177
Tel: (212) 696-3730
Fax: (504) 455-1498

Lewis S. Kahn
Neil Rothstein
*(admitted pro hac vice)*
KAHN SWICK & FOTI, LLC
206 Covington Street
Madisonville, LA 70447
Tel: (504) 455-1400
Fax: (504) 455-1498

***SPECIAL COUNSEL TO LEAD
PLAINTIFF, THE ERICA P. JOHN
FUND, INC., AND THE CLASS***

David Boies
*(admitted pro hac vice)*
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
Fax: (914) 749-8300

Carl E. Goldfarb
*(admitted pro hac vice)*
BOIES, SCHILLER & FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
Tel: (954) 356-0011
Fax: (954) 356-0022

***LEAD COUNSEL TO LEAD PLAINTIFF,
THE ERICA P. JOHN FUND, INC., AND
THE CLASS***

*Additional counsel appear on signature page*

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

I.     BACKGROUND ................................................................................... 2

II.    STANDARD OF REVIEW .................................................................. 2

III.   HALLIBURTON ATTEMPTS TO IMPROPERLY RESTRICT THE SCOPE
OF THE WAIVER ................................................................................ 3

       A.     The Waiver Is Broadest When A Party Seeks To Rely On Oral Advice,
As Halliburton Does Here .......................................................... 3

       B.     Documents Generated In 2002 And Documents Concerning The
Bankruptcy Are Clearly Relevant And Indeed Highly Relevant. ................ 6

IV.   BALANCING BURDEN AND RELEVANCE TIPS HEAVILY IN FAVOR
OF PRODUCTION .............................................................................. 12

CONCLUSION ............................................................................................................... 16

**Cases**

*Aspex Eyewear, Inc. v. E'lite Optik, Inc.*,
   276 F. Supp. 2d 1084 (D. Nev. 2003) ........................................................................ 4

*Connect Insured Tel., Inc. v. Qwest Long Distance, Inc.*,
   No. 3:10-CV-1897-D, 2011 WL 4736292 (N.D. Tex. Oct. 6, 2011) ....................................... 15

*Cormack v. United States*,
   118 Fed. Cl. 39 (Fed. Cl. 2014) ............................................................................ 10

*Crosby v. Louisiana Health Serv. & Indem. Co.*,
   647 F.3d 258 (5th Cir. 2011) ............................................................................... 15

*Eli Lily & Co. v. Zenith Goldline Parm., Inc.*,
   149 F. Supp. 2d 659 (S.D. Ind. 2001) ...................................................................... 10

*Ferko v. National Ass'n for Stock Car Auto Racing, Inc.*,
   218 F.R.D. 125 (E.D. Tex. 2003) ............................................................................ 2

*In re EchoStar Commc'ns Corp.*,
   448 F.3d 1294 (Fed. Cir. 2006) ............................................................................. 3

*In re Taxable Mun. Bond Sec. Litig.*,
   No. MDL 863, 1993 WL 323069 (E.D. La. Aug. 18, 1993) ...................................................... 4

*K.W. Muth Co. v. Bing-Lear MFG Group, L.L.C.*,
   219 F.R.D. 554 (E.D. Mich. 2003) ........................................................................... 3

*Kinetic Concepts, Inc. v. Wake Forest Univ. Health Sciences*,
   No. SA-11-CV-163-XR, 2014 WL 1787813 (W.D. Tex. May 5, 2014) ............................................... 2

*Matsushita Electronics Corp. v. Loral Corp.*,
   No. 92 Civ. 5461 (SAS), 1995 WL 527640 (S.D.N.Y. Sept. 7, 1995) .......................................... 4

*McCormick–Morgan, Inc. v. Teledyne Indus., Inc.*,
   765 F. Supp. 611 (N.D. Cal. 1991) ........................................................................ 10

*Orchestrate HR. Inc. v. Trombetta*,
   No. 3:13-CV-2110-P, 2014 WL772859 (N.D. Tex. Feb. 27, 2014) ............................................. 15

*SEC v. Brady*,
   238 F.R.D. 429 (N.D. Tex. 2006) ....................................................................... 5, 12

*Tyco Healthcare Group LP v. E-Z-EM, Inc.*,
   No. 2:07–CV–262, 2010 WL 2079920 (E.D. Tex. May 24, 2010) ......................................... 11

