**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| THE ERICA P. JOHN FUND, INC., On Behalf of Itself and All Others Similarly Situated, | § | |
| Lead Plaintiff, | § | Civil Action No. 3:02-CV-1152-M |
| v. | § | |
| HALLIBURTON COMPANY and DAVID J. LESAR, | § | |
| Defendants. | § | |

**HALLIBURTON'S REPLY IN SUPPORT OF ITS EMERGENCY MOTION TO STRIKE THE UNTIMELY EXPERT REPORT OF DR. THOMAS Z. LYS AND REQUEST FOR TELEPHONIC HEARING**

Dr. Lys seeks to opine in support of the very crux of the allegations in EPJF's Complaint. Accordingly, his report is not appropriate rebuttal evidence and should be struck as untimely.

**1. This case has always centered on allegations of accounting fraud.**

EPJF's Opposition rests on the false premise that Halliburton's accounting for asbestos contingencies is a new issue for which rebuttal testimony should be permitted. EPJF argues: "With [Halliburton's expert] Mr. Ranallo's report, Halliburton seeks to turn this case about material misrepresentations and omissions into an accounting case."[1] It is not Halliburton but EPJF who made this an accounting case. From the very first paragraph of EPJF's Complaint[2] through the final fact deposition,[3] EPJF has always centered its case on accounting. An entire section of EPJF's Complaint is titled "Halliburton's Accounting Manipulations and

---

[1] D.E. 685 (Response) at 14; *see also id.* at 2 ("Mr. Ranallo's Report . . . seeks to convert this case about material misrepresentations and omissions into a case about GAAP compliance."), 16 (Halliburton designated Mr. Ranallo and submitted his report opining on previously unexplored GAAP issues.").

[2] D.E. 246 (4th Am. Compl.) ¶ 1 ("These Individual Defendants were Halliburton's top executives and ***were each Certified Public Accountants***. They controlled the accounting policies and practices and public statements of the Company.") (emphasis in original).

[3] On March 18, 2016, Plaintiff took the deposition of Halliburton's Chief Accounting Officer, Charles Muchmore. Mr. Muchmore was deposed in his individual capacity or as a corporate representative on five separate occasions in this matter.

Falsifications,"[4] with a sub-section titled "Halliburton's Failure to Reserve for Losses from Asbestos Claims."[5] EPJF's Complaint alleges Halliburton perpetrated accounting "schemes" and "manipulations." For example:

- "[I]t was likely just a question of time until Halliburton itself had to admit. . . the ***accounting manipulations*** being used to cover up . . . its multi-billion dollar financial exposure to asbestos claims;"
- "Lesar was the 'mastermind' of the ***accounting schemes*** detailed herein;"
- "Halliburton's financial results for the 2ndQ and 3rdQ 01 were false, having been manipulated and artificially inflated higher due to the ***fraudulent and illicit accounting practices*** detailed in ¶¶ 203-287 of this Complaint:"
- "In order to cover up and conceal these problems, Halliburton's top officers engaged in a series of ***accounting manipulations and falsifications*** and other misrepresentations, which are detailed below."[6]

EPJF contends that the elements of a Section 10(b) claim "do not include demonstrating that Halliburton violated GAAP."[7] But EPJF's Complaint alleges that Halliburton's statements concerning its asbestos liability were false or misleading—an element that EPJF concedes it must demonstrate[8]—*because* its accounting violated GAAP, including Statement of Financial Accounting Standards No. 5 ("SFAS 5"). EPJF's Complaint states:

> GAAP, as set forth in SFAS No. 5, *Accounting For Contingencies*, requires that a loss be recognized for certain loss contingencies when it is probable the loss has been incurred and the amount can be reasonably estimated. . . . An example of a loss contingency includes pending or threatened litigation. *See* SFAS 5 . . . .***During the Class Period, Halliburton failed to make adequate and timely reserves for losses associated with asbestos claims Halliburton incurred when it acquired Dresser in 9/98***.[9]

---

4 D.E. 246 ¶¶ 203 *et seq.*

5 D.E. 246 ¶¶ 237 *et seq.*

6 D.E. 246 ¶¶ 25, 56(c), 190(a), 203 (emphasis added); *see also id.* ¶ 303 ("By virtue of their accounting expertise, their high-level accounting positions . . . and/or awareness of the Company's operations, accounting policies and methods . . . the Individual Defendants had the power to influence and control . . . the decision making of the Company.").

