# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| THE ERICA P. JOHN FUND, INC., et al., *On Behalf of Itself and All Others Similarly Situated*,<br><br>         Plaintiff,<br><br>  vs.<br><br><br>HALLIBURTON COMPANY and DAVID J. LESAR,<br><br>         Defendants. | **CIVIL ACTION NO.: 3:02-CV-1152-M**<br><br>**CLASS ACTION**<br><br>**<u>LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF NOTICE TO THE CLASS</u>** |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 2

   A.   Procedural and Factual Background .............................................................. 2

   B.   Reasons for Settlement ................................................................................. 8

III.    TERMS OF THE SETTLEMENT .................................................................... 9

IV.     THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY
        APPROVAL UNDER RULE 23(e) ................................................................ 10

   A.   There Are No Obvious Deficiencies in the Settlement or Reasons to Doubt Its
        Fairness ....................................................................................................... 11

   B.   The Settlement Treats All Class Members Fairly ........................................ 12

   C.   The Settlement Falls Within the Range of Reasonableness ......................... 14

   D.   The Requested Attorneys' Fees and Expenses are Fair and Reasonable ...... 16

V.      THE PROPOSED NOTICE TO THE CLASS SATISFIES RULE 23 AND DUE
        PROCESS REQUIREMENTS ....................................................................... 17

   A.   The Mechanics of the Proposed Notice Program ......................................... 18

   B.   The Scope of the Notice Program Is Adequate ............................................ 19

   C.   The Proposed Form of Notice Comports With the Requirements of Due Process,
        the PSLRA, and Rule 23 ............................................................................. 19

VI.     PROPOSED TIMELINE OF EVENTS ........................................................... 20

VII.    CONCLUSION ................................................................................................ 22

## TABLE OF AUTHORITIES

**Cases**

*Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*,

   597 F.3d 330 (5th Cir. 2010) ................................................. 5

*Ayers v. Thompson*,

   358 F.3d 356 (5th Cir. 2004) ................................................. 13

*Basic, Inc. v. Levinson*,

   485 U.S. 224 (1988).............................................................. 6

*Boston v. Tesoro Petroleum Corp.*,

   871 F.2d 1266 (5th Cir. 1989) ............................................... 17

*DeJulius v. New England Health Care Emps. Pension Fund*,

   429 F.3d 935 (10th Cir. 2005) ............................................... 23

*Dura Pharm. Inc. v. Broudo*,

   544 U.S. 336 (2005)............................................................. 15

*Erica P. John Fund, Inc. v. Halliburton Co.*,

   131 S. Ct. 2179 (2011) ("*Halliburton I*") ................................ 1

*Erica P. John Fund, Inc. v. Halliburton Co.*,

   134 S. Ct. 2398 (2014) ("*Halliburton II*") .............................. 1

*Erica P. John Fund, Inc. v. Halliburton Co.*,

   718 F.3d 423 (5th Cir. 2013) ................................................. 6

*Fidel v. Farley*,

   534 F.3d 508 (6th Cir. 2008) ................................................. 23

*Garza v. Sporting Goods Props.*,

   No. SA-CA-1082, 1996 U.S. Dist. LEXIS 2009 (W.D. Tex. Feb. 6, 1996)............................ 16

*In re Am. Bank Note Holographics*,

   127 F.Supp.2d 418 (S.D.N.Y. 2001)........................................ 14

*In re Chicken Antitrust Litig. Am. Poultry*,

   669 F.2d 228 (5th Cir. 1982) ................................................. 14

*In re Combustion, Inc.*,

   968 F. Supp. 1116 (W.D. La. 1997)........................................ 19

*In re Deepwater Horizon,*
   739 F. 3d 790 (5th Cir. 2014) ............................................................... 10

*In re Educ. Testing Serv. Praxis Principles of Learning and Teaching: Grades 7-12 Litig.,*
   447 F. Supp. 2d 612 (E.D. La. 2006) ...................................................... 20

*In re Enron Corp. Sec. & ERISA Litig.,*
   No. H-01-3624 (S.D. Tex. July 24, 2003) ............................................... 22

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.,*
   228 F.R.D. 541 (S.D. Tex. 2005) ............................................................ 18

*In re Enron Corp. Sec., Derivatives & ERISA Litig.,*
   No. H-01-3624, 2008 U.S. Dist. LEXIS 84656 (S.D. Tex. Sept. 8, 2008) .............................. 12

*In re Flag Telecom Holdings,*
   No. 02-3400, 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 5, 2010) ................................. 15

*In re Glob. Crossing Sec. & ERISA Litig.,*
   225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................ 23

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,*
   851 F. Supp. 2d. 1040 (S.D. Tex. 2012) ................................................. 13

*In re Initial Pub. Offering Sec. Litig.,*
   671 F.Supp.2d 467 (S.D.N.Y. 2009) ........................................................ 19

*In re Marsh & McLennan Cos., Inc. Sec. Litig.,*
   2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) .................................... 16

*In re Merrill Lynch & Co. Research Reports Sec. Litig.,*
   No. 02 MDL 1484, 2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. Jan. 31, 2007) ........................... 22

*In re Nissan Motor Corp. Antitrust Litig.,*
   552 F.2d 1088 (5th Cir. 1977) ............................................................ 20

*In re OCA, Inc. Sec. and Derivative Litig.,*
   No. 05-2165, 2008 U.S. Dist. LEXIS 84869 (E.D. La. Oct. 17, 2008) ........................... passim

*In re Olicom Sec. Litig.,*
   No. 94-0511 (N.D. Tex. Aug. 30, 1996) .................................................... 19

*In re Take Two Interactive Secs. Litig.,*
   No. 06 Civ. 803, 2010 U.S. Dist. LEXIS 143837 (S.D.N.Y. June 29, 2010) ......................... 23

*Klein v. O'Neal, Inc.*,

   705 F. Supp. 2d 632 (N.D. Tex. 2010) ................................................................. 11

*Lane v. Page*,

   250 F.R.D. 634 (D.N.M. 2007)............................................................................. 22

*Lasky v. Brown*,

   No. 99-1035 (M.D. La. Jan. 27, 2003)................................................................. 19

