# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

THE ERICA P. JOHN FUND, INC., et al., *On Behalf of Itself and All Others Similarly Situated*,

          Plaintiff,

vs.

HALLIBURTON COMPANY and DAVID J. LESAR,

          Defendants.

**CIVIL ACTION NO.: 3:02-CV-1152-M**

**CLASS ACTION**

## MOTION AND MEMORANDUM IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ...................................................................................................................... 4

I.  UNDER CONTROLLING CASE LAW, CLASS COUNSEL ARE ENTITLED
    TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND ................. 4

II. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER
    EITHER A PERCENTAGE-OF-THE-FUND OR LODESTAR ANALYSIS ................. 4

    A.  The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-
        Fund Approach .................................................................................................. 5

    B.  The Requested Attorneys' Fees Are Reasonable Under the Lodestar Approach .... 7

III. OTHER FACTORS CONSIDERED BY COURTS IN THE FIFTH CIRCUIT
     CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE ............... 11

    A.  The *Johnson* Factors Confirm that the Requested Fee is Fair
        and Reasonable ............................................................................................... 11

        1.  The Time and Labor Required Support the Fee Award ........................... 11

        2.  The Novelty and Difficulty of the Issues Presented Support the Fee
            Award .................................................................................................... 13

        3.  The Skill Required to Perform the Legal Services Properly, and the
            Experience, Reputation and Ability of the Attorneys Support the Fee
            Award .................................................................................................... 15

        4.  The Preclusion of Other Employment Support the Fee Award ............... 16

        5.  The Customary Fee Supports the Fee Award .......................................... 17

        6.  The Contingent Nature of the Fee Supports the Fee Award ................... 17

        7.  The Results Achieved Support the Fee Award ........................................ 18

        8.  The Undesirability of the Case Supports the Fee Award ........................ 20

        9.  Awards in Similar Cases Support the Fee Award ................................... 21

    B.  Other Factors Considered by the Courts Further Support the Requested
        Fee as Fair and Reasonable ............................................................................. 22

       1.     Public Policy Considerations Support the Requested Fee......................... 22

       2.     The Lead Plaintiff Endorses This Fee....................................................... 23

       3.     The Reaction of the Class to Date Supports the Requested Fee............... 23

IV.    THE EXPENSES INCURRED ARE REASONABLE AND WERE
       NECESSARY TO ACHIEVE THE RESULTST OBTAINED ........................................ 24

CONCLUSION.................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) .................................................. 15

*Albright v. Good Shepherd Hosp.*,
  901 F.2d 438 (5th Cir. 1990) .................................................. 20

*Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, No.,
  C84-3916, 2000 WL 1751297 (N.D. Ohio Oct. 27, 2000) ...................... 14

*Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*,
  2008 WL 4791492 (N.D. Tex., Nov. 04, 2008) ........................... 2, 13, 23

*Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*,
  597 F.3d 330 (5th Cir. 2010) ................................................ 2, 13

*Barton v. Drummond Co.*,
  636 F.2d 978 (5th Cir. 1981) .................................................. 4

*Basic v. Levinson*,
  *Inc.*, 485 U.S. 224(1988) .................................................... 12

*Becerra v. Radioshack Corp.*,
  No. 11-3586 YGR, 2014 WL 1266622 (N.D. Cal. Mar. 26, 2014) ................ 9

*Billitteri v. Securities America, Inc.*,
  2011 WL 3585983 (N.D.Tex. Aug. 4, 2011) .............................. *passim*

*Blum v. Stenson*,
  465 U.S. 886 (1984) ........................................................... 5

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ........................................................... 4

*Burford v. Cargill, Inc.*,
  No. 05-0283, 2012 WL 5471985 (W.D. La Nov. 8, 2012) ...................... 17

*Camden I Condo. Ass'n v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ............................................ 11, 22

*Camp v. Progressive Corp.*,
  No. CIV.A. 01-2680, 2004 WL 2149079 (E.D. La. Sept. 23, 2004) ............. 9

*City of Burlington v. Dague*,
    505 U.S. 557 (1992) ........................................................................................... 9

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
    No. CIV. 6:12-1609, 2015 WL 965696 (W.D. La. Mar. 3, 2015) ......................... 5,7

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) .................................................................... 10, 16

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ............................................................................. 17

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    309 F.R.D. 251 (N.D. Tex. 2015) ..................................................................... 14

*Erica P. John Fund, Inc.* v. *Halliburton Co.*,
    563 U.S. 804 (2011) .......................................................................................... 1

*Evans v. TIN, Inc.*,
    No. CIV.A. 11- 2182, 2013 WL 4501061 (E.D. La. Aug. 21, 2013) ..................... 21

*Farrar v. Hobby*,
    506 U.S. 103 (1992) .......................................................................................... 18

*Finkel v. Docutel/Olivetta Corp.*,
    CA3–84–0566–T (N.D. Tex. Feb. 23, 1990) ....................................................... 6

*Garza v. Sporting Goods Props.*,
    CIVIL ACTION NO. SA-93-CA-1082,
    1996 WL 56247 (W.D. Tex. Feb. 6, 1996) ......................................................... 6

*Halliburton Co. v. Erica P. John Fund, Inc. (Halliburton II)*,
    134 S. Ct. 2398 (2014) ..................................................................................... 1

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .......................................................................................... 18

*In re Apollo Group Inc. Sec. Litig.*,
    2012 WL 1378677 (D. Ariz. April 20, 2012) ...................................................... 7

*In re Catfish Antitrust Litig.*,
    939 F. Supp. 493 (N.D. Miss. 1996) ................................................................. 6

*In re Combustion, Inc.*,
    968 F. Supp. 1116 (W.D. La. 1997) ................................................................. 6

*In re E. W. Blanch Holdings, Inc. Sec. Litig.*,
    No. 01-258, 2003 WL 23335319 (D. Minn. June 16, 2003) ............................... 7

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*,
   447 F. Supp. 2d 612 (E.D. La. 2006) ................................................................ 20, 21

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   586 F. Supp. 2d 732 (S.D. Tex. 2008) ................................................................. 8, 15

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
   228 F.R.D. 541 (S.D. Tex. 2005) ................................................................. 19

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .......................... 22

*In re Gen. Instrument Sec. Litig.*,
   209 F. Supp. 2d 423 (E.D. Pa. 2001) ................................................................. 7

*In re Giant Interactive Group, Inc.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................. 7

*In re Green Tree Fin. Corp. Stock Litig./Options Litig.*,
   Nos. 97-2666 and 97-2679, December 18, 2003 slip op. (D. Minn. Dec. 18, 2003) ................ 7

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ................................................................. 10

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex.*, N.A.,
   No. 02-ML-1475-DT(RCx), 2005 WL 1594389 (C.D. Cal. June 10, 2005) .......................... 7

*In re Initial Pub. Offering Sec. Litig.*,
   671 F.Supp.2d 467 (S.D.N.Y. 2009) ................................................................. 7