*Variable-Parameter Fixture Development Corp. v. Morpheus Lights, Inc.*,
   No. 90 CIV 4493 (MGC), 1994 WL 97572 (S.D. N.Y. Mar. 18, 1994).................................... 4

**Rules**

FED. R. EVID. 512 ..................................................................................................................... 5

Lead Plaintiff, the Erica P. John Fund, Inc., and the certified Class (collectively, "Plaintiff") respectfully submits this opposition to Defendants' Renewed Motion For an Order Protecting It From Discovery Of Certain Privileged Communications And Documents.  D.E. 613.

## INTRODUCTION

At the same time that Defendants are invoking an extraordinarily broad advice-of-counsel defense, they seek to sharply circumscribe the scope of their ensuing waiver of the attorney-client privilege and the work product doctrine.  In their motion for a protective order, Defendants seek this Court's endorsement of their one-sided approach.  This Court should decline their invitation for several reasons.

First, where Defendants seek to rely at least in part on oral advice, courts have repeatedly endorsed a broad waiver that encompasses work product that was not transmitted to defendants in writing but that was likely transmitted orally, finding fundamental fairness requires such a broad waiver.  Second, under the facts of this case, the waiver should extend through 2002 because outside counsel provided Halliburton with advice in 2002 regarding the very claims that were pending, settled, or resulted in judgments ***during the Class Period*.**  That advice was often at odds with the Company's statements in 2001 about these matters, and Plaintiff needs this discovery to explore what, if any, basis there is for the contrary positions that Halliburton and its counsel sometimes took publicly in 2001 and privately in 2002 about these matters.  Third, Halliburton provided no evidence to support either its claim of burden or its claim that Plaintiff's chance of finding relevant information is comparable to the proverbial chance of finding a needle in a haystack.  In fact, the record here repeatedly demonstrates the contrary is true, and so refutes the premises of Defendants' motion.

<u>**ARGUMENT**</u>

## I.    BACKGROUND

More than a decade after this litigation commenced, Halliburton invoked an advice-of-counsel defense regarding claims related to "Halliburton's asbestos liabilities during the Class Period or its insurance coverage of those liabilities." Defendants' Appendix ("Def. App.") at 4-5, June 24, 2014 Letter from T. O'Brien to K. Miller and C. Goldfarb. Halliburton has refused to narrow its advice-of-counsel defense and in its motion for a protective order describes its defense in equally sweeping terms, saying it intends "to rely on the advice of counsel as one of its defenses to Plaintiff's claims relating to Halliburton's asbestos liabilities during the Class Period." D.E. 613 at 2.

## II.    STANDARD OF REVIEW

A party seeking a Rule 26(c) protective order prohibiting document production "must establish good cause and a specific need for protection." *Ferko v. National Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 133 (E.D. Tex. 2003). The moving party carries the burden of establishing a need for the protective order, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Id.* (*quoted in Kinetic Concepts, Inc. v. Wake Forest Univ. Health Sciences*, No. SA-11-CV-163-XR, 2014 WL 1787813, at *1 (W.D. Tex. May 5, 2014) (denying motion for protective order to prevent production of CEO's emails on asserted grounds that production would be duplicative of other custodians and burdensome)). As explained below, Halliburton has failed to meet its burden, ignoring inconvenient case law and key facts and relying instead on erroneous and unsupported assumptions and conclusory assertions bereft of support.

## III. HALLIBURTON ATTEMPTS TO IMPROPERLY RESTRICT THE SCOPE OF THE WAIVER

### A. The Waiver Is Broadest When A Party Seeks To Rely On Oral Advice, As Halliburton Does Here.

Halliburton acknowledges, as it must, that when a party invokes an advice-of-counsel defense, the ensuing waiver of the attorney-client privilege and the work product doctrine extends to all documents concerning the "same subject matter." D.E. 613 at 9 (quoting *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006)). It fails, however, to note that the waiver is broadest when a party seeks to rely on oral advice, as Halliburton does here, because insofar as a party relies on oral advice, even if it also relies on written advice, there are no documents to memorialize the oral advice that was given, and a broad waiver is necessary to prevent use of the attorney-client privilege as a sword and shield, which Halliburton admits is improper. *Id.* (citing *In re EchoStar*, 448 F.3d 1302). In fact, Halliburton does not even acknowledge it is seeking to rely on oral advice, or bother to discuss the case law regarding the proper scope of waiver in such cases.[1]