7 D.E. 685 at 1.

8 D.E. 685 at 5.

9 D.E. 246 ¶¶ 237–38; *see also id.* ¶ 204 ("GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time."), ¶ 244 ("[I]f Halliburton could not reasonably estimate the amount of this enormous liability, it should have

Dr. Lys seeks to opine on the central issues alleged in the Complaint:

| Complaint | Dr. Lys Report |
|---|---|
| "Halliburton . . . had not adequately reserved or accounted for its accrued asbestos liabilities . . . ." 4th Am. Compl. ¶¶ 42(k), 107(l), 116(i), 128(k), 140(h), 153(c), 168(b), 173(b), 190(c). | "Halliburton's financial statements during the Class Period were not in compliance with U.S. GAAP" because of, among other reasons, Halliburton's "underreporting [its] gross asbestos liability." D.E. 682 at App. 064-65 (Lys Report p. 60–61). |
| "Halliburton failed to include more than 125,000 post spin-off Harbison-Walker claims in its open claims and in the amount used to calculate its reserve." *Id.* ¶ 239. | Halliburton "report[ed] misleading information regarding responsibility for HW claims and the number of HW claims included in the reserves." *Id.* at 065 (Lys Report at 61). |
| "Halliburton's outside auditor was Andersen . . . which . . . did not properly audit or review Halliburton's financial statements . . . and was the auditor of choice for many notorious fraudulent public companies, including Enron . . . ." *Id.* ¶ 57. | "The time period surrounding the Class Period . . . was fraught with audit failures, yet those companies that were violating GAAP were given unqualified opinions by their auditors. Many of these opinions were issued by Arthur Andersen, including the audits of Enron . . . ." *Id.* at 058 (Lys Report ¶ 215). |

Given its accounting allegations, EPJF's discovery requests included numerous requests for asbestos accounting documents[10] and took the depositions of Halliburton accountants and auditors attempting to explore EPJF's theory that Halliburton's financial statements were misleading due to GAAP violations.[11] EPJF's 30(b)(6) witness acknowledged this case has been

disclosed this fact and the likelihood that the outstanding claims would be much higher than its previous estimates. *See* SFAS No. 5, ¶ 10.").

[10] *See, e.g.*, Suppl. App. 328, EPJF's First Set of Reqs. for Produc. to Halliburton, Nos. 5 ("All documents concerning Halliburton's accounting policies and procedures for . . . Reserve for contingencies (including asbestos claims)"), 6 ("All documents concerning Halliburton's compliance with, or deviation from, Halliburton's accounting policies and procedures for . . . Reserve for contingencies (including asbestos claims)"), 7 ("All documents relating or referring to Halliburton's internal auditors' review, analysis, [or] testing, including . . . Reserve for contingencies (including asbestos claims)"), 48 ("All recurring accounting journals, including, but not limited to . . . Final monthly asbestos claims ledgers.").

[11] *See, e.g.*, Suppl. App. 354 (Sept. 25, 2008 Muchmore Dep. Tr. at 140:20–23) ("Well, did you analyze whether or not -- in the first half of 2001, did you analyze whether or not you could, ***consistent with GAAP***, book money for future asbestos claims?"), Suppl. App. 355 at 164:13–17 ("A fact-intensive inquiry as to whether or not a given liability can be estimated with enough certainty that ***under GAAP*** it has to be -- money has to be reserved to cover that liability. That's a fact intensive inquiry, is it not?") (emphases added); Suppl. App. 357 (Dec. 9, 2015 Traylor Dep. Tr. 31:18–20) ("The company wanted to make sure that its asbestos reserves were in ***compliance with GAAP*** based on its historical experience?") (emphasis added); Suppl. App. 359 (Jan. 20, 2016 Morris Dep. Tr. at 128:6–9) ("And you also agree that you would have an obligation to disclose things that were material***, under the GAAP and accounting rules***, and things that were sufficiently significant, to use your earlier phrasing?"), Suppl. App. 360 at 258:12–14 ("And you understand, I take it, ***that under GAAP***, if certain prerequisites are met, then you have to reserve for contingent future liabilities?"), Suppl. App. 361 at 259:16–19 ("And you don't remember any

centered on "accounting irregularities" since "day one."[12] And EPJF's initial expert Dr. Bates opines extensively on Halliburton's "accounting for asbestos-related contingencies."[13] This case has always centered on allegations of accounting misfeasance. EPJF should not be permitted to submit an accounting expert only at the rebuttal stage to opine on the crux of its allegations.