*McNamara v. Bre-X Minerals Ltd.*,

   214 F.R.D. 424 (E.D. Tex. 2002)..................................................................... 11, 12

*Mullane v. Cent. Hanover Bank & Trust Co.*,

   339 U.S. 306 (1950)............................................................................................. 20

*Nathenson v. Zonagen Inc.*,

   267 F.3d 400 (5th Cir. 2001) ............................................................................... 17

*Newby v. Enron Corp.*,

   394 F.3d 296 (5th Cir. 2004). .............................................................................. 11

*Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*,

   487 F.3d 261 (5th Cir. 2007) ................................................................................. 5

*Reed v. Gen. Motors Corp.*,

   703 F.2d 170 (5th Cir. 1983) ............................................................................... 17

*Revco Sec. Litig., Arsam Co. v. Salomon Bros., Inc.*,

   No. 89-593, 1992 U.S. Dist. LEXIS 7852 (N.D. Ohio May 6, 1992) .................... 16

*Sims v. Shearson Lehman Bros., Inc.*,

   [1993-1994 Transfer Binder] Fed. Sec. L. Rep. (CCH) P 98,134

   (N.D. Tex. Nov. 29, 1993)................................................................................... 19

*Tajudin Jarrallah v. Sodexo, Inc.*,

   452 F. App'x 465 (5th Cir. 2011) ........................................................................ 10

*Thomas v. NCO Fin. Sys.*,

   2004 U.S. Dist. LEXIS 5405 (E.D. Pa. Mar. 31, 2004)........................................ 22

*Van Horn v. Trickey,*

   840 F.2d 604 (8th Cir. 1987). .............................................................................. 10

**Statutes**

15 U.S.C. § 78u–4.................................................................................... 15, 21, 24

iv

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION § 13.14 (4th ed. 2004). ................................................. 10, 17

**Rules**

Rule 10b-5.............................................................................................................................. 3

## I.        INTRODUCTION

Lead Plaintiff, the Erica P. John Fund, Inc. ("EPJ Fund" or "Lead Plaintiff"), respectfully requests preliminary approval of a settlement with Defendants Halliburton Company ("Halliburton" or the "Company") and David J. Lesar ("Lesar," and collectively with Halliburton, "Defendants") for a total cash payment of one hundred million dollars ($100,000,000) (the "Settlement") for the benefit of the Class.[1] The terms of Settlement are set forth in the accompanying Stipulation of Settlement ("Stipulation").[2]

The Settlement was reached after many years of litigation, including two appeals that were each ultimately resolved by the Supreme Court,[3] a third appeal that is currently stayed before the Fifth Circuit while this proposed Settlement is presented to the Court for approval, extensive fact and expert discovery, and full briefing of cross-motions for summary judgment or partial summary judgment and of *Daubert* motions regarding seven experts. Lead Plaintiff EPJ Fund and Lead Counsel Boies Schiller & Flexner, LLP ("BSF") and Special Counsel Kahn Swick & Foti, LLC ("KSF") (collectively, "Class Counsel") have pursued these claims vigorously on behalf of the Class for years. Lead Plaintiff EPJ Fund opposed the original, proposed $6 million settlement that was rejected by this Court, saw the Action and the Class through not one, but two, changes in the leadership structure of Plaintiff's counsel early in the case, and has remained steadfastly at the helm of the litigation for more than a decade. The parties are able to fully appreciate the relative strengths and weaknesses of the claims and defenses in this Action because fact and expert discovery have been completed and summary

---

[1] The Class consists of all investors who purchased or otherwise acquired Halliburton common stock between August 16, 1999 and December 7, 2001, inclusive.

[2] EPJ Fund was formerly known as Archdiocese of Milwaukee Supporting Fund ("AMSF") until a name change in February of 2012. For ease of reference, Lead Plaintiff is referred to herein using its present-day name, EPJ Fund, or Lead Plaintiff, not as the predecessor entity AMSF.

[3] *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011) ("*Halliburton I*"); *Erica P. John Fund, Inc. v. Halliburton Co.*, 134 S. Ct. 2398 (2014) ("*Halliburton II*").

judgment motions have been fully briefed. The Settlement is the result of extensive arm's-length negotiations between the parties, with the assistance of former United States District Court Judge Layn R. Phillips as mediator. For the reasons detailed below, Lead Plaintiff believes that the Settlement is fair, reasonable and adequate and should be preliminarily approved.

By this motion, Lead Plaintiff seeks entry of an order: (1) granting preliminary approval of the proposed Settlement; (2) approving the forms for mailed and published notice of the Settlement; (3) authorizing the mailing and publication of these notices; and (4) setting a date and time for the fairness hearing with respect to (i) final approval of the proposed Settlement and entry of the proposed Final Judgment and Order of Dismissal with Prejudice, (ii) the Plan of Allocation and (iii) Class Counsel's application for an award of attorneys' fees and expenses (the "Final Approval Hearing").

## II.      BACKGROUND

### A.      Procedural and Factual Background

#### 1.      Factual Background and Pleadings

This class action was commenced on June 3, 2002. The Fourth Amended Complaint (the "FAC") was filed on April 4, 2006. The motions to dismiss the FAC were fully briefed and pending when the Court substituted BSF as Lead Counsel at the request of Lead Plaintiff EPJ Fund, noting "when little discovery has been taken and motions to dismiss have been fully briefed and await decision, substitution of counsel will not be detrimental to the class."[4] On March 28, 2007, the Court denied the motions to dismiss the FAC with respect to Defendants Halliburton and Lesar, and the parties proceeded with formal discovery. From that point forward, Class Counsel have worked closely with Lead Plaintiff, including in the production and analysis of over 1.3 million pages of documents, fact depositions of approximately 28 witnesses,

---

[4] *See* Order Substituting Lead Counsel at 5, dated Feb. 23, 2007 (D.E. 308).

depositions of expert witnesses for both sides (including multiple depositions of some experts), and extensive briefing on multiple rounds of class certification (resulting from two remands from the Supreme Court), a full day hearing on price impact, as well as summary judgment briefing and briefing on *Daubert* motions.