*In re Lease Oil Antitrust Litig.*,
   186 F.R.D. 403 (S.D. Tex. 1999) ................................................................. 6

*In re Lomas Fin. Corp. Sec. Litig.*,
   Civil Action No. CA–3–89–1962–G (N.D. Tex. Jan. 28, 1992) ............................... 6

*In re Motor Fuel Temperature Sales Practices Litig.*,
   No. 07-MD-1840-KHV, 2016 WL 4445438 (D. Kan. Aug. 24, 2016) .................................. 14

*In re OCA, Inc. Sec. & Derivative Litig.*,
   No. 05-2165, 2009 WL 512081 (E.D. La. Mar. 2, 2009) ...................................... 15,18

*In re Olicom Sec. Litig.*,
   No. 94-0511-D (N.D. Tex. Aug. 30, 1996) ................................................................. 6

*In re Prudential-Bache Energy Income Partnerships Sec. Lit.*,
   1994 WL 202394 (E.D. La. May 18, 1994) ................................................................. 6

*Jenkins v. Trustmark Nat'l Bank*,
    300 F.R.D. 291, (S.D. Miss. 2014) ............................................................. 4, 22

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ............................................................. 8, 11, 15

*King v. United SA Fed. Credit Union*,
    744 F. Supp. 2d 607 (W.D. Tex. 2010)................................................... 21

*Klein v. O'Neal, Inc.*,
    705 F. Supp. 2d 632 (N.D. Tex. 2010) ................................................. 9, 11, 18

*Lasky v. Brown*,
    No. 99-1035-D-M2 slip op (M.D. La. Jan. 27, 2003)............................. 5

*Leroy v. City of Houston*,
    831 F.2d 576 (5th Cir. 1987) ................................................................. 8

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................... 7

*Migis v. Pearle Vision, Inc.*,
    135 F.3d 1041 (5th Cir. 1998) ............................................................... 18

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)................................................................................ 8

*Newman v. Caribiner Int'l, Inc.*,
    No. 99-2271-CV-2271 (S.D.N.Y. Oct. 19, 2001).................................. 7

*Oscar Private Equity Investments v. Allegiance Telecom, Inc.*,
    487 F.3d 261 (5th Cir.2007) .................................................................. 22

*Parker v. Anderson*,
    667 F.2d 1204 (5th Cir. 1982) ............................................................... 19

*Primary Carenet of Texas v. Scott*,
    No. CIV.A SA99CA0427OG, 2001 WL 681690 (W.D. Tex. Feb. 26, 2001)........................... 9

*Roussel v. Brinker Int'l, Inc.*,
    No. H-05-3733, 2010 WL 1881898 (S.D. Tex. Jan. 13, 2010)................. 18

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005).......................................... 6, 16

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
    91 F. Supp. 2d 942 (E.D. Tex. 2000)...................................................... 5, 17

*Sims v. Shearson Lehman Bros.,*
   *Inc.*, No. 3:90-CV-252, Dkt. No. 256 (N.D. Tex. Nov. 29, 1983)............................................. 6

*Turner v. Murphy Oil USA, Inc.*,
   472 F. Supp. 2d 830 (E.D. La. 2007)............................................................................... 10, 20

*Union Asset Mgm't Holding A.G. v. Dell, Inc. ("Dell")*,
   669 F.3d 632 (5th Cir. 2012) ............................................................................. *passim*

*Weber v. Gov't Employees Ins. Co.*,
   262 F.R.D. 431 (D.N.J. 2009).............................................................................................. 9

Court-appointed Lead Counsel Boies Schiller Flexner LLP ("BSF") and Special Counsel to Lead Plaintiff the Erica P. John Fund, Inc. ("EPJ Fund") Kahn Swick & Foti, LLC ("KSF") (collectively, court-appointed "Class Counsel"), having achieved a Settlement of $100,000,000 for the benefit of the Class, respectfully bring this motion for an award of attorneys' fees in the total combined amount of $33,333,333.33, or one third of the Settlement Fund, plus interest. The requested fee is significantly less than Class Counsel's lodestar; in fact, in the event the request is granted in full, the award amounts to a negative multiplier of 0.77 of counsel's lodestar.   Class Counsel also seek reimbursement of $6,270,193.74 in expenses reasonably incurred in prosecuting the Action.

## PRELIMINARY STATEMENT

The Settlement of the Action for $100,000,000 in cash is an outstanding result for the Class in this hard fought, long-running securities class action that has the distinction of being one of the few cases to go to the United States Supreme Court twice.  Through their efforts, Class Counsel not only obtained a $100,000,000 settlement in a case where this Court and the Fifth Circuit initially denied class certification, *see Erica P. John Fund, Inc.* v. *Halliburton Co.*, 563 U.S. 804 (2011) ("*Halliburton I*"), but also successfully beat back efforts to eliminate the fraud-on-the-market presumption, which would have spelled the death knell for this action and all securities-fraud class actions based on affirmative misrepresentations, *see Halliburton Co. v. Erica P. John Fund, Inc.* ("*Halliburton II*"), 134 S. Ct. 2398 (2014).

To obtain a $100,000,000 settlement in a case that predecessor counsel attempted to settle for $6,000,000 in a proposed settlement scuttled by the Lead Plaintiff who was excluded from settlement negotiations by predecessor counsel, Class Counsel not only had to certify a class of Halliburton shareholders, they also had to demonstrate that they had a realistic chance of

1

surviving summary judgment and prevailing at trial.  To that end, Class Counsel served more than 60 third-party subpoenas, filed eight motions to compel, reviewed more than 1.3 million pages of documents, took or defended 40 fact depositions including four key depositions that spanned two days apiece, proffered reports from four experts, and took or defended 11 expert depositions.  Both sides moved for summary judgment and to exclude the other side's experts at least in part.  Collectively, the summary judgment motions included 267 pages of briefing with 364 exhibits (9,432 pages), and the *Daubert* briefs spanned 480 pages with 228 exhibits (6,535 pages) in a complex class action that has resulted in over 800 docket entries at the District Court. In all, Class Counsel devoted more than 66,000 hours to this matter – more than 42,000 by BSF and more than 24,000 by KSF, as set forth in the accompanying declarations of Carl Goldfarb and Lewis Kahn ("Goldfarb Decl." and "Kahn Decl.", respectively).

The $100,000,000 settlement is an exceptional result, which did not come easily or quickly.  Rather, it is the product of Lead Plaintiff's and Class Counsel's hard work and perseverance over the course of many years, as detailed in the accompanying Declaration of Carl E. Goldfarb and Kim E. Miller ("Joint Decl.").  To appreciate that the risks in this case were high, and that those risks were present from the outset and continued up to the date of Settlement, the Court need look no further than its own initial decision denying class certification when it concluded, on multiple, independent and alternative grounds, that Lead Plaintiff had failed to demonstrate loss causation, *see Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*, 2008 WL 4791492 (N.D. Tex., Nov. 04, 2008), a decision affirmed by a unanimous panel of the Fifth Circuit, *see Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*, 597 F.3d 330 (5th Cir. 2010).  Equally indicative of the risks inherent in this case, and its unique and complex nature, is the extraordinarily unusual fact that the Supreme

Court chose to hear it – not just once, but twice.  At the time the case settled, the Fifth Circuit had agreed to hear the case for a third time, and another interlocutory appeal of this Court's class certification order had been fully briefed, argued and submitted to the court, in yet another indication of what a remarkable case this is.