Courts have recognized the necessity and propriety of a broad waiver in the case of an oral advice-of-counsel defense because in such circumstances, the advice itself, the date on which it was given, and the basis for the advice, are not fixed in written form. *See, e.g.*, *K.W. Muth Co. v. Bing-Lear MFG Group, L.L.C.*, 219 F.R.D. 554, 577 (E.D. Mich. 2003) (compelling production of defense counsel's work product upon finding that the underlying work product was "likely relevant to what oral advice was given" and that there was a compelling need to produce to plaintiff, who could not elsewhere discover the information). The scope of the waiver arising from an oral opinion must in fairness include all work product, including that which was not sent

---

[1] Because Plaintiff has briefed that case law in its motion to compel, *see* D.E. 608 at 4-7, Plaintiff only briefly summarizes that case law here.

to the client, relating to counsel's advice. *Aspex Eyewear, Inc. v. E'lite Optik, Inc.*, 276 F. Supp. 2d 1084, 1087-88 (D. Nev. 2003) ("fairness requires disclosure of all documents he reviewed, considered, or authored that relate to infringement, validity, and/or enforceability of the Patents-in-suit ***whether or not these documents were communicated between the attorney and the client***.") (emphasis added); *see also Variable-Parameter Fixture Development Corp. v. Morpheus Lights, Inc.*, No. 90 CIV 4493 (MGC), 1994 WL 97572, at *3 (S.D.N.Y. Mar. 18, 1994) (finding compelling need to produce to plaintiff work-product that was not sent to client because advice was given orally).[2]

In this case, the advice on which Defendants intend to rely could hardly be less clearly defined, as Defendants have described their advice-of-counsel defense merely as relating to "Halliburton's asbestos liabilities during the Class Period or insurance coverage of its liability." *See* Def. App. 4-5. Given the expansiveness of the topic on which Defendants are apparently seeking to rely on oral advice, it is particularly important here that Defendants be required to produce all attorney work product relating to the advice given, whether such materials were sent to Halliburton's officers or not, and also so that Plaintiff may depose Defendants and their agents on those documents. *Matsushita Electronics Corp. v. Loral Corp.*, No. 92 Civ. 5461 (SAS), 1995 WL 527640, at *2 (S.D.N.Y. Sept. 7, 1995) (compelling production of work product not sent to client upon finding that those materials "may be quite useful" in determining what precise advice had been given).

Halliburton claims that under its proposed waiver, "Plaintiffs will have access to **all** attorney-client communications and work product that Halliburton considered when making the

---

[2] *In re Taxable Mun. Bond Sec. Litig.*, No. MDL 863, 1993 WL 323069 (E.D. La. Aug. 18, 1993) is not on point because that case did not address the proper scope of the waiver in a case involving oral advice of counsel.

alleged Class Period misrepresentations." D.E. 613 at 18 (emphasis in the original). Of course, that statement is not true insofar as Halliburton is relying on oral advice of counsel, and Halliburton's erroneous assertion illustrates why courts find a broader waiver when defendants invoke oral advice of counsel. Under the case law governing oral advice of counsel, Halliburton's effort to shield internal communications of counsel should be denied. Otherwise there will be virtually no contemporaneous check on the oral advice provided to Defendants. Defendants will be able to use the oral advice as a sword, while using the privilege as a shield to prevent Plaintiff from obtaining counsel's related advice on the very same topic, memorialized in internal communications and which was likely conveyed orally to Defendants at the same time as the oral advice on which Defendants seek to rely.

Halliburton has intentionally put both the attorney-client privileged and work product protected information at issue through its advice-of-counsel defense. Allowing Halliburton to rely on oral advice from counsel, while shielding outside counsel's internal work product on which that advice was founded, would be "selective, misleading and unfair[.]" FED. R. EVID. 512, Advisory Committee Notes; *see also SEC v. Brady*, 238 F.R.D. 429, 444 (N.D. Tex. 2006) (subject matter waiver of work product protection is warranted when it would be "unfair to deny the other party access to the same facts relevant to the same subject matter").