**2. EPJF misreads the applicable case law to permit nearly any type of expert to be disclosed for the first time on rebuttal.**

The two cases cited by EPJF as "directly on point" addressed rebuttal experts responding to affirmative defenses—not experts attempting to support allegations central to a plaintiff's complaint, as Dr. Lys does here. EPJF cites *Wireless Agents, LLC v. Sony Ericsson Mobile Communications* for the proposition that a "witness was a proper rebuttal expert because his report contained opinions that 'directly [bore]' on an issue first raised in [the] defendant's expert's report."[14] No. 05-0289, 2006 WL 5127278, at *2 (N.D. Tex. May 31, 2006) (Fitzwater, J.). In that case, however, the court found that the rebuttal expert's report was appropriate because it addressed a patent's invalidity, an affirmative defense. *Id.* Here, by contrast, the topic of Dr. Lys' report—Halliburton's accounting for asbestos liabilities—was not raised first by Halliburton's experts. It was raised first by EPJF in its Complaint. And it is not related to an affirmative defense.[15] Halliburton does not bear the burden of proving that its accounting complied with GAAP. *Cf. In re Carter-Wallace, Inc. Sec. Litig.*, 150 F.3d 153, 157 (2d Cir. 1998) ("[O]ne cannot state a claim for securities fraud merely by alleging a GAAP violation.").

---

discussion about whether or not the prerequisites for triggering ***a requirement under GAAP*** to reserve for future claims were met?") (emphases added).

[12] Suppl. App. 363–64 (Oct. 31, 2007 Byrne Dep. Tr. 46:11–47:10).

[13] *See, e.g.*, D.E. 682 at App. 155, 159, 164, 170 (Bates Report ¶¶ 157, 165, 175, 189).

[14] D.E. 685 at 8.

[15] EPJF claims Halliburton listed compliance with GAAP as an affirmative in its Answer. D.E. 685 at 11. This is not true. Halliburton listed compliance with GAAP as a defense alongside several other defenses for which Halliburton does not bear the burden of proof, such as lack of scienter, lack of transaction causation, lack of loss causation, lack of a materiality, and lack of falsity. D.E. 329 (Defs.' Answer to 4th Am. Compl.) at 92–93. Halliburton did not label these "affirmative" defenses and they are not affirmative defenses.

The second case, *Poly-America, Inc. v. Serrot International, Inc.*, also addressed an expert rebutting the affirmative defense of patent invalidity. No. 03-1457, 2002 WL 1996561, at *15-16 (N.D. Tex. Aug. 26, 2002) (J., Fitzwater). The issue was whether the expert was truly rebutting the defendant's affirmative defense expert. *Id.* The court did not address a situation where a rebuttal expert submitted a report supporting allegations in the plaintiff's complaint.

In discussing *Poly-America* and *Wireless Agents*, EPJF claims the test for whether expert testimony is proper rebuttal testimony is limited to three factors.[16] But what EPJF claims is a "test" is only a non-exclusive list of "helpful" considerations addressing a situation where the disputed testimony rebuts an affirmative defense. The court in *Poly-America* stated:

> To determine whether a disclosure is properly included under Rule 26(a)(2)(C) rather than under Rule 26(a)(2)(B), ***it will often be helpful to answer these three questions***: First, what evidence does the rebuttal expert purport to contradict or rebut? Second, is the evidence disclosed as rebuttal evidence on the same subject matter as that identified by another party . . .? Third, is the evidence disclosed as rebuttal evidence intended solely to contradict or rebut that evidence?

*Id.* at *15 (emphasis added).