Lead Plaintiff alleges that Defendants made materially false and misleading statements and omissions regarding, *inter alia*, Halliburton's exposure to asbestos liabilities in violation of §10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder. Lead Plaintiff further alleges that, as a direct and proximate result of Defendants' misrepresentations and omissions, purchasers of Halliburton's common stock suffered losses when the truth was revealed and the artificial inflation from Class Period misrepresentations and omissions was removed from the price of Halliburton stock.

Defendants deny Lead Plaintiff's allegations. The parties disagree on, among other things, whether Defendants violated federal securities laws and whether the alleged violations caused damages to the Class Members.

2.     Lead Plaintiff and Class Counsel Appointments

On December 5, 2002, the Court appointed EPJ Fund and three other shareholders co-lead plaintiffs, and the law firm of Schiffrin & Barroway, LLP ("S&B") lead counsel. Within six months of appointment, and prior to any contemplated filing of or briefing on motions to dismiss, S&B negotiated a proposed $6 million settlement with Defendants without informing EPJ Fund about the negotiations. EPJ Fund opposed the proposed settlement at both the preliminary and final approval stages. On September 9, 2004, after full briefing and a final approval hearing, the Court denied final approval of the proposed $6 million settlement. Following the Court's order denying the settlement and directing the parties to proceed with the

litigation, S&B moved to withdraw as lead counsel and two of the then co-lead plaintiffs also moved to withdraw. EPJ Fund then moved to be appointed sole Lead Plaintiff with the law firms of Lerach, Coughlin, Stoia, Geller, Rudman & Robbins ("Lerach Firm") and Scott + Scott ("S+S") to be appointed co-lead counsel.

On May 3, 2005, the Court appointed EPJ Fund as sole Lead Plaintiff and the law firms of Lerach and S+S as co-lead counsel. Subsequently, on November 22, 2006, EPJ Fund moved the Court to replace the Lerach Firm and S+S with David Boies and BSF.[5] EPJ Fund's Motion for Substitution of Counsel was largely predicated on concerns about William Lerach's adequacy as lead counsel. The Lerach Firm and S+S opposed EPJ Fund's Motion for Substitution of Counsel and sought instead to replace EPJ Fund as Lead Plaintiff with three institutional investors.[6]

On February 23, 2007, the Court granted Lead Plaintiff's motion to substitute lead counsel over the objection of The Lerach Firm, which argued against appointing new Lead Counsel.[7] The Court noted that EPJ Fund was doing "excellent and dedicated work" and that "the facts do no dictate relieving [EPJ Fund] of its role, as opposed to relieving Current Lead Counsel of theirs."[8] The Court went on to appoint David Boies of BSF as Lead Counsel.[9]

The Court additionally noted that the CEO of AMSF, Paula John, had signed its original retainer with S+S, that Ms. John was a law school classmate of Neil Rothstein and that while Mr. Rothstein had been an attorney at S+S at the commencement of the litigation, he had recently left

---

[5] *See* Mot. Substit. Lead Counsel, dated Nov. 22, 2006 (D.E. 284); Order Substituting Lead Counsel at 3, dated Feb. 23, 2007 (D.E. 308).
[6] *See* Order Substituting Lead Counsel at 3, 6, dated Feb. 23, 2007 (D.E. 308).
[7] *Id.* at 5.
[8] *Id.* at 6. The Court also noted that S+S sought to remain lead counsel only in the capacity of co-lead counsel with the Lerach Firm. *Id.* at 4, n.4.
[9] *Id.*

4

the firm.[10] Mr. Rothstein subsequently joined Kahn Swick & Foti, LLC, ("KSF"), a boutique securities litigation law firm. KSF has served as Special Counsel to the Lead Plaintiff and has litigated the case as Special Counsel alongside Lead Counsel BSF.

      3.      Class Certification and Appeals

On September 17, 2007, EPJ Fund moved to certify a class of all persons and entities who purchased Halliburton's common stock between June 3, 1999 and December 7, 2001. The Court denied Lead Plaintiff's class certification motion because it found that Lead Plaintiff had failed to prove loss causation by a preponderance of the evidence, as required by *Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261, 265 (5th Cir. 2007),[11] but found that in all other respects Lead Plaintiff had satisfied the requirements for Class Certification under Fed. R. Civ. P. 23. Citing *Oscar*, the Fifth Circuit affirmed the Court's denial of class certification.[12] The Supreme Court, in a unanimous opinion authored by Chief Justice Roberts, reversed the Fifth Circuit, overturning *Oscar* and holding that securities fraud plaintiffs need not prove loss causation to obtain class certification.[13]

On remand, the Court certified a class consisting of all investors who bought Halliburton common stock between June 3, 1999 and December 7, 2001.[14] After granting a Rule 23(f) petition, the Fifth Circuit affirmed the District Court's ruling, rejecting Defendants' arguments and finding that alleged evidence of the absence of price impact presented to rebut the fraud-on-

---

[10] *Id.* at 2, n.3.

[11] *See Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*, No. 3:02-CV-1152-M, 2008 U.S. Dist. LEXIS 89598, at *12 (N.D. Tex. Nov. 4, 2008) *aff'd*, 597 F.3d 330 (5th Cir.) *vacated and remanded sub nom., Halliburton I*, 131 S. Ct. 2179.

[12] *See Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*, 597 F.3d 330, 334 (5th Cir. 2010) *vacated and remanded sub nom., Halliburton I*, 131 S. Ct. 2179.

[13] *See generally Halliburton I*.