Over more than a decade of litigation, Class Counsel never wavered in their commitment to their client, the Class, or the case.  Class Counsel respectfully submit that an award of 33⅓ % of the Settlement Funds properly reflects the many significant risks faced by Class Counsel, the unprecedented procedural path of this case, the many years of effort, and the excellent results achieved in this hotly contested and difficult litigation.  The requested award equates to a negative multiplier of 0.77 of Class Counsel's lodestar, which is itself a strong indication that the requested fee is fair and reasonable.

Class Counsel further submits that the costs and expenses incurred are reasonable, were necessary to the successful prosecution of the Action, and should be approved.  The submitted cost reimbursement of $6,270,193.74 is composed primarily of costs for consultants and experts, court reporters and videographers, legal research, hosting documents, copying, and travel. App. 70-73, 135, 138-139, 178-180.  These are typical and necessary expenditures and the requested amount is substantially less than the $7.5 million cap for expenses in the motion for preliminary approval.  In addition, Lead Plaintiff seeks $100,000 in compensation for time spent supervising this litigation over more than ten years.  App. 59-60, 150-153, 155-157.

For all the reasons set forth below, Class Counsel and Lead Plaintiff respectfully request that the Court approve their application for an award of attorneys' fees and reimbursement of expenses.

**ARGUMENT**

I.    **UNDER CONTROLLING CASE LAW, CLASS COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND**

The use of a common fund to pay attorney's fees in class action settlements is well established. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 ("[T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *see also Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981) (same). Courts recognize that awards of fair attorneys' fees from a common fund serve the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, No. (S.D. Miss. 2014) (citation omitted).

II.    **THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER EITHER A PERCENTAGE-OF-THE-FUND OR LODESTAR ANALYSIS**

The requested fee of $33,333,333.00 or 33⅓% of the Settlement Fund is eminently reasonable in this action which Class Counsel overturned an adverse ruling on class certification, which required an appeal to the U.S. Supreme Court to reverse an adverse Fifth Circuit precedent, successfully defended the fraud-on-the-market assumption in a second appeal that resulted in a seminal opinion by the U.S. Supreme Court, took or defended more than 50 fact and expert depositions, and briefed both *Daubert* and summary judgment motions before this case settled.[1] The Fifth Circuit holds that fees awarded from a common fund can be based either on a

---

[1] The request includes fees for BSF and KSF. It also includes fees for Larry Vincent, who served as local counsel to BSF and later KSF in this action and devoted more than 320 hours to this matter. BSF and KSF have agreed, after paying Mr. Vincent at his lodestar, with the same negative multiplier as Class counsel is seeking, to share remaining fees on a 65/35% basis with

percentage of the fund or client's lodestar.  *See Union Asset Mgm't Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012) ("*Dell*") (courts have "flexibility to choose between the percentage and lodestar methods in common fund cases").   In this case, both methods demonstrate that the requested fee here is fair and reasonable and should be approved.

A.     **The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Approach**

The Fifth Circuit has endorsed the percentage method because it "brings certain advantages … because it allows for easy computation" and "aligns the interests of class counsel with those of the class members." *Dell*, 669 F.3d at 643. "[D]istrict courts in this Circuit regularly use the percentage method[.]" *Id.*; *see also Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (endorsing percentage method and stating that "under the 'common fund doctrine'… a reasonable fee is based on a percentage of the fund bestowed on the class").

The requested percentage, $33^{1}/_{3}$ , is not only reasonable given the highly unusual history of this case, it is also within the range of percentage fees awarded in the Fifth Circuit in other complex cases, even though few, if any, of those cases can compare to this action in their procedural complexity and number of interlocutory appeals.  *See City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. CIV. 6:12-1609, 2015 WL 965696, at *4 (W.D. La. Mar. 3, 2015) (recognizing "a 33 1/3% contingency is common in this geographic area" and "a 33 1/3% contingency has been approved in other common fund cases"); *Lasky v. Brown*, No. 99-1035-D-M2 (M.D. La. Jan. 27, 2003 slip op. at 9) (33⅓% fee award on $20.5 million settlement fund), attached as Ex. 1; *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) (fees up to 33% routinely awarded); *Jenkins*, 300 F.R.D, at 802 ("it is not unusual for district

---

BSF receiving 65% of the fees and KSF 35%. The fee requests by BSF is supported by the Goldfarb Decl., App. 132-135; the fee request of KSF by the Kahn Decl., App. 136-139; and the fee request of Larry Vincent by the Declaration of Larry Vincent, App. 140-142.

courts in the Fifth Circuit to award percentages of approximately one third"); *In re Olicom Sec. Litig.*, No. 94-0511-D (N.D. Tex. Aug. 30, 1996) (33.33% fee award on $7.5 million settlement fund); *Sims v. Shearson Lehman Bros., Inc* No. 3:90-CV-252, Dkt. No. 256 (N.D. Tex. Nov. 29, 1993) (33⅓ fee award on $30 million settlement fund);[2] *In re Lomas Fin. Corp. Sec. Litig.*, Civil Action No. CA–3–89–1962–G (N.D. Tex. Jan. 28, 1992) (approving fee of almost one-third of benefit achieved of over $20 million).  *Finkel v. Docutel/Olivetta Corp.*, CA3–84–0566–T (N.D. Tex. Feb. 23, 1990) (awarding fees amounting to 33% of settlement fund).[3]

Despite the outstanding result, and the fact that they are not even recovering their lodestar, Class Counsel are limiting their fee request to $33^1/_3$% of the Settlement, even though courts in this circuit have repeatedly said a higher percentage can be appropriate and have awarded a higher percentage in fees in some common fund cases.  *See In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 445 (S.D. Tex. 1999) ("Class counsel and experts both reported to the Court that it is customary in large, complex commercial litigation for contingency fees to be set at 33 to 40%."); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1133 (W.D. La. 1997) (awarding 36% of the common fund as fee) and noting: "Usually 50 percent of the fund is the upper limit on a reasonable fee award from a common fund to assure that fees do not consume a disproportionate part of the recovery obtained for the class, though somewhat larger percentages are not unprecedented."); *Garza v. Sporting Goods Props.*, CIVIL ACTION NO. SA-93-CA-1082, 1996 WL 56247, at *31 (W.D. Tex. Feb. 6, 1996) (noting, "This Court concurs that 33 1/3% to 40% is the customary contingency fee range" and awarding $12.5m in fees from $31.5m settlement fund or 39.7%); *In re Prudential-Bache Energy Income Partnerships Sec. Lit.*, 1994

---

[2] Both *In re Olicom Sec. Litig.* and *Sims v. Shearson Lehman Bros., Inc.* are cited in *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *27 (N.D. Tex. Nov. 8, 2005).
[3] Both *In re Lomas Fin. Corp. Sec. Litig.*, and *Finkel v. Docutel/Olivetta Corp.* are cited in *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 500 (N.D. Miss. 1996).