In its motion, Halliburton boldly declares, "There is no risk that Halliburton will be able to use favorable attorney-client communications or work product its officers considered in making the alleged statements while hiding any less favorable ones." D.E. 613 at 18. That assertion is not true insofar as Halliburton is relying on oral advice and illustrates precisely why courts have repeatedly found a broader waiver in such cases. Indeed, prudent counsel may well

choose to provide sensitive and especially unwelcome advice orally and not in writing to guard against its inadvertent disclosure.

**B.      Documents Generated In 2002 And Documents Concerning The Bankruptcy Are Clearly Relevant And Indeed Highly Relevant.**

The record in this case including the limited number of 2002 documents that have been produced demonstrates that documents created in 2002 are not only relevant, but also highly relevant, to the issues in this litigation and that the waiver should be extended through 2002. For instance, a January 15, 2002 letter from Michael Zanic, one of Halliburton's outside counsel, to Richard Milazzo, counsel for some of Halliburton's London insurers, seeks authorization to settle 8,112 cases asbestos cases that were pending in 2001 for up to $85 million, or approximately $10,478 per claim—more than double the amount that Halliburton had reserved for those very claims, which were brought by attorney Glen Morgan. *See* Plaintiff's Appendix ("Pl. App.") at 17-25, Mendes 005094-005102; *id*. at 1-3, Halliburton's Responses to Plaintiffs' Second Set of Interrogatories, Response to Interrogatory No. 8 (estimating a gross cost of $4,060 per claim for 124,000 pending Harbison-Walker claims).

While that document, which was produced in response to a third party subpoena, was generated in 2002, it concerns cases pending ***during the Class Period*** and judgments entered ***during the Class Period***, and so is highly relevant to a reasonable evaluation of those claims ***during the Class Period***. Plaintiff is entitled to question Defendants and their counsel about what if anything other than a wish to artificially depress Halliburton's asbestos exposure in 2001 caused them to value the same claims at a significantly higher amount in 2002, compared to 2001. However, Plaintiff cannot do so unless it knows of the discrepant valuations, which Defendants are seeking to protect with an improper invocation of privilege.

Similarly, a January 17, 2002 audit letter from Godwin Gruber, one of Halliburton's outside asbestos firms, provides counsel's assessment of multiple asbestos cases that went to judgment during the Class Period. Pl. App. at 6-14, AA AMSF 00000838-46. That letter, produced by Halliburton's former accounting firm, reports on a case that was tried in January 2001 in which the jury awarded $2.7 million in compensatory damages and $1.25 million in punitive damages against Kellogg Brown & Root. Halliburton did not publicly disclose that verdict. It also reports on a June 22, 2001 default judgment against Dresser for just under $1 million for breaching a settlement agreement. Halliburton did not publicly disclose that judgment either. It further describes a verdict entered against Dresser in a case tried in September 2001, where the judgment was entered on November 29, 2001, after the court denied post-trial motions. In the audit letter, counsel said the verdict against Dresser was for $79 million and included punitive damages, but in its December 7, 2001 press release, Halliburton said the judgment against Dresser was for $65 million, and did not mention punitive damages, *id*. at 26-28, SCA00131568-70. Those omissions and discrepancies, all of which concern judgments and verdicts during the Class Period, are directly relevant to the matters at issue in this litigation.

To give a third example, an October 2002 email chain between Don Godwin, outside counsel for Halliburton, and a plaintiff's counsel with settled but unpaid claims against Harbison-Walker, shows that 2002 documents are likely to be highly relevant to the matters in dispute in this action. That document, Pl. App. at 36-39, SCA 00156140-43, demonstrates that Halliburton, which had criticized Harbison-Walker in public in 2001 for entering into settlement agreements it claimed were vastly over generous, agreed in private in 2002 to pay 100 cents on the dollar for settlements Harbison-Walker entered into in 2001. *Id.* at SCA 00156140 ("With regard to the H-W settled but unpaid amount of approx. $5.6MM, it is my client's intention to

pay by Nov. 30 the referenced amount."). Plaintiff is entitled to discovery on the issue of what caused Defendants and their counsel to value the exact same cases differently in 2002 than in 2001.