This Court's more recent opinion in *U.S. Risk Insurance Group, Inc. v. U.S. Risk Management, LLC* and the authorities it cites confirms that the considerations listed in *Poly-America* do not address all situations. No. 3:11-CV-2843-M-BN, 2013 WL 6098488, at *2 (N.D. Tex. Nov. 19, 2013) (Lynn, J.). In *U.S. Risk*, this Court—without reference to the *Poly-America* factors—stated that an expert was not a true rebuttal expert in part because his testimony was not "related to 'new unforeseen facts brought out'" by another expert, but was "more probably being offered to 'contradict an expected and anticipated portion of Defendant's case.'" *Id.* (quoting *R & O Constr. Co. v. Rox Pro Int'l Grp., Ltd.*, No. 2:09-CV-01749-LRH-LR, 2011 WL 2923703, at *2 (D. Nev. July 18, 2011)).

---

16 D.E. 685 at 7.

If the factors set forth in *Poly-America* were, as EPJF claims, the only factors relevant to admissibility of a rebuttal expert, an expert's testimony would be admissible in rebuttal even if it addressed a central allegation and contradicted an anticipated portion of the defendant's case, so long as the defendant, as expected, submitted an expert report on that issue. For example, assume that EPJF also failed to submit an expert on loss causation at the initial expert designation deadline but Halliburton submitted its own loss causation expert report. Under this hypothetical, and if the *Poly-America* factors were the only relevant factors for rebuttal expert admissibility, EPJF could have waited until the rebuttal deadline to designate a loss causation expert because the late-designated expert would (1) "purport[] to contradict or rebut . . . the opinion of Halliburton's expert,"[17] (2) address "the same subject matter as that identified by Halliburton,"[18] and (3) intend "solely to [contradict] or rebut" Halliburton's expert.[19] That clearly would not be permitted. Rebuttal expert reports "are not . . . the proper place for presenting new arguments," particularly where the plaintiff can anticipate what issues will be addressed in the defendant's expert reports. *R & O Construction*, 2011 WL 2923703, at *2.

At bottom, EPJF argues that since non-compliance with GAAP is not an explicit element of securities fraud, a securities fraud plaintiff need not disclose an accounting expert at the initial expert designation stage, even in the plaintiff's case is premised solely on accounting fraud.[20] No case cited by EPJF has held that a securities fraud plaintiff—or any plaintiff for that matter—can wait until the rebuttal stage to support allegations made in the plaintiff's complaint, so long as the subject matter is not an express element of the plaintiff's case.

---

17 D.E. 685 at 8.

18 *Id.*

19 *Id.*

20 D.E. 685 at 1 ("The elements of [securities fraud] do not include demonstrating that Halliburton violated GAAP.").

**3. EPJF overreaches in its attempt to distinguish case law cited by Halliburton.**

EPJF claims that *R & O Construction*, 2011 WL 2923703, is distinguishable because in that case the plaintiff failed to submit a report at the initial disclosure stage and the purported rebuttal expert did not directly address the report of the opposing expert.[21] The court, however, explained that the appropriateness of rebuttal testimony was determined by broader standards:

> If the purpose of expert testimony is to contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything analogous to one . . . Rather, rebuttal expert testimony is limited to new unforeseen facts brought out in the other side's case.

*Id.* at *2 (citations and internal quotation marks omitted). EPJF ignores that the purported rebuttal expert in that case was struck because "[t]he report's findings do not speak to 'new unforeseen facts' brought out in [the opposing expert's] report." *Id.* at *3. As discussed above, EPJF cannot seriously argue that alleged accounting irregularities or claimed GAAP non-compliance were "new unforeseen" issues first brought out in Halliburton's expert reports.

EPJF claims *Stephenson v. Wyeth LLC*, No. 04-2312-CM, 2011 WL 4900039, at *2 (D. Kan. Oct. 14, 2011), is distinguishable because the contested expert never mentioned the opposing expert in his report, whereas Dr. Lys mentions Mr. Ranallo 110 times.[22] But the court never stated that a late-designated expert can transform himself into a proper rebuttal expert simply by reciting the opposing expert's name. Rather, *Stephenson* held that an expert addressing issues relevant to the plaintiff's case-in-chief cannot be designated on rebuttal—which is what EPJF attempts to accomplish with Dr. Lys. *Id.* at *3.

EPJF also attempts to distinguish *Stephenson* by pointing to the following language:

---

[21] D.E. 685 at 9.