[14] *See Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co*., No. 3:02-cv-1152-M, 2012 U.S. Dist. LEXIS 24823 (N.D. Tex. Jan. 27, 2012), *aff'd sub nom Erica P. John Fund, Inc. v. Halliburton Co.*, 718 F.3d 423 (5th Cir. 2013) *cert. granted*, 134 S. Ct. 636 (2013), *vacated and remanded*, 134 S. Ct. 2398 (2014).

the-market presumption was not relevant at the class certification stage.[15] The Supreme Court again granted *certiorari*. The Supreme Court issued a seminal decision, reaffirming the fraud-on-the-market presumption recognized in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988), while also holding that Defendants could rebut the presumption at the class certification stage of a case by demonstrating that an alleged corporate misstatement had no impact on the price of the stock.[16]

On remand for the second time, this Court certified a Class of all investors who purchased Halliburton common stock from August 16, 1999 through December 7, 2001, holding that Defendants had not met their burden of showing lack of price impact with respect to the December 7, 2001 disclosure.[17] This Court denied certification as to five other alleged corrective disclosures. Defendants sought interlocutory review under Rule 23(f), which was granted by the Fifth Circuit on November 4, 2015. The Fifth Circuit heard oral argument on August 31, 2016. The appeal was still pending when the parties reached this Settlement, and the appeal has been stayed by the Fifth Circuit pending the Court's review of the Settlement.

    4.      <u>Discovery, Expert Discovery and Summary Judgment</u>

Fact discovery took place from March 2007 through March 2016, during which time periods of vigorous discovery were interspersed with stays resulting from various appeals and related issues. Fact discovery involved the production of over 1.3 million pages of documents and the taking of approximately 28 fact depositions. Expert discovery in this case was also extensive and depositions of numerous experts were taken and some experts were deposed more than once. As a result of the Supreme Court's rulings in *Halliburton II*, both parties submitted additional expert reports in connection with supplemental briefing for the class certification motion, and experts for both parties testified before the Court at an evidentiary hearing on the

---

[15] *See Erica P. John Fund*, 718 F.3d 423.
[16] *See Erica P. John Fund*, 134 S. Ct. 2398.
[17] *See Erica P. John Fund, Inc. v. Halliburton Co.*, 309 F.R.D. 251, 272 (N.D. Tex. 2015).

class certification motion. Additionally, in preparation for the merits stage, Lead Plaintiff identified four experts who were expected to testify at trial, while Defendants submitted reports from three proposed testifying experts. Each expert submitted a written report summarizing his or her findings, which was followed by various rebuttal and reply reports. Each testifying expert was also deposed.

On September 2, 2016, the parties filed cross-motions for summary judgment. Defendants' motion sought summary judgment on numerous, alternative grounds, including materiality, scienter, falsity, and loss causation. Lead Plaintiff's motion sought partial summary judgment on the falsity of Defendants' assertions regarding its total asbestos liability in two SEC filings. The parties' appendices in support of and in opposition to their cross motions for (partial or full) summary judgment exceeded 9,400 pages. The parties also filed *Daubert* motions directed at all seven proposed experts on September 2, 2016, and those motions were fully briefed and pending when the parties reached this Settlement.

    5.    Mediation and Settlement

After substantial litigation, including significant formal discovery, extensive class certification briefing, and one trip to the Supreme Court, Lead Plaintiff and Defendants, through counsel, engaged in an initial round of formal mediation on December 9, 2013 before former United States District Court Judge Layn R. Phillips. Prior to this first round of formal mediation, the parties submitted mediation statements and reply statements. After a day-long mediation session before Judge Phillips, during which counsel for all parties were present, the parties were unable to come to an agreement on terms of a potential settlement and the parties continued litigating.

On December 16, 2016, after the completion of fact and expert discovery and after

briefing on dispositive motions, the parties and counsel participated in another full-day mediation session before Judge Phillips. Leading up to the in-person mediation session, the parties submitted confidential mediation statements to Judge Phillips. In connection with that mediation, on December 23, 2016, the Parties agreed to settle the Action for the sum of $100,000,000.00, subject to Court approval. The parties then drafted and negotiated the terms of the Stipulation and supporting exhibits, which were executed on February 21, 2017, and filed with the Court with this motion.

### B.      Reasons for Settlement

Over the course of the many years that Lead Plaintiff and Class Counsel have vigorously prosecuted this action, they have conducted an exhaustive investigation of the claims in this case. This investigation includes extensive formal fact discovery, class certification briefing, three appeals in front of the Fifth Circuit, two trips to the Supreme Court, including full briefing and oral argument for each, expert discovery, full briefing on Defendants' motion for summary judgment and Plaintiff's motion for partial summary judgment, full briefing on *Daubert* motions, and multiple rounds of mediation as well as informal negotiations among counsel. Class Counsel also retained numerous outside experts to fully investigate the claims. The Settlement was negotiated at a point when fact and expert discovery had been completed and when the parties had a thorough understanding of the strengths and weakness of their respective positions in the litigation.

While Lead Plaintiff and Class Counsel strongly believe that the claims are meritorious, they also recognize the substantial risks inherent in attempting to obtain a larger recovery for the Class. Lead Plaintiff decided to enter the Settlement after carefully weighing the benefits of continuing to pursue the Class's claims against the risks involved in doing so. Given the

uncertainty caused by, among other thing, the pending appeal before the Fifth Circuit of the class certification order, the arguments presented in Defendants' summary judgment and *Daubert* motions, the uncertainty of trial, and the near certainty of an appeal and substantial additional delays should Lead Plaintiff prevail at trial, Lead Plaintiff and Class Counsel believe that this Settlement is a very good result for the Class. The Settlement provides a significant, certain and immediate all-cash benefit for the Class and eliminates the substantial risk that continued litigation may result in a smaller recovery at some indeterminate point in the future, or no recovery at all.

Defendants have denied and continue to deny all of the claims and contentions alleged by Lead Plaintiff in the case. Nevertheless, Defendants concluded that it is desirable to fully and finally resolve this litigation in the manner and on the terms set forth in the Stipulation. For Defendants, resolution of the litigation limits further expense and inconvenience with respect to the matters at issue in this case. Defendants have also taken into account the uncertainty and risks inherent in any litigation, and the likelihood that if the class certification order were upheld on appeal, the cost of settling this case would increase as it would if this Court denied Defendants' summary judgment or *Daubert* motions. Based on this assessment, Defendants have determined that is desirable and beneficial to settle this litigation as set forth in the Stipulation.