WL 202394, at *6 (E.D. La. May 18, 1994) ("Customary fees in common fund cases appear to range from 20% to 40%."); *see also City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. 6:12-1609, 2015 WL 965696, at *8 (W.D. La. Feb. 11, 2015) ("As indicated above, the customary contingency fee in the Western District of Louisiana for representation of plaintiffs in class actions 'ranges from 33 ⅓% to 50% of the gross award plus costs for cases requiring the institution and prosecution of litigation.'").

Courts in other circuits have also regularly awarded fees of one third in securities class actions.  *See, e.g.*, *In re Apollo Group Inc. Sec. Litig.*, 2012 WL 1378677 (D. Ariz. April 20, 2012) (33.33% fee award on $145 million settlement fund); *In re Giant Interactive Group, Inc.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (33.33% fee award on $13 million settlement fund); *In re Initial Pub. Offering Sec. Litig.*, 671 F.Supp.2d 467 (S.D.N.Y. 2009) (33.33% fee award on $510 million settlement fund); *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex.*, N.A., No. 02-ML-1475-DT(RCx), 2005 WL 1594389, at *17 (C.D. Cal. June 10, 2005) (33⅓% fee award on $27.783 million settlement fund); *In re E. W. Blanch Holdings, Inc. Sec. Litig.*, No. 01-258, 2003 WL 23335319, at *3 (D. Minn. June 16, 2003) (33⅓% fee award on $20 million settlement fund); *In re Green Tree Fin. Corp. Stock Litig./Options Litig.*, Nos. 97-2666 and 97-2679, December 18, 2003 slip op. at 9 (D. Minn. Dec. 18, 2003) (33⅓% fee award on $12.45 million settlement fund attached), attached as Ex. 2; *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367-68 (S.D.N.Y. 2002) (33.33% fee award on $11.5 million settlement fund); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 439 (E.D. Pa. 2001) (33.33% fee award on $48 million settlement fund); *Newman v. Caribiner Int'l, Inc.*, No. 99-2271-CV-2271  (S.D.N.Y. Oct. 19, 2001) (33⅓% fee award on $15 million settlement fund), attached as Ex. 3.

**B.    The Requested Attorneys' Fees Are Reasonable Under the Lodestar Approach**

Applying the lodestar method underscores the reasonableness of Class Counsel's fee request because Class Counsel is applying a negative multiplier of 0.77 to their collective lodestar.  App. at 64.  Under controlling case law, when a court determines attorneys' fees based on the percentage method, the Court must "cross-check" the proposed fee for reasonableness by considering counsel's lodestar and the other considerations set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) ("*Johnson*").  *See Dell*, 669 F.3d at 643-44.  A court may also reverse the order and determine the reasonable attorneys' fees in the first instance by using the lodestar method, provided it then considers the *Johnson* factors.  *See id*. at 644.  Here, the lodestar method, regardless of the order in which is used, demonstrates the reasonableness of the requested fee.

To calculate fees under the lodestar method, the "court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier."  *Id*. at 642-43.  It is common for courts in securities class actions to apply a multiplier to enhance the lodestar in recognition of the complexity and risk of such cases.

Class Counsel spent a total of more than 67,399 hours of attorney and other professional support time prosecuting this Action since February 23, 2007.[4]  App. 64, 132-142.  Based on Class Counsel's current rates, their lodestar for this period is $43,123,960.[5]  App. 64, 132-142.

---

[4] Lead Plaintiff filed a motion for substitution of lead counsel on November 22, 2006.  *See* D.E. 284. BSF was appointed lead counsel on February 23, 2007. *See* D.E. 308.  KSF joined the case in 2008.

[5] The Supreme Court and courts in this Circuit have endorsed use of current hourly rates to calculate counsel's lodestar in order to compensate counsel who continue to work on the matter for the delay in receiving payment.  *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Leroy v. City of Houston*, 831 F.2d 576, 584 (5th Cir. 1987) ("current rates may be used to compensate for inflation and delays in payment"); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F.

The requested fee of $33,333,333.33 represents much less than Class Counsel's lodestar. Thus, Class Counsel are not seeking a multiplier, but rather a divisor on the lodestar – despite the enormous risks of this litigation and the long delay between filing the action and receipt of payment. Nor are Class Counsel seeking reimbursement for the additional time they will devote to supervising the Claims Administrator's processing of claims and distribution of payments.

The U.S. Supreme Court has expressly established "a strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (internal quotation marks omitted). The fact counsel are requesting significantly less than their lodestar is evidence of the reasonableness of the fees, as demonstrated by the approval of fee requests below lodestar by courts in this and other circuits. *Becerra v. Radioshack Corp.*, No. 11-3586 YGR, 2014 WL 1266622, at *1 (N.D. Cal. Mar. 26, 2014) ("The Court finds that the requested fees … represent[] less than Class Counsel's actual lodestar … to be fair and reasonable."); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 681 (N.D. Tex. 2010) (noting that the lodestar "is slightly greater than" the requested fee and approving the fee as "reasonable"); *Weber v. Gov't Employees Ins. Co.*, 262 F.R.D. 431, 451 (D.N.J. 2009) (approving plaintiffs' application for attorneys' fees and costs primarily because "[p]laintiffs request a substantially *lower* figure than is yielded by the lodestar amount, which [] is itself 'strongly presumed to yield a reasonable fee'"); *Camp v. Progressive Corp.*, No. CIV.A. 01-2680, 2004 WL 2149079, at *22 (E.D. La. Sept. 23, 2004) ("requested attorney's fees award [] is reasonable and is actually lower than the lodestar would support"); *Primary Carenet of Texas v. Scott*, No. CIV.A SA99CA0427OG, 2001 WL 681690, at *4 (W.D. Tex. Feb. 26, 2001) (approving the requested attorneys' fees where the amount was lower than the figure reached under the lodestar approach).

---

Supp. 2d 732, 763 (S.D. Tex. 2008) ("One accepted method of compensating for a long delay in paying for attorneys' services is to use their current billing rates in calculating the lodestar.").

Courts routinely award fees greater than counsel's lodestar, further underscoring the reasonableness, of counsel's fee request here.  In class actions in this Circuit lodestar multipliers between 2 and 4.5 are commonly awarded in cases where counsel obtains a successful result and ran a significant risk of not attaining any recovery at all.  *See DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 333 (W.D. Tex. 2007) ("The range of multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5."); *Billitteri v. Securities America, Inc.*, 2011 WL 3585983, at *9 (N.D. Tex. Aug. 4, 2011) (approving fee request and noting: "Under lodestar approach, the multiplier sought by Class counsel would be 1.97"); *Klein et al. v. O'Neal, Inc. et al.*, 705 F.  Supp. 2d 632, 680 (N.D. Tex. Apr. 9, 2010) (holding 2.5 multiplier was warranted "due to the risks entailed in this lawsuit and the zealous efforts of the attorneys that resulted in a significant recovery for the class"); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 869 (E.D. La. 2007) ("[T]he Court finds that a lodestar multiplier range of 2.5 to 3.5 would be appropriate and reasonable in this case.").