Moreover, in 2002, Defendants repeated many of the very same misrepresentations during the Class Period, *see* D.E. 608 at 21-22 (discussing Halliburton's 2002 statement regarding its asbestos liability), and counsel's communications regarding those 2002 mis-statements are likely to shed light on the basis, if any, for the virtually identical statement Defendants made during the Class Period.

In terms of analyzing Halliburton's proposed temporal restriction, it is noteworthy that Harbison-Walker, Dresser's former subsidiary, filed for bankruptcy on February 14, 2002. D.E. 613 at 21. Because Harbison-Walker and Dresser were once part of the same company, they shared much of the same liability insurance for asbestos claims, and so when the bankruptcy court entered a stay of litigation against Harbison-Walker, the stay also covered most of the asbestos claims against Dresser and Halliburton as well. D.E. 613 at 21. In fact, as Defendants acknowledged: "On Feb. 14, 2002, the U.S. Bankruptcy Court issued a temporary restraining order staying more than 200,000 asbestos claims pending against Dresser, which represented the majority of the pending asbestos claims against Halliburton and its subsidiaries." *Id.* (citing Halliburton's Feb. 15, 2002 Form 8-K). The stay also prohibited any new claims from being filed against Harbison-Walker or against Dresser/Halliburton insofar as the companies shared the same insurance. That temporary stay was repeatedly extended until the bankruptcy plan was approved in 2003. Pl. App. at 15-16, Halliburton 2003 10-K at 18. Thus, the effect of the bankruptcy stay was to freeze the ligation landscape as it was as of February 14, 2002, a mere six weeks after Halliburton's proposed temporal cut-off. Accordingly, documents generated after

the stay was entered, insofar as they concern pending asbestos cases, are analyzing cases and claims as they existed during the Class Period or at most only about six weeks later.

Ultimately, Halliburton discharged its asbestos liability through a pre-packaged bankruptcy plan whereby Halliburton spun off several entities, including Dresser Industries, LLC (the former Dresser Industries Inc.), and Kellogg Brown & Root, Inc., which declared bankruptcy along with Harbison-Walker. *See* Pl. App. at 29-35, SCA00272376-82. A central issue in the pre-packaged bankruptcy was how to resolve the claims of three groups of creditors: (1) plaintiffs with asbestos claims pending against Harbison-Walker, Dresser, and Halliburton during the Class Period; (2) plaintiffs with asbestos settlement agreements that were reached by Harbison-Walker and/or Dresser during the Class Period, but never paid; and (3) plaintiffs with asbestos-related judgments entered against Harbison-Walker and/or Dresser/Halliburton during the Class Period, but which were not paid because they were on appeal. Because that pre-packaged plan had to be approved by at least 75% of the debtors' creditors, Halliburton sought and obtained approval from the majority of the three classes of creditors listed above by negotiating settlement agreements with them. In other words, ***after the Class Period***, Halliburton reached settlement agreements with Plaintiff's counsel regarding claims pending ***during the Class Period***, claims settled ***during the Class Period***, and Judgments handed down ***during the Class Period***. *See* Halliburton Q&A regarding the bankruptcy filing, *id*. at 32, SCA00272379 ("We've reached agreement with attorneys for substantially more than 75% of the present known claimants and with the proposed representative of future claims."). How much Halliburton agreed to pay to settle claims with those creditors and what counsel told Halliburton about the risks of continuing to litigate those claims is directly relevant to the instant litigation and to what Defendants knew or were severely reckless in not knowing during the Class Period.

For instance, the amount Halliburton paid to settle those claims and what counsel advised Halliburton about those claims could well contradict the amounts Halliburton reserved for those claims during the Class Period and what Halliburton reported during the Class Period regarding the likelihood that it would prevail on those claims. Such evidence is not only relevant, it is spot on and likely to undercut what Halliburton represented to the market during the Class Period, which perhaps is why Halliburton is trying so strenuously to preclude its discovery by proposing a December 31, 2001 termination for its waiver.[3]