[22] D.E. 685 at 11.

> The plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (***as distinct from an affirmative defense***) must put in his evidence on the issue as part of his case in chief.[23]

But EPJF cites no case holding that GAAP compliance is an affirmative defense in a securities fraud case on which the defendant bears the burden of proof. It is not. Instead, non-compliance with GAAP is the bedrock of EPJF's Complaint.

Finally, EPJF claims *People v. Kinder Morgan Energy Partners, L.P.*, No. 07CV1883-MMA (WVG), 2016 WL 427015 (S.D. Cal. Feb. 2, 2016), is "utterly inapposite" because the proponent of the contested testimony failed to submit a liability expert (and instead submitted only a damages expert) whereas EPJF submitted purported experts on liability.[24] But submitting a liability expert report on any topic does not give a plaintiff carte blanche to submit whatever manner of expert report it chooses at the rebuttal stage. In *Kinder Morgan*, the court stated that "[w]hen a plaintiff's case . . . relies in part on the viability, operation, and value of a complex product, the plaintiff must expect to introduce such expert testimony—this is particularly true when the plaintiff can expect that the defendant will attempt to show that the product cannot work or has no value." *Id.* at *5. Similarly, when EPJF's case relies on allegations of accounting misfeasance, EPJF must have expected to introduce accounting expert testimony and that Halliburton would provide evidence that its accounting was appropriate.[25]

**4. There is no good cause to excuse EPJF's late designation of Dr. Lys.**

Dr. Lys's report is not proper rebuttal testimony. EPJF's arguments that Dr. Lys should not be struck despite EPJF's late disclosure are unavailing.

---

[23] D.E. 685 at 11–12 (emphasis in EPJF's Response) (quoting *Stephenson*, 2011 WL 490003, at *1).

[24] D.E. 685 at 12–13.

[25] *Kinder Morgan* also further dispels EPJF imagined rule that, if a rebuttal expert responds to an opposing expert, their testimony is per se appropriate: "The [proponent's] response—that [the proposed expert] opines on the same subject matter as [opposing] experts, and is therefore a proper rebuttal expert—is insufficient. . . . 'If the phrase 'same subject matter' is read broadly to encompass any possible topic that relates to the subject matter at issue, it will blur the distinction between 'affirmative expert' and 'rebuttal expert.' More importantly, such a broad reading of Rule 26(a)(2)(C)(ii) will render the scope of the subject matter limitless and will lead to unjust results.'" *Id.* (quoting *Vu v. McNeil-PPC, Inc.*, 09–1656, 2010 WL 2179882, at *2 (C.D. Cal. May 7, 2010)).

First, EPJF claims that "Dr. Lys' report is important" because "Halliburton seeks to turn this case . . . into an accounting case."[26] But as detailed above, this case has always concerned accounting. Furthermore, Dr. Lys' report is of relatively little importance because the three core opinions in his report were already covered by Dr. Bates in Dr. Bates' initial report:

- ***Plaintiff claims Halliburton should have recorded a reserve for future asbestos claims.*** Dr. Bates supports this claim in his report. Dr. Lys also supports this claim while adding citations to accounting standards.[27]
- ***Plaintiff claims Halliburton's accounting presentation of certain asbestos claims in the second quarter of 2001 were misleading.*** Dr. Bates supports this claim in his report. Dr. Lys repeats Dr. Bates' opinion and adds references to accounting literature.[28]
- ***Plaintiff claims Halliburton's third quarter disclosures regarding the number of asbestos claims for which it reserved were misleading.*** In his report, Dr. Bates opines that these disclosures were misleading. Dr. Lys repeats this opinion in his own report.[29]

Second, EPJF argues that Halliburton will suffer no prejudice because Halliburton "had an entire month from the time of service of Dr. Lys' report until the close of expert discovery." Initial expert reports were due on March 11. Dr. Lys' report was served on May 13, with the close of expert discovery one month later. EPJF's late disclosure reduced the time in which Halliburton is permitted to consider Dr. Lys' report from three months to one and allowed EPJF an end-run around the scheduling order which contemplated that Halliburton would have EPJF's expert testimony in hand before Halliburton had to designate its own experts.