Lead Plaintiff and Class Counsel submit that the proposed Settlement is sufficiently within the range of possible approval to warrant preliminary approval.

### III.   TERMS OF THE SETTLEMENT

The parties have entered into an agreement that resolves all claims in this Litigation as to all Defendants. The Settlement provides a benefit to the Class in the amount of one hundred million dollars ($100,000,000.00) in cash in exchange for the release of certain claims against

Defendants, as defined more fully in the Stipulation.

## IV.   THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

Under Rule 23(e), a court must review any "settlement, voluntary dismissal, or compromise" of the "claims, issues or defenses of a certified class." Fed. R. Civ. P. 23(e). A court should approve a proposed class action settlement if it determines that the settlement is "fair, reasonable, and adequate, as well as consistent with the public interest." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Whether to grant preliminary approval is within the sound discretion of the court, which should exercise its judgment in the context of public policy that strongly favors the pretrial settlement of class action lawsuits. *See, e.g.*, *In re Deepwater Horizon*, 739 F. 3d 790, 807 (5th Cir. 2014), *cert. denied sub nom. BP Expl. & Prod. Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S. Ct. 754 (2014); *Tajudin Jarrallah v. Sodexo, Inc.*, 452 F. App'x 465, 468 (5th Cir. 2011). Indeed, "there is an overriding public interest in favor of settlement." *Cotton,* 559 F.2d at 1331.

The procedure for review of a proposed class action settlement is a well-established two-step process. *See* MANUAL FOR COMPLEX LITIGATION § 13.14 (4th ed. 2004); *see also McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002). First, the court conducts a preliminary inquiry,[18] the purpose of which is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." MANUAL FOR COMPLEX LITIGATION § 21.632, at 320-21. If the court preliminarily approves the settlement, the class is notified and Class Members are provided an opportunity to be heard at a final fairness hearing concerning the merits of the settlement. *Id.* § 21.633-634, at

---

[18] While a formal hearing is required at the final fairness stage to allow class members an opportunity to object to the settlement, the plan of allocation, and/or the fee and expense request, no hearing is necessary at the preliminary approval stage unless the court so requires.

321-22.

At the preliminary approval stage, the court should consider two factors in making its determination whether approval is warranted: (1) the extent of informed, arm's-length negotiations between the parties; and (2) whether the resulting settlement is within the range of what might be found fair, reasonable, and adequate. *See e.g.*, *Newby v. Enron Corp.*, 394 F.3d 296 (5th Cir. 2004). Indeed, a strong initial presumption of fairness attaches to the proposed settlement if, as here, the settlement is reached by experienced counsel after arm's-length negotiations. *See Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010).

Weighing the fairness of a settlement is within the sound discretion of the court. *See In re Enron Corp. Sec., Derivatives & ERISA Litig.*, No. H-01-3624, 2008 U.S. Dist. LEXIS 84656, at *40 (S.D. Tex. Sept. 8, 2008). As long as the settlement appears to fall within the range of possible approval, the court should grant preliminary approval. *In re OCA, Inc. Sec. and Derivative Litig.*, No. 05-2165, 2008 U.S. Dist. LEXIS 84869, at *37 (E.D. La. Oct. 17, 2008). For preliminary approval purposes, courts in this circuit consider whether the settlement "does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of a class representative or of segments of the class, or of excessive compensation for attorneys, and appears to fall within the range of possible approval." *McNamara,* 214 F.R.D. at 430; *see also In re OCA,* 2008 U.S. Dist. LEXIS 84869, at *37.

In this case, the proposed Settlement meets the standard for preliminary approval established by the Fifth Circuit and therefore fully merits the Court's preliminary approval.

## A.   There Are No Obvious Deficiencies in the Settlement or Reasons to Doubt Its Fairness

In determining whether deficiencies exist in the fairness, adequacy and reasonableness of a settlement, courts examine the process and the stage of the litigation as well as the terms of the

11

settlement. *See In re OCA,* 2008 U.S. Dist. LEXIS 84869, at *37. Courts have found that fairness may be presumed when there is an arm's-length settlement after "meaningful discovery" has been conducted. *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d. 1040, 1063 (S.D. Tex. 2012); *see also Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) (stage of the proceedings favored settlement when discovery provided ample information with which to evaluate the merits of the competing positions).

In this case, the Settlement has no deficiencies in the process through which it was reached. The Settlement was obtained through multiple rounds of mediated negotiations before an experienced, neutral mediator, Judge Phillips. Moreover, all parties were represented by highly experienced and accomplished attorneys who had been litigating this case for years, and were well-apprised of the strengths and weaknesses of their respective positions.

The extensive history of this case, as well as the stage of the litigation at the time of settlement, also weigh strongly in favor of a presumption of fairness of the Settlement. So does the role played by the Lead Plaintiff. The Lead Plaintiff's central involvement in the case arose squarely due to Lead Plaintiff's objection to a previously proposed $6 million settlement, and the desire to continue litigating for a fair resolution of the case for Halliburton shareholders. After many years of litigation, the accumulation of the information discovered through the litigation process has permitted Lead Plaintiff to be well-informed about the strengths and weaknesses of the case and to engage in effective settlement discussions. Indeed, after extensive factual and expert discovery, and after numerous legal questions were resolved through motions and appeals, there can be no doubt that the parties were fully informed to negotiate the settlement.

## B.    The Settlement Treats All Class Members Fairly

The Settlement also meets the requirement of fair treatment of all Class Members

12

because it treats all Class Members equally pursuant to the directives of the PSLRA.