Class Counsel's current hourly rates are reasonable in light of prevailing market rates for lawyers with comparably high levels of experience and expertise in securities litigation and other complex class action litigation.  *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1087-88 (S.D. Tex. 2012) (court should evaluate hourly rates in comparison to "'prevailing market rates for lawyers with comparable experience and expertise' in complex class action litigation," and "[a]n attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates[,] and the rate is not contested"). Class Counsel's rates, which range from $100.00 to $330.00 for professional support staff and from $180.00 to $1,560.00 for attorneys, are comparable for rates charged by other attorneys

10

with similar backgrounds.  App. 133-134, 137-138.  Moreover as noted, Class Counsel's fee request is based on a negative multiplier, which significantly reduces their effective hourly rate. And because a multiplier awards counsel a multiple of their hourly rate, Class Counsel's effective hourly rate is significantly less than the effective hourly rate in cases where the court awarded fees based on a significant multiplier.  *See*, *e.g.*, *Klein*, 705 F. Supp. 2d at 680 (approving use of $500 average rate for calculating lodestar but applying 2.5 multiplier for an effective hourly rate of $1,250).

## III.  OTHER FACTORS CONSIDERED BY COURTS IN THE FIFTH CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

The seminal Fifth Circuit case establishing the criteria that courts should weigh when evaluating a request for attorneys' fees in a common fund case directs courts to consider:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19; *see also Dell*, 669 F.3d at 642 n.25 (reiterating *Johnson* factors). In addition, courts may also consider such factors, such as: (1) public policy considerations; (2) Lead Plaintiff's approval of the fee; and (3) the reaction of the class.  Consideration of all of these factors provides further confirmation that the fee requested here is reasonable.  *See Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991).

### A.    The *Johnson* Factors Confirm that the Requested Fee is Fair and Reasonable

The *Johnson* factors confirm that the requested fee awarded is reasonable under either the percentage or lodestar method.  *See Dell*, 669 F.3d 643-44.

#### 1.    The Time and Labor Required Support the Fee Award

The Joint Declaration details the substantial efforts of Class Counsel to prosecute Lead Plaintiff's claims over many years of litigation, demonstrating that the requested fee is reasonable.   As set forth in greater detail in the Joint Declaration, Class Counsel, among other things:

- Persuaded the U.S. Supreme Court to grant a petition for a writ of certiorari after the U.S. court of the Appeals for the Fifth Circuit affirmed this Court's 2008 opinion denying class certification;

- Prevailed at the U.S. Supreme Court, which reversed the Fifth Circuit and vacated its decision in a 9-0 vote, in the first appeal in this case;

- Filed eight motions to compel, leading to the production of hundreds of thousands of pages of additional documents;

- Served more than 60 third-party subpoenas;

- Reviewed more than 1.3 million pages of documents;

- Obtained an order from this Court certifying the Class following remand;

- Won an affirmance of that ruling from the Fifth Circuit;

- Prevailed in the Supreme Court, after it agreed to hear an interlocutory appeal in this case for the second time, insofar as the Court agreed not to overturn *Basic v. Levinson*, *Inc.*, 485 U.S. 224(1988), and not to require plaintiffs to prove price impact to invoke the fraud-on-the-market presumption;

- Obtained an order from Court, following the second remand from the U.S. Supreme Court, certifying the case as to the December 7, 2001 corrective disclosure;

- Defeated Defendant's request to stay this action once the Fifth Circuit granted Defendant's Rule 23(f) petition for review of this Court's July 25, 2015 order, granting Plaintiff's motion for class certification in part and denying it in part;

- Took or defended depositions of 40 facts witnesses, including four depositions that were scheduled for two full days, and took or defended 11 expert depositions;
- Defeated a motion for a protective order seeking to block the deposition of Richard Cheney and deposed the former Vice President;

- Filed and briefed a motion for partial summary judgment brief and opposed Defendants' motion for summary judgment;

12

- Filed four *Daubert* motions, defeated Defendants' effort to exclude one of Plaintiff's experts as an improper rebuttal witness, and filed oppositions to Defendants' three *Daubert* motions.

The favorable Settlement would not have been achieved without Class Counsel's skill, dedication, and tenacity, demonstrating that the requested fee is reasonable.  App. 21-41.

2.   The Novelty and Difficulty of the Issues Presented Support the Fee Award

In this case, demonstrating loss causation was particularly challenging largely because of the evolving legal landscape and the fact that the key corrective disclosure at issue here—Halliburton's December 7, 2001 announcement of an adverse asbestos verdict was not a stereotypical corrective disclosure.  The Court's November 4, 2008 order, denying class certification for failure to demonstrate loss causation and doing so on multiple, independent and alternative grounds, *see Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*, 2008 WL 4791492, (N.D. Tex. Nov. 04, 2008), demonstrates some of the difficulties this case presented concerning loss causation, as does the Fifth Circuit's unanimous affirmance of that order, *see Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*, 597 F.3d 330 (5th Cir. 2010).

Class Counsel had to challenge and ultimately reverse the Fifth Circuit's now discredited precedent holding that plaintiffs had to establish loss causation by a preponderance of the evidence at class certification in order to invoke the fraud-on-the-market presumption.  Even after doing so, because of the evolving case law, Class Counsel had to face novel legal questions regarding when and how the fraud-on-the-market presumption could be rebutted, what type of evidence or argument could be used to rebut the presumption at class certification, the quantum of evidence necessary to do so, and even what weight to accord the presumption during the analysis.  The fact that the Supreme Court agreed to hear this case twice, and the Fifth Circuit agreed to hear it three times is one indication of the novelty and difficulty of the issues presented,

13

and weighs in favor of granting Class Counsel's fee request.  *See In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2016 WL 4445438, at *8 (D. Kan. Aug. 24, 2016) (fact that "Defendants initiated multiple proceedings before the Tenth Circuit Court of Appeals and the United States Supreme Court" is evidence of novelty and difficulty of case); *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, No. C84-3916, 2000 WL 1751297, at *4 (N.D. Ohio Oct. 27, 2000) ("The novelty and difficulty of the questions presented are affirmed by defendants' attempt to take the case to the Supreme Court.").