Similarly, Defendants' attempt to carve out on relevancy grounds documents regarding the pre-packaged bankruptcy, D.E. 613 at 16-17, cannot stand scrutiny because the bankruptcy covered claims pending during the Class Period against Harbison-Walker, Dresser, and Halliburton. Moreover, documents previously produced reveal that Halliburton's officers received extensive advice ***during the Class Period*** on the relative risks and rewards of a potential bankruptcy, and how such a bankruptcy proceeding might impact Halliburton's asbestos liability. For example, Les Coleman, Halliburton's general counsel, sent an email on June 29, 2001, to Bert Cornelison, Halliburton's assistant general counsel, and Mike Zanic, one

---

[3] Defendants' cases do not support a December 31, 2001 waiver cut-off given the factual record in this action. *Eli Lily & Co. v. Zenith Goldline Parm., Inc.*, 149 F. Supp. 2d 659 (S.D. Ind. 2001), involved a "one-time act" of infringement, occurring on a date certain. *Id.* at 662. There was no indication that the infringing party analyzed the alleged infringing action after that date. The court also acknowledged that a case involving continuing infringement would compel a different result. *See id.* at 664. *Cormack v. United States*, 118 Fed. Cl. 39 (2014) is not on point either. There the court found there was a "fundamental divide" between documents concerning a patent application and those about the prosecution of the patent after the application was filed. *Id.* at 45. While finding the temporal limitation appropriate in that case, the court contrasted the facts to cases in which courts had "disfavored artificial cut-off dates created by the disclosing party because they increased the likelihood that the party was seeking an unfair tactical advantage." *Id.* (citing *McCormick–Morgan, Inc. v. Teledyne Indus., Inc.*, 765 F. Supp. 611, 613–14 (N.D. Cal. 1991) (reversing an order from the magistrate only to the extent it imposed a temporal limitation on the production of documents within the scope of an advice-of-counsel defense waiver)).

of Halliburton's outside counsel, discussing the "possible bold strategy of using Chapter 11 bankruptcy of Harbison as potential opportunity to get rid of all of the refractory claims and maybe some Dresser non-refractory claims that are covered by the same insurance program." Pl. App. at 40, SCA 00433497. The email references an analysis that trial counsel at Kirkland & Lockhart had performed on June 19, 2001. Similarly, a July 18, 2001 memorandum reports that "Mike Zanic posits potential lawsuits that would be 'catastrophic' for H-W and would either incentivize H-W to file a voluntary Ch. 11 petition or else motivate the plaintiffs to file an involuntary petition against H-W." *Id*. at 41-42, SCA 00448359-60. Such statements demonstrate that a "same matter" waiver covering asbestos advice provided to Halliburton during the Class Period would encompass advice regarding how a bankruptcy would impact Halliburton's asbestos liability. Defendants' contention that the bankruptcy is a "different subject matter[]", D.E. 613 at 22, than the topics on which Halliburton received advice during the Class Period is belied by the record.

Plaintiff agrees that the waiver of the attorney-client privilege and work product doctrine does not extend to trial counsel who did not also provide advice to Halliburton regarding its asbestos liability, prior to the commencement of this action. *See*, *e.g.*, *Tyco Healthcare Group LP v. E-Z-EM, Inc.*, No. 2:07–CV–262, 2010 WL 2079920, at *2 (E.D. Tex. May 24, 2010) (finding "waiver extends to communications with trial counsel where, as here, trial counsel and opinion counsel belong to the same law firm and opinion counsel is an active member of the trial team.").[4] For counsel who both provided advice to Halliburton on asbestos issue before

---

[4] *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007), which defendants invoke for the proposition that advice-of-counsel defense does not waive the privilege with respect to "trial counsel," D.E. 613 at 22-24, is not to the contrary. In that case, there was "no dispute that

commencement of this action and served as trial counsel in this action, Plaintiff does not object to the redaction of advice regarding this action from responsive documents.