Third, EPJF asserts that any prejudice can be remedied by either a "short" enlargement of time to take Dr. Lys' deposition or a modification to the scheduling order.[30] Neither will cure the prejudice caused by EPJF's late designation. As a result of EPJF's late designation, Halliburton was forced to disclose its accounting expert and his expert accounting opinions first.

---

26 D.E. 685 at 14.

27 D.E. 682 at App. 092, 194, 198, 205 (Bates Report ¶¶ 19, 240, 251, 268); D.E. 682 at App. 008, 023–37 (Lys Report ¶¶ 23, 103–41).

28 D.E. 682 at App. 196–98 (Bates Report ¶¶ 246–49); D.E. 682 at App. 041–45 (Lys Report ¶¶ 159–70).

29 D.E. 682 at App. 231 (Bates Supp. Report p. 7); D.E. 682 at App. 053–56 (Lys Report ¶¶ 196–209).

30 D.E. 685 at 15.

In addition, there is no room in the current schedule to cure EPJF's late designation. Scheduling Dr. Lys' deposition even closer to the July 1 dispositive motion deadline would prejudice Halliburton even further by allowing Halliburton even less time to incorporate Dr. Lys' deposition into its dispositive motions. Modifying the scheduling order would also be unfair to Halliburton.[31] On June 3, 2016, this case will have been pending for 14 years. Delaying it further to permit EPJF to offer duplicative expert testimony designated past the disclosure deadline is inequitable.

Finally, EPJF claims that Dr. Lys' designation is justifiable because he is a true rebuttal expert who rebuts Mr. Ranallo who is "opining on previously unexplored GAAP issues."[32] This argument is circular. EPJF is arguing that its mistake should be forgiven because it did not make a mistake. Moreover, the assertion that accounting or GAAP issues were "previously unexplored" is incorrect. EPJF framed this case as an accounting fraud case from the very beginning, explored this theme extensively in discovery, and submitted an initial report by Dr. Bates repeatedly criticizing Halliburton's "financial exposure and accounting for asbestos-related contingencies."[33] There is no excuse for Dr. Lys' late designation.

**CONCLUSION**

Halliburton requests that the Court strike the Expert Report of Dr. Thomas Lys.

---

[31] D.E. 685 at 15.

[32] D.E. 685 at 15–16.

[33] *See, e.g.*, D.E. 682 at App. 155, 159, 164, 170 (Bates Report ¶¶ 157, 165, 175, 189). EPJF also claims that its mistake is innocent because it "did not contact Dr. Lys until after Halliburton served Mr. Ranallo's rebuttal report." D.E. 685 at 16. A finding of willfulness or bad faith is not required to strike a late-designating expert. *See Stephenson*, 2011 WL 4900039, at *3 (striking a purported rebuttal expert despite the fact that "[t]he court does not find that plaintiff acted in bad faith or in a willful manner."). Halliburton notes, however, that on April 22 counsel for EPJF negotiated the deposition schedule stating "[p]rovided the rest of the scheduling works, we can present ***two of our three experts*** (Bates and Coffman) during the window you requested, June 7-10, ***but not all three***." D.E. 682 at App. 233 (Ex. 4, Apr. 22, 2016 C. Goldfarb Email). By that time, EPJF's fourth expert, Dr. Lys, had already begun working for EPJF—as evidenced by the fact that Dr. Lys signed the protective order on April 22. Suppl. App. at 376 (Certification to Protective Order executed by Lys on 4/22/2016).

Respectfully submitted,

By: *<u>/s/ Jessica B. Pulliam</u>*

Jessica B. Pulliam
State Bar No. 24037309
Thomas E. O'Brien
State Bar No. 24046543
John B. Lawrence
State Bar No. 24055825
Baker Botts L.L.P.
2001 Ross Avenue, Suite 600
Dallas, Texas 75201-2980
Telephone: (214) 953-6500

David D. Sterling
State Bar No. 19170000
Baker Botts L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
Telephone: (713) 229-1522

ATTORNEYS FOR HALLIBURTON
COMPANY AND DAVID J. LESAR

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that the foregoing document was served on all counsel of record via the Court's electronic filing system on June 1, 2016.

*<u>/s/ Thomas E. O'Brien</u>*
Thomas E. O'Brien