Approval of a plan of allocation of settlement proceeds among the members of the class is governed by the same standard of fairness, reasonableness and adequacy applicable to approval of the settlement as a whole. *See In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982) (standard of review "applies with as much force to the review of the allocation agreement as it does to the review of the overall settlement between plaintiffs and defendants"); *see also In re Am. Bank Note Holographics*, 127 F.Supp.2d 418 (S.D.N.Y. 2001) (plan of allocation "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel") (citations omitted). Ultimately, the court should grant preliminary approval if the "proposed allocation plan compensates class members in relation to the timing of their actual purchases and sales as well as the amount of their actual losses." *In re Oca*, 2008 U.S. Dist. LEXIS 84869, at *40.

Here, the Plan of Allocation treats all class members equally – providing *pro rata* compensation to all Class Members who purchased common stock during the Class Period, and held those shares through the last day of the Class Period. Any potential differences in per-share recovery from one shareholder to another are based solely on legal limitations of recovery, such as the preclusion of recovery for in-and-out trades under *Dura Pharm. Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005), or the limitation of damages under the PSLRA's 90-day lookback rule. *See* 15 U.S.C. § 78u–4(e)(1); *see* Notice of Pendency, attached hereto as Exhibit A-3.

Additionally, the Plan of Allocation was developed in consultation with Lead Plaintiff's damages expert, who reviewed the Complaint, publicly available information regarding Halliburton, statistical analysis of the price movements of Halliburton common stock, and the price performance of relevant market and peer indices during the Class Period.

13

As described in the Stipulation and Notice, Lead Plaintiff will move the Court for an award compensating Lead Plaintiff for its hundreds of hours of time directly related to its dedicated representation of the Class in an amount up to $100,000. This request is explicitly contemplated by the PSLRA (*see* 15 U.S.C. § 78u–4(a)(4)) and is routinely awarded in similar cases. *See, e.g.*, *In re Flag Telecom Holdings*, No. 02-3400, 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 5, 2010) (awarding $100,000 to lead plaintiff who was actively involved in this litigation, produced over 4,000 pages of documents from his business's files, and spent more than four hundred hours on the litigation over eight years); *Revco Sec. Litig., Arsam Co. v. Salomon Bros., Inc.*, No. 89-593, 1992 U.S. Dist. LEXIS 7852 (N.D. Ohio May 6, 1992) (awarding class representative $200,000 because of diligence and because class would have recovered nothing if not for the representative's intervention and involvement in the case). Such awards, which are designed to compensate a lead plaintiff for time, costs and expenses, are particularly appropriate in cases such as this, where the Action reached an advanced stage after a prolonged period of litigation. *See e.g.*, *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) (awarding lead plaintiff groups fees in the amounts of $70,000 and $144,657.14 for a total award of $214,657.14 due to their active involvement and oversight of case lasting five years). Therefore, such reimbursement does not improperly grant preferential treatment to Lead Plaintiff, and does not weigh against preliminary approval of the Settlement.

## C.    The Settlement Falls Within the Range of Reasonableness

In evaluating whether a settlement falls within the range of reasonableness, "the court is not to decide the issues or try the case via the fairness hearing because, 'the very purpose of the compromise is to avoid the delay and expense of trial.'" *Garza v. Sporting Goods Props.*, No.

SA-CA-1082, 1996 U.S. Dist. LEXIS 2009, at *49 (W.D. Tex. Feb. 6, 1996) *citing Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (additional citations omitted). Courts should recognize the "uncertainty of litigation" and the potential difficulty of proving liability and damages at trial. *Id.* at *49. This is particularly true in the case of securities class actions. *See, e.g.*, *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 412 (5th Cir. 2001) (recognizing the complexity of securities fraud class action claims brought under the PSLRA); *Boston v. Tesoro Petroleum Corp.*, 871 F.2d 1266, 1278 (5th Cir. 1989) (recognizing that securities fraud trial was long and complex).

Lead Plaintiff and Class Counsel believe that the proposed Settlement of $100,000,000 in exchange for the release of claims against Defendants adequately reflects the value of this case at this juncture. Class Counsel have expended substantial amounts of time and money developing the legal and factual case against Defendants with the assistance of extensive fact and expert discovery. Based on that work, Lead Plaintiff believes there is substantial evidence supporting its arguments and further believes that Lead Plaintiff has a reasonable probability of prevailing on appeal, at summary judgment, and at trial. Nevertheless, Defendants have articulated significant defenses to Lead Plaintiff's allegations, which could be accepted by the Fifth Circuit in the pending appeal, by this Court on summary judgment, or by a jury at trial. Among other things, Defendants have claimed that the alleged corrective disclosure on December 7, 2001 is not a corrective disclosure and that Defendants fully complied with the federal securities laws and did not make any materially untrue or misleading statements or omissions. Defendants also contest: (1) that they acted with scienter; (2) the extent to which the statements that Lead Plaintiff alleged as materially false or misleading influenced (if at all) the trading prices of Halliburton common stock at various times during the relevant time period; and (3) the measure and amount of

recoverable damages, if any. If Defendants were successful in convincing the Court or a jury of such arguments, the case could be over, with no recovery for the Class.

Furthermore, to the extent Lead Plaintiff succeeded on any claims, Defendants could challenge those issues on appeal, which could result in additional years of litigation with no certainty as to outcome. Considering the present time-value of money and the risk that the Class would not succeed in proving liability or in establishing loss causation or damages in excess of the Settlement amount, Lead Plaintiff believes this Settlement is well within the range of reasonableness. *See In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005) ("The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand."). These risks, when balanced against the immediate benefits of this Settlement, favor a finding that the Settlement is well within the range of reasonableness.

### D.    The Requested Attorneys' Fees and Expenses are Fair and Reasonable

Class Counsel will move the Court to award attorneys' fees in an amount not greater than one-third (33⅓%) of the gross Settlement Fund and reimbursement of expenses incurred in connection with the prosecution of this action not to exceed $7,500,000.