The Court's July 25, 215 ruling on class certification, *Erica P. John Fund, Inc. v. Halliburton Co.*, 309 F.R.D. 251 (N.D. Tex. 2015), granting class certification as to the December 7, 2001 corrective disclosure and denying class certification as to five other alleged corrective disclosures, further underscores the risks and difficulties of establishing that a disclosure is corrective and ultimately of establishing loss causation, given the facts, procedural history, and allegations in this matter.  In that ruling, the Court held Plaintiff to a higher threshold to show an alleged corrective disclosure led to a statistically significant change in the stock price because Lead Plaintiff's prior expert had tested numerous dates for a statistically significant stock price movement.  *Id.* at 266 (the "Court is persuaded that the use of a multiple comparison adjustment is proper in this case").  That unprecedented holding again demonstrates the novel issues presented by this action and the difficulty of establishing loss causation here.  Another measure of the novelty of these issues is the Fifth Circuit's decision to grant Defendant's most recent Rule 23(f) petition and hear for the third time an interlocutory appeal of this Court's class certification order.

In addition to those difficulties, this case presented all the challenges typical of securities-fraud class actions, which are complex and difficult cases in their own right.  As the Fifth Circuit

has recognized, "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, A.J., sitting by designation); *see also In re OCA*, *Inc. Sec. & Derivative Litig.*, 2009 WL 512081, at *21 (E.D. La Mar. 2, 2009) ("Fifth Circuit decisions on causation, pleading and proof at the class certification stage make PSLRA claims particularly difficult.").

> ### 3.   The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation and Ability of the Attorneys Support the Fee Award

Two of *Johnson* factors require the Court to consider the skills required to litigate the action and "the experience, reputation and ability of the attorneys" involved.  *Johnson*, 448 F.2d at 718-19.  "The trial judge's expertise gained from past experience as a lawyer and his observation from the bench of lawyers at work" are "highly important in this consideration." *Enron*, 586 F. Supp. 2d at 789 (quoting *Johnson*, 488 F.2d at 718).

As the Court is well aware, this action required expertise both at the trial and appellate levels.  Class certification presented complex and novel issues regarding loss causation that Class Counsel had to brief and argue repeatedly, both before the trial court and in three appeals before the Fifth Circuit and two appeals to the Supreme Court.  One measure of the difficulty of those issues is the fact that the Supreme Court agreed to hear the case twice, which is almost unheard of.  At the trial level, Class Counsel also had to engage in numerous discovery battles, including filing eight motions to compel, took or defended 40 fact depositions, including four two-day depositions, took or defended 11 expert depositions, filed three *Daubert* motions, opposed four *Daubert* motions, moved for partial summary judgment, and opposed Defendants' summary judgment motion.  App. 21-41, 63.  Adding to the challenges presented by this case and the skill

needed to prosecute it, Class Counsel engaged in much of the trial work at the same time as they litigated this matter at an appellate level, essentially waging a two-front battle.

Court-appointed Lead Counsel David Boies of BSF has decades of experience in complex litigation and is one of the preeminent trial lawyers in the country, having tried numerous high stakes cases to a successful conclusion.  He is also a distinguished appellate and Supreme Court advocate.  The attorneys at KSF are skilled and specialized securities class action litigators with a successful track record in securities class action litigation in federal courts throughout the country.  Currently KSF is lead or co- counsel in ten securities putative class action litigations, including a number of high profile actions.  App. 67.  Class Counsel submits that together, as their firm resumes demonstrate (*see* App. 77-131), Class Counsel formed a formidable litigation team and their expertise in securities class action, appellate advocacy, and trial litigation was essential to achieving this Settlement.

The quality of the opposition faced by Class Counsel is also a relevant factor in assessing Class Counsel's performance.  Here, Defendants were represented by Baker Botts LLP, one of the nation's leading defense firms, which specializes in securities class action defense and which battled Class Counsel at every turn, appealing twice to the Fifth Circuit and even convincing the Supreme Court to hear the case.  Thus, this factor also weighs in favor of approving the fee request.  *See, e.g.*, *DeHoyos*, 240 F.R.D. at 326 ("The quality of class counsel's work on this case was excellent and is ultimately reflected in the result which was obtained with a formidable opponent."); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005) ("The ability of Plaintiff's Counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation").

    4.    <u>The Preclusion of Other Employment Support the Fee Award</u>

Class Counsel has spent over 67,399 hours prosecuting the Action, with the bulk of that work taking place since February of 2007 and December 2016.  App. 64, 132-142.  Those hours were time that Class Counsel's attorneys could not devote to other matters.  Class Counsel did so, knowing they faced a significant risk of no recovery and would receive payment for their fees and expenses only if they achieved a successful outcome, which was likely to be years later, if at all.  Accordingly, this factor supports the requested fee.  *See, e.g.*, *Burford v. Cargill, Inc.*, No. 05-0283, 2012 WL 5471985, at *3 (W.D. La Nov. 8, 2012); *Shaw*, 91 F. Supp. 2d at 970.

5.      The Customary Fee Supports the Fee Award

As set forth above, Class Counsel's requested fee of $33^1/_3\%$ is justified because of the unusual difficulty of this case, the exceptional skill and tenacity necessary to prosecute it, the extended commitment this case required, and the excellent results achieved.  There is ample precedent, as noted above, for awarding a fee in this range in such cases.  Accordingly, this factor also supports the requested fee.

6.      The Contingent Nature of the Fee Supports the Fee Award

Class Counsel prosecuted this case on a fully contingent basis and, accordingly, this factor supports the award of attorney fees.  "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success."  *Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).  In this case, however, the requested fee is *less* than Class Counsel's lodestar.

As evidenced by this Court's November 4, 2008 order to deny class certification and the Fifth Circuit's affirmance of that order, the outcome of this case was uncertain at best. Nonetheless, Class Counsel prosecuted this Action on a wholly contingent basis.  Class Counsel's willingness to litigate this case for more than a decade in the fact of substantial risks

17

strongly supports the reasonableness of the requested fee.  *See Billitteri*, 2011 WL 3585983, at *7 (fact fee was contingent was "particularly relevant considering the difficulty presented by the facts and legal questions in this case and the very real risk of  obtaining no recovery at all"); *Klein*, 705 F. Supp. 2d at 678 (where "class counsel represented the class on a contingent-fee basis, with no guarantee of any recovery … [t]he contingent nature of the fee favors an increase" in the fee); *OCA*, 2009 WL 512081, at *22 ( "the risk Lead Counsel undertook in litigating this case on a contingency basis must be considered in its award of attorneys' fees, and thus an upward adjustment is warranted").  Indeed, in such cases, Courts typically award a substantial, lodestar multiplier to compensate for the possibility that there may have been no recovery.  Here, however, Class Counsel is requesting a fee that represents a fractional multiplier of Class Counsel's lodestar.   Accordingly, this factor strongly supports the reasonableness of the requested fee.

### 7.   The Results Achieved Support the Fee Award

The next *Johnson* factor is the "overall degree of success achieved."  *Roussel v. Brinker Int'l, Inc.*, No. H-05-3733, 2010 WL 1881898, at *3 (S.D. Tex. Jan. 13, 2010), *aff'd*, 441 F. App'x 222 (5th Cir. 2011).  The Fifth Circuit has called that the "most critical" factor.  *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (degree of success is "most critical [Johnson] factor") (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

Here, the $100,000,000 recovery constitutes approximately 11.8% of the maximum recoverable damages for the Class (approximately $848 million, as determined in consultation with Lead Plaintiff's damages expert), which includes a maximum recovery for all alleged misrepresentations and omissions related to liability for both pending and future asbestos claims, assuming the Court denied Defendants' *Daubert* and summary judgment motions in full.   App.