## IV.    BALANCING BURDEN AND RELEVANCE TIPS HEAVILY IN FAVOR OF PRODUCTION

Halliburton argues that a protective order is necessary to save it from the burden of producing "thousands" of privileged documents.  D.E. 613 at 2.  It claims the burden would be "enormous" and impossible "to accurately quantify," D.E. 613 at 22.  While it provides a declaration regarding the number of documents already produced, D.E. 613 at 22 (citing Strecker Decl. ¶¶ 3-4), Halliburton does not provide ***any support whatsoever*** for its argument that the additional production would be burdensome, let alone unduly burdensome.  Accordingly, Defendants have failed to meet their burden for a protective order on this basis.  *Compare Brady*, 238 F.R.D. 444 (finding over burdensomeness (advanced by Baker Botts) supported by affidavits estimating the number of documents and attorney hours to review and produce).  Halliburton's failure to prove the burden of producing documents has previously led this Court to reject unsupported assertions like the one advanced in the motion for protective order.  Dec. 3, 2013 Hear'g Tr. at 14:10-11 ("You're not going to win on the issue of burden, because you didn't prove that it was burdensome.").  The same result is warranted here.

Moreover, because most of the asbestos litigation against Halliburton was stayed on February 14, 2002 and because new cases generally could not be filed after that date, *see* D.E. 613 at 22, most of the litigation files, which are likely to be the most voluminous of the files in question, should contain few, if any documents, after that date.  Accordingly, because Halliburton has waived the privilege as to those documents, it likely does not even have to

---

[defendant's] opinion counsel operated separately and independently of trial counsel at all times." *Id.* at 1366.

review those files before producing them, and thus the production should not be burdensome. To protect Defendants in the unlikely event that those files contain documents that this Court finds are beyond the scope of Defendants' privilege waiver, Plaintiff will agree to a procedure whereby those documents can be clawed back.

Halliburton claims, without support, that the documents from 2002 and in outside counsel's files would likely be of no relevance, and accuses Plaintiff of trying to find "a stray needle" in a "haystack." D.E. 613 at 27. Again, the record refutes that assertion. As already demonstrated, the January 15, 2002 letter from Zanic, Halliburton's outside counsel, seeking authorization to settle 8,112 asbestos cases for up to $85 million was highly relevant because those were cases were all pending during the Class Period, and 105 of them were the subject of judgments entered for plaintiffs during the Class Period. Similarly, the January 2002 audit letter, from outside counsel's files, describing several Class Period adverse verdicts and judgments that were not publicly disclosed, and also providing a significantly larger (and more accurate) figure for the verdict handed down against Dresser in September 2001 is also highly probative. So is the October 2002 email from Godwin, Halliburton's outside counsel, saying that Halliburton would pay 100 cents on the dollar for claims Harbison-Walker settled during the Class Period, settlements that Halliburton sharply criticized during the Class Period.

Thus, weighing Halliburton's unsupported assertions regarding burden and relevance on the one hand against Plaintiff's demonstration regarding the relevance of 2002 documents on the other hand shows that the balance tips sharply toward production of the requested documents.

This is particularly obvious in the case of certain documents on outside counsel's privilege logs. As explained in Plaintiff's motion to compel, a review of privilege logs produced in this case by Halliburton's outside counsel or agents reveals at least 62 documents that,

according to those logs, (1) concern Halliburton's asbestos liability or its asbestos insurance; (2) were generated during the very time period Halliburton admits the privilege was waived; and (3) were transmitted to Halliburton. *See* D.E. 608 at 9-11. Those documents were neither listed on Halliburton's privilege logs nor produced as part of Halliburton's de-designation of privileged documents, but can be produced without ***any*** burden to Defendants, and should be produced forthwith.

Plaintiff raised this very example in its motion to compel, D.E. 608, filed before Defendants filed the instant motion for a protective order. Nonetheless, Defendants assert in their opposition that "[t]he possibility is slim, at best, that Plaintiff will be able to find relevant communications between outside counsel and those officers that have not already been produced by Halliburton." D.E. 613 at 28. Plaintiff's motion to compel provided 62 examples to the contrary. Those examples also belie Defendants' contention that Plaintiff is seeking discovery that is "cumulative" of what is in Defendants' own files, D.E. 613 at 26.

Because Defendants have not made any effort to review (for content or volume) the body of documents that they seek to preclude from discovery, their repeated, unsubstantiated representations and extravagant statements about these documents must be rejected, as this example demonstrates. Defendants' assumptions about the content of documents within the various carved-out categories created by Defendants—those created outside their arbitrarily determined date range, or housed in the files of outside counsel, or created in connection with a bankruptcy proceeding—are just that: assumptions. Because Defendants have not actually reviewed the contested documents, they cannot proffer that the *content* of the documents is in fact outside the scope of the waiver resulting from Defendants' reliance on advice of counsel;

they just assume irrelevance. Again, review of documents produced to date flatly contradicts this assumption and refutes the premises on which Defendants' motion is based.