Courts in this Circuit and others grant awards up to and at times exceeding 33⅓% in class actions. *See, e.g., Sims v. Shearson Lehman Bros., Inc.*, [1993-1994 Transfer Binder] Fed. Sec. L. Rep. (CCH) P 98,134, at 98,976 (N.D. Tex. Nov. 29, 1993) (awarding fee equal to 33⅓% of $30 million settlement in securities case); *Lasky v. Brown*, No. 99-1035 (M.D. La. Jan. 27, 2003) (awarding fee equal to 33⅓% of $20.5 million settlement in securities case); *In re Olicom Sec. Litig.*, No. 94-0511 (N.D. Tex. Aug. 30, 1996) (awarding fee equal to 33⅓% of $7.5 million settlement in securities case); *In re Initial Pub. Offering Sec. Litig.*, 671 F.Supp.2d 467

(S.D.N.Y. 2009) (awarding fee equal to 33⅓% of $510 million settlement in securities case); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1133 (W.D. La. 1997) (finding that district courts in the Fifth Circuit have awarded percentages of approximately one-third contingency fee and that 50 percent of the fund is the upper limit).

The request of up to one-third of the gross Settlement Fund is appropriate here given the unique nature of this case, which led to two opinions by the Supreme Court and required extraordinary time, effort, skill and resources over many years; the substantial lodestar Class Counsel incurred in prosecuting this case; and the benefit achieved of a settlement of $100,000,000. Lead Plaintiff and Class Counsel believe that this award is justified and will be fully supported at the final approval stage.[19] *See, e.g.*, *In re Educ. Testing Serv. Praxis Principles of Learning and Teaching: Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 628 (E.D. La. 2006). At this juncture, in the event the Court preliminarily approves the settlement, no specific fee award will be established by the Court, but a 33⅓% ceiling on Class Counsel's request, or such other upper limit the Court deems appropriate, will be put in place and noticed to Class Members.

## V. THE PROPOSED NOTICE TO THE CLASS SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.'" MANUAL FOR COMPLEX LITIGATION § 21.312, at 414 (4th ed. 2004). In order to satisfy the due process requirements, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S.

---

[19] At the final approval stage, plaintiffs' counsel will also submit to the Court support for its request for reimbursement of litigation expenses, which shall not exceed $7,500,000. This amount does not include the costs of claims administration, which will depend on the number of notice packets sent and claims received. An application for reimbursement of such costs will also be made at the final approval stage.

306, 314 (1950). Notice should also contain "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977).

A.    **The Mechanics of the Proposed Notice Program**

Lead Plaintiff proposes that notice be given in the form of the attached Exhibits A-1 and A-3 to the proposed preliminary approval Order, which is attached to the Stipulation as Exhibit A. The proposed form and method of Class notice describes in basic English the terms of operation of the Settlement, the considerations that caused Class Counsel to conclude the Settlement is fair and adequate, the maximum counsel fees and class representative compensation that may be sought, the procedure for objecting to the Settlement, and the date, time, and place of the fairness hearing.

The Claims Administrator, JND Legal Administration ("JND" or "Claims Administrator"), anticipates making an initial mailing to the Class Members whose names appear in the depository's transfer agent records and to brokers, banks, and other financial institutions that the Claims Administrator believes may hold Halliburton common stock in street name for Class Members. Lead Plaintiff also proposes publishing a summary notice in the form attached to the Stipulation as Exhibit A-3 ("Summary Notice"), which provides an abbreviated but informative description of the action and the proposed Settlement, and also explains how to obtain the more detailed Notice of Pendency ("Notice") and Proof of Claim forms. The Notice and Proof of Claim forms, as well as the Stipulation detailing the Settlement, will also be posted on a website hosted by the Claims Administrator and dedicated to the settlement administration of this litigation. The Summary Notice will be published once in both print and online versions

of the *Investor's Business Daily* and once online over the PR Newswire.[20] Courts have consistently approved settlements that published the same number of notices using these publications.[21]

### B.     The Scope of the Notice Program Is Adequate

The proposed forms of notice will fairly apprise Class Members of the Settlement and their options with respect thereto and fully satisfy due process requirements. There are no "rigid rules" that apply when determining the adequacy of notice for a class action settlement. Rather, when measuring the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules, the court should look to the reasonableness of the notice program. *See In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484, 2007 U.S. Dist. LEXIS 9450, at *26-28 (S.D.N.Y. Jan. 31, 2007); *see also In re Enron Corp. Sec. & ERISA Litig.*, Civ. No. H-01-3624, at 6 (S.D. Tex. July 24, 2003); *In re OCA,* 2008 U.S. Dist. LEXIS 84869, at *48-52. Indeed, courts have found notice such as that proposed by Lead Plaintiff adequate in numerous securities class action settlements.[22]

### C.     The Proposed Form of Notice Comports With the Requirements of
####        Due Process, the PSLRA, and Rule 23

The content of a notice is generally found to be reasonable if "the plain language of the

---

[20] *Investor's Business Daily* and PR Newswire are both widely circulated national business publications, as required by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). According to the publication's website, the total audience of *Investor's Business Daily* is approximately 457,000 readers. *See* http://www.investors.com/about-ibd/media-kit/investors-business-daily/audience. According to PR Newswire's website, every release includes distribution to a network of over 5,000 websites and databases available to the investment community. *See* http://www.prnewswire.com/knowledge-center/press-release-101-tips-glossary-of-terms.html.

[21] *See, e.g.*, *Lane v. Page*, 250 F.R.D. 634, 646 (D.N.M. 2007) (publication in *Investor's Business Daily* sufficient); *Thomas v. NCO Fin. Sys.*, No. 00-CV-05118, 2004 U.S. Dist. LEXIS 5405, at *14 (E.D. Pa. Mar. 31, 2004) (publication notice using PR Newswire was "calculated to have ubiquitous reach.").

[22] *See, e.g.*, *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) (individual notice to all reasonably locatable class members, publication in newspapers and on websites); *In re Take Two Interactive Secs. Litig.*, No. 06 Civ. 803, 2010 U.S. Dist. LEXIS 143837, at *43-45 (S.D.N.Y. June 29, 2010); *Fidel v. Farley*, 534 F.3d 508, 513-14 (6th Cir. 2008); *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir.   2005).