66.  Courts routinely approve settlements for only a small fraction of the maximum, potential damages. *See Parker v. Anderson*, 667 F.2d 1204, 1210, n. 6 (5th Cir. 1982) ("[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not" indicate that the settlement is not fair and reasonable"[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not" indicate that the settlement is not fair and reasonable); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005) (approving partial settlement even though "the settlement amount is a very small fraction of the damages amount projected by the Plaintiffs").

Throughout the case, Defendants have argued repeatedly that the alleged misrepresentations and omissions regarding future asbestos claims liability were not actionable, and Lead Plaintiff faced a substantial risk that these claims would have been narrowed or lost at or before trial, limiting the maximum recoverable damages to as low as $233 million, according to Lead Plaintiff's damages expert.  App. 66-67.  Under this scenario, the $100,000,000 Settlement constitutes 42.9% of the maximum recoverable damages for the Class, which is an exceptional result in light of the substantial litigation risks remaining in the action.  App. 66-67.

Another measure of the success Class Counsel achieved is that the proposed $100,000,000 settlement is more than 15 times the size of the $6,000,000 settlement that predecessor Lead Counsel urged this Court to endorse.  App. 3-4, 17.  The proposed Settlement is all cash and members of the Class will now receive compensation that would be uncertain if Class Counsel had chosen instead to continue to litigate this action.  The result achieved, given the significant risks posed in the Action, is substantial and supports the requested fee.  *See Albright v. Good Shepherd Hosp.*, 901 F.2d 438, 440 (5th Cir. 1990) ("Plaintiffs obtaining excellent results are entitled to recover full compensation, even if they do not prevail on every

contention."); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 866 (E.D. La. 2007) (favorable settlement satisfies "results" Johnson factor and warrants upward adjustment of fees); *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 632 (E.D. La. 2006) (finding counsel "obtained a very favorable settlement for the plaintiff class," not "only illusory benefits in the form of coupons or discounts," and holding consideration of this factor warranted an increase in the fee award.)

### 8.    The Undesirability of the Case Supports the Fee Award

Lead Counsel BSF is the third Lead Counsel in this action, which illustrates some measure of the difficulty, and arguably undesirability of this matter.   First Lead Counsel attempted to settle this case without the support of the Erica P. John Fund, Inc., rather than run the risk of prosecuting this case to conclusion.   Second Lead Counsel was replaced in 2007 before the Court sustained in part the Fourth Amended Complaint.

BSF, later joined by KSF, not only had to take over the case in mid-stream, it also had to overcome an adverse November 4, 2008 ruling by this Court, which denied class certification and which was sustained by a unanimous panel of the Fifth Circuit.   At that point, the only chance of salvaging the matter was to convince the Supreme Court to grant certiorari, reverse and remand the case, and then overcome this Court's multiple alternative grounds for finding Lead Plaintiff had failed to establish loss causation.   Accordingly, prospects for success then appeared bleak.   It is a testament to Class Counsel's dedication and skill that they there were able to achieve a substantial settlement in this action, given the uphill battle they faced after the Fifth Circuit affirmed this Court's November 4, 2008 order.

In such circumstances, this factor weighs heavily in favor of the fee request.  *See Evans v. TIN, Inc.*, No. CIV.A. 11- 2182, 2013 WL 4501061, at *7–8 (E.D. La. Aug. 21, 2013) ("undesirability" factor met because the "claims asserted in this case raised a number of novel

and difficult questions" of law); *Billitteri*, 2011 WL 3585983, at *8 (fact that case "raised particularly difficult issues," including the risk of "no recovery whatsoever," supported an increase in the fee); *King v. United SA Fed. Credit Union*, 744 F. Supp. 2d 607, 617–18 (W.D. Tex. 2010) (noting "[c]las action cases often carry elevated risks" and "a possibility of no recovery" and finding that class counsel "undertook this case on a contingency fee basis and expended a great deal of time and effort to successfully prosecute the case" and that cases "such as this one are generally considered highly undesirable"); *Braud v. Transport Serv. Co.*, No. 051898, 2010 WL 3283398, at *13 (E.D. La. Aug. 17, 2010) (given the "risk of non- recovery" and the burdens of "undertaking expensive litigation against … well-financed corporate defendants on a contingent fee," the Court found that "undesirability in this case warrants an increase in the fee award"); *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 632 (E.D. La. 2006) ("there was a serious risk that a class would not be certified" and accordingly "that the risks inherent in this case warrant an increase in the fee award").

### 9.    Awards in Similar Cases Support the Fee Award

As discussed above in Section II.A, Class Counsel's requested fee of $33\frac{1}{3}\%$ of the Settlement Fund is within the range of fees awarded in complex class action cases in this Circuit and across the country when plaintiffs achieve a successful outcome and create a common fund. And few, if any of those cases can rival this case in terms of their difficulty, procedural complexity, or sheer, daunting odds that Class Counsel faced on their way to achieving this settlement.  Moreover, the reasonable percentage fee award represents a negative multiplier of 0.77, which is well below the norm awarded in class action case with substantial contingency risks.  *See* Section II.B, *supra*.

21

**B.      Other Factors Considered by the Courts Further Support the Requested Fee as Fair and Reasonable**

In addition to the *Johnson* factors, courts may weigh other relevant factors in evaluating the appropriate fee in a class action case.  *See Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991) (court may consider "[o]ther pertinent factors," including "additional factors unique to a particular case" that may be "relevant to the district court's consideration").

### 1.      Public Policy Considerations Support the Requested Fee

Public policy concerns tilt sharply in favor of granting Class Counsel their request for fees and costs for bringing this successful securities class action in order to induce other counsel to undertake the substantial risk of prosecuting securities class actions on a purely contingency basis for other plaintiffs.  *See Jenkins*, 300 F.R.D. at 309 ("Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee."); *In re FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook").

Here, Class Counsel not only successfully obtained a significant settlement in this action, they also helped mold the law on a national basis through their efforts.  The two Supreme Court opinions obtained by Class Counsel will benefit plaintiffs in countless future cases first by reversing the Fifth Circuit decision in *Oscar Private Equity Investments v. Allegiance Telecom, Inc.*, 487 F.3d 261, 269 (5th Cir.2007), which, as this Court said, "imposes an exceedingly high burden on Plaintiffs at an early stage of the litigation," *Archdiocese Of Milwaukee Supporting Fund, Inc., et al., v. Halliburton Company, et al.*, 2008 WL 4791492, *2 (N..D. Tex. Nov. 4, 2008), and second by convincing the Supreme Court to reaffirm the fraud-on-the-market

assumption, which is the lynchpin to all private, securities class actions alleging affirmative misrepresentations.  If Class Counsel are not compensated for their efforts and outstanding results here, other counsel will be less likely to undertake similar efforts in the future.