Nor does Defendants' case law warrant granting their motion. Defendants attempt to draw support from *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011), where the court of appeals actually reversed the trial court's entry of summary judgment upon finding that the magistrate judge had improperly limited the scope of discovery to reach only documents that would be admissible in support of plaintiff's claim. Defendants' reliance on *Connect Insured Tel., Inc. v. Qwest Long Distance, Inc.*, No. 3:10-CV-1897-D, 2011 WL 4736292 (N.D. Tex. Oct. 6, 2011) is likewise misplaced, as the underlying facts demonstrate no similarity to the present dispute—the motion to compel there was denied upon a finding, substantiated by evidence advanced by the resisting party, that the discovery sought (which the court acknowledged had marginal value) would require specialized tools to extract data from archived back-up tapes at great expense, but could be obtained without the same burden from another party.[5]

By contrast, Plaintiff here seeks production of documents likely to be directly relevant to Halliburton's advice-of-counsel defense and which Halliburton has put at issue by invoking that defense. Tellingly, Halliburton does not cite a single case in which a court has relied on a burdensomeness objection to limit production of responsive documents where defendants have invoked an advice-of-counsel defense, thus creating the very burden they complain of.

---

[5] *Orchestrate HR. Inc. v. Trombetta*, No. 3:13-CV-2110-P, 2014 WL 772859 (N.D. Tex. Feb. 27, 2014) provides no support for Defendants' argument on burden. The court there evaluated the burden of a subpoena to a non-party. *Id.* at *3.

## CONCLUSION

For the foregoing reasons, Defendants' motion for protective order should be denied.

Dated: October 28, 2015

Respectfully submitted,

    /s/ Carl E. Goldfarb

Kim E. Miller
*(admitted pro hac vice)*
KAHN SWICK & FOTI, LLC
250 Park Avenue, Suite 2040
New York, NY 10177
Tel: (212) 696-3730
Fax: (504) 455-1498

Lewis S. Kahn
Michael Swick
Neil Rothstein
*(admitted pro hac vice)*
KAHN SWICK & FOTI, LLC
206 Covington Street
Madisonville, LA 70447
Tel: (504) 455-1400
Fax: (504) 455-1498

***SPECIAL COUNSEL TO LEAD PLAINTIFF, THE ERICA P. JOHN FUND, INC., AND THE CLASS***

David Boies
*(admitted pro hac vice)*
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
Fax: (914) 749-8300

Carl E. Goldfarb
*(admitted pro hac vice)*
BOIES, SCHILLER & FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
Tel: (954) 356-0011
Fax: (954) 356-0022

***LEAD COUNSEL TO LEAD PLAINTIFF, THE ERICA P. JOHN FUND, INC., AND THE CLASS***

E. Lawrence Vincent
THE LAW OFFICE OF JOE H. STALEY, JR., P.C.
3100 Monticello Ave., Suite 850
Dallas, Texas 75205
Tel: (214) 739-3700
Fax: (214) 739-1919

***ATTORNEY FOR LEAD PLAINTIFF, THE ERICA P. JOHN FUND, INC., AND THE CLASS***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 28, 2015, I served the attached document via

CM/ECF System to the following counsel of record.

Jessica B. Pulliam
Tom O'Brien
John Lawrence
BAKER BOTTS, LLP
2001 Ross Avenue, Suite 600
Dallas, Texas 75201-2980
Tel.: (512) 322-2500
Fax: (512) 322-2501
**Jessica.Pulliam@bakerbotts.com**
**tom.obrien@bakerbotts.com**
**john.lawrence@bakerbotts.com**

David D. Sterling
Leslie Buenzow
BAKER BOTTS, LLP
910 Louisiana Street
Houston, Texas 77002-4995
Tel: (713) 229-1234
Fax: (713) 229-2099
**David.Sterling@bakerbotts.com**
**leslie.buenzow@bakerbotts.com**

/s/ Carl E. Goldfarb