Notice apprises all class members of the nature of the action." *In re OCA, Inc.*, 2008 U.S. Dist. LEXIS 84869, at *47. Specifically, with respect to cases filed under the PSLRA, notices of settlements must state: (i) the amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis; (ii) if the parties do not agree on the average amount of damages per share that would be recoverable in the event plaintiff prevailed, a statement from each party concerning the issue(s) on which the parties disagree; (iii) a statement indicating that settling parties or counsel intend to make an application for an award of attorneys' fees and costs (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought; (iv) the name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions concerning any matter contained in the notice of settlement published or otherwise disseminated to the class; (v) a brief statement explaining the reasons why the parties are proposing the settlement; and (vi) such other information as may be required by the court. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).

The proposed Notice contains all of the information required by the PSLRA. *See* Notice, Exhibit A-1 to the Stipulation. The information is provided in a format that is accessible to the reader and advises Class Members of their right to exclude themselves from or object to any aspect of the Settlement. Accordingly, Lead Plaintiff respectfully submits that the proposed form of Notice satisfies the PSLRA, Due Process, and Fed. R. Civ. P. 23, and should therefore be approved.

## VI.    PROPOSED TIMELINE OF EVENTS

In conjunction with the order preliminarily approving the Settlement, Lead Plaintiff respectfully requests the Court set deadlines for the following events, and has proposed a

schedule, which is set forth below:

| Event | Deadline |
|---|---|
| Notice and the Claim Form shall be mailed by first class mail to all Class Members (the "Notice Date") | 14 days of entry of this Order: |
| Summary Notice to be published in the *Investor's Business Daily* and once online over the *PR Newswire*, and Class Counsel shall place a copy of the Complaint and the Stipulation (including Exhibits) on the website of Class Counsel or a website maintained by Class Counsel | 21 days of entry of this Order: |
| Class Counsel to file affidavit of notice mailing and publication | Within 14 days of the Notice Date: |
| Deadline for filing and serving all opening briefs and supporting documents in support of Applications | 28 days prior to the Final Settlement Hearing: |
| Deadline for submitting Requests for Exclusion or any written objections | 21 days prior to the Final Settlement Hearing: |
| Deadline for provision of timely Requests for Exclusion to Defendants' Counsel | 15 days prior to the Final Settlement Hearing |
| Deadline for filing and serving any responses or oppositions to any of the Applications | 14 days prior to the Final Settlement Hearing: |
| Deadline for Defendants to exercise option to terminate Settlement pursuant to ¶1 of Supplemental Agreement | 10 days prior to the Final Settlement Hearing |
| Deadline for filing and serving reply papers, if any, in further support of the Applications or in response to any objections | 7 days prior to the Final Settlement Hearing: |
| Deadline for Defendants to submit withdrawal of termination pursuant to ¶1 of Supplemental Agreement | 1 day prior to Final Settlement Hearing |
| Date of Settlement Fairness Hearing | At least 75 Days after the Notice Date |

21

| Deadline for Class Members' submission of Proof of Claim and Release forms | Postmarked no later than 120 days after Notice Date |
|---|---|

## VII.    CONCLUSION

Based on the reasons discussed above, Lead Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the proposed Settlement; (2) approve the forms for mailed and published Notice of the Settlement; (3) authorize the mailing and publication of these Notices; and (4) set a date and time for the fairness hearing with respect to (i) final approval of the proposed Settlement and entry of the proposed Final Judgment and Order of Dismissal with Prejudice, (ii) the Plan of Allocation and (ii) Class Counsel's application for an award of attorneys' fees and expenses.

22

Dated this 21st day of February, 2017.                    Respectfully submitted,

                                                          /s/ Carl E. Goldfarb
                                                          Carl E. Goldfarb

Kim E. Miller, Esq.                                       David Boies, Esq.
*(admitted pro hac vice)*                                 *(admitted pro hac vice)*
KAHN SWICK & FOTI, LLC                                    BOIES, SCHILLER & FLEXNER LLP
250 Park Avenue, Suite 2040                               333 Main Street
New York, NY  10177                                       Armonk, NY  10504
Tel:  (212) 696-3730                                      Tel:  (914) 749-8200
Fax: (504) 455-1498                                       Fax: (914) 749-8300
kim.miller@ksfcounsel.com                                 dboies@bsfllp.com

Lewis S. Kahn, Esq.                                       Carl E. Goldfarb, Esq.
Michael Swick, Esq.                                       *(admitted pro hac vice)*
Neil Rothstein, Esq.                                      BOIES, SCHILLER & FLEXNER LLP
*(admitted pro hac vice)*                                 401 E. Las Olas Blvd., Suite 1200
KAHN SWICK & FOTI, LLC                                    Ft. Lauderdale, FL  33301
206 Covington Street                                      Tel:  (954) 356-0011
Madisonville, LA  70447                                   Fax: (954) 356-0022
Tel:  (504) 455-1400                                      cgoldfarb@bsfllp.com
Fax: (504) 455-1498
bbgwwt@gmail.com                                          *LEAD COUNSEL TO LEAD PLAINTIFF,*
                                                          *THE ERICA P. JOHN FUND, INC., AND*
*SPECIAL COUNSEL TO LEAD PLAINTIFF,*                      *THE CLASS*
*THE ERICA P. JOHN*
*FUND, INC., AND THE CLASS*

23

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on February 21, 2017, I served the attached document via

CM/ECF System to the following counsel of record.

Jessica B. Pulliam
Tom O'Brien
John Lawrence
BAKER BOTTS, LLP
2001 Ross Avenue, Suite 600
Dallas, Texas 75201-2980
Tel.: (512) 322-2500
Fax: (512) 322-2501
**Jessica.Pulliam@bakerbotts.com**
**tom.obrien@bakerbotts.com**
**john.lawrence@bakerbotts.com**

David D. Sterling
BAKER BOTTS, LLP
910 Louisiana Street
Houston, Texas 77002-4995
Tel: (713) 229-1234
Fax: (713) 229-2099
**David.Sterling@bakerbotts.com**

/s/ Carl E. Goldfarb
Carl E. Goldfarb