### 2.  The Lead Plaintiff Endorses This Fee

Lead Plaintiff EPJ Fund was appointed pursuant to the PSLRA.  App. 16, 19, 147.  As set forth in Lead Plaintiff's declaration, Lead Plaintiff monitored the prosecution and participated in the settlement negotiations and so had a sound basis for assessing the reasonableness of the fee request.  App. 150-155.  Lead Plaintiff fully supports and approves the fee request which is consistent with the retainer agreement.  App. 147, 153-155.  Accordingly, Lead Plaintiff's endorsement of the fee request in this PSLRA action supports its approval as fair and reasonable.

### 3.  The Reaction of the Class to Date Supports the Requested Fee

The reaction of the Class to date also supports the requested fee.  As of June 29, 2017, the Claims Administrator had mailed 109,568 Notice Packets to potential class members and their nominees informing them of, among other things, Class Counsel's intention to apply to the Court for an award of attorneys' fees of 33⅓% of the Settlement Fund and reimbursement of up to $7,500,000.00 in expenses.  App. 55, 158-160. While the time to object to the fee and expense application does not expire until July 17, 2017, to date only one objection to the amount of attorneys' fees and expenses set forth in the  Notice have been received.  *See* D.E. 808.  The objector asserts that the duration of the litigation is evidence that Class counsel was inefficient.  *See id*. ("For the case to be dragged for such a long time, indicates the attorney's did not prepare well for the litigation."); *id*. ("If the attorney s where [sic] capable, the case should not have been settled, but won in a short time.").  To the contrary, the duration of this case is a testament to Class Counsel's skill and tenacity.  Had the case ended early, it would have ended with this Court's 2008 order denying class certification, which was upheld by the Fifth Circuit, and Class

members would have received nothing.  Evidence of Class Counsel's effectiveness includes the fact that they won their first appeal 9-0 before the Supreme Court, persuaded the Supreme Court by a 6-3 majority in their second appeal to reaffirm the fraud-on-the-market presumption, and were ultimately successful in persuading this Court to certify the class.

## IV.  THE EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE RESULTST OBTAINED

Class Counsel's reasonable expenses are $5,969,540.84.  App. 70, 135, 138.  Class Counsel also seek $300,652.90 in expense reimbursement for predecessor counsel Scott & Scott, LLP, for a total expense reimbursement of $6,270,193.74, App. 8, 178-182, which is significantly below the noticed expenses cap of $7,500,000.  Class Counsel seeks reimbursement of reasonably-incurred and necessary litigation expenses, which are a recoverable from the common fund.  *See Billitteri*, 2011 WL 3585983, at *10 ("Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement.").  These expenses are set forth in detail in the Joint Declaration, Class Counsel.  App. 70-72; *see also* 180-182.  Reimbursement for these expenses is fair and reasonable.

The largest component of Class Counsel's litigation expenses were incurred as through retention of consultants and testifying experts.  Specifically, $3,818,406.07 or 65% of Class Counsel's expenses, was expended on experts and consultants.  App. 71. Class Counsel retained a price impact and damages expert to assist in the prosecution and resolution of the Action.  That expert assisted Class Counsel during the extensive briefing on class certification, during mediation and settlement negotiations with the Defendants, and assisted Class Counsel with the development of the proposed Plan of Allocation.  App. 30-31, 71.  Class Counsel also retained two nationally known experts on asbestos liability and litigation, and a rebuttal expert on issues concerning generally accepted accounting principles.  App. 31-33, 71.

24

Class Counsel also seek reimbursement for court fees, court reporters and videographers, maintaining a database, and out-of-town travel, among other expenses.  App. 72-73, 135, 138-139.  These costs are typical of the costs incurred in litigation and are recoverable under the case law.  They were billed separately by Class Counsel and are not duplicated in the firms' hourly billing rates.  To date, there has been only one objection, *supra* at 23, to the request for expenses.

Class Counsel has included in its application the request by the law firm of Scott & Scott for reimbursement of $300,652.90.  App. 73.  That request is supported by the Declaration of Geoffery M. Johnson.  App. 178-182.

Three predecessor firms have submitted fee applications, *see* D.E. 812, 815, and 817. Lead Plaintiff will vigorously oppose predecessor counsel's fee applications, but will not oppose an award of reasonable expenses within the noticed expense cap.

Finally, Lead Plaintiff, supported by Class Counsel, respectfully seeks $100,000 to compensate Lead Plaintiff for the time it dedicated over more than a decade supervising this action.  App. 150-153, 155-157.

## CONCLUSION

For the foregoing reasons, Class Counsel respectfully requests that the Court award: (i) attorneys' fees in the amount of one-third the $100,000,000 million settlement, plus interest earned thereon, and (ii) reimbursement of $6,270,193.74 in litigation expenses, plus interest earned thereon; and (iii) $100,000 to Lead Plaintiff for compensation, plus interest earned thereon.

Dated this 3rd day of July, 2017.                    Respectfully submitted,

/s/ Carl E. Goldfarb                                 /s/ Kim E. Miller
Carl E. Goldfarb                                     Kim E. Miller

David Boies, Esq.                                    Kim E. Miller, Esq.
(admitted pro hac vice)                              (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP                        KAHN SWICK & FOTI, LLC
333 Main Street                                      250 Park Avenue, Suite 2040
Armonk, NY 10504                                     New York, NY 10177
Tel: (914) 749-8200                                  Tel: (212) 696-3730
Fax: (914) 749-8300                                  Fax: (504) 455-1498
dboies@bsfllp.com                                    kim.miller@ksfcounsel.com

Carl E. Goldfarb, Esq.                               Lewis S. Kahn, Esq.
(admitted pro hac vice)                              Michael Swick, Esq.
BOIES, SCHILLER & FLEXNER LLP                        Neil Rothstein, Esq.
401 E. Las Olas Blvd., Suite 1200                    (admitted pro hac vice)
Ft. Lauderdale, FL 33301                             KAHN SWICK & FOTI, LLC
Tel: (954) 356-0011                                  206 Covington Street
Fax: (954) 356-0022                                  Madisonville, LA 70447
cgoldfarb@bsfllp.com                                 Tel: (504) 455-1400
                                                     Fax: (504) 455-1498
                                                     bbgwwt@gmail.com
**LEAD COUNSEL TO LEAD PLAINTIFF,**
**THE ERICA P. JOHN FUND, INC., AND**
**THE CLASS**                                        **SPECIAL COUNSEL TO LEAD**
                                                     **PLAINTIFF, THE ERICA P. JOHN**
                                                     **FUND, INC., AND THE CLASS**

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on July 3, 2017, I served the foregoing document via

CM/ECF System to all counsel of record.

*/s/ Carl E. Goldfarb, Esq.*
Carl E. Goldfarb

27