**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| THE ERICA P. JOHN FUND, INC., et al., | § | |
| *on Behalf of Itself and All Others Similarly* | § | |
| *Situated*, | § | |
| | § | |
|     Plaintiffs, | § | |
| | § | Civil Action No. 3:02-cv-1152-M |
| v. | § | |
| | § | |
| HALLIBURTON COMPANY and | § | |
| DAVID J. LESAR, | § | |
| | § | |
|     Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

On February 21, 2017, the Erica P. John Fund, Inc. ("EPJF"), Lead Plaintiff in this securities class action case, filed a Stipulation of Settlement, (ECF No. 794), and a Motion for Preliminary Approval of Class Action Settlement, (ECF No. 795). The Court granted preliminary approval. (ECF No. 805).

EPJF then filed the Motion for Final Approval of Class Action Settlement and Plan of Allocation. (ECF No. 818). Class Counsel—Boies Schiller Flexner LLP ("BSF"), Kahn Swick & Foti, LLC ("KSF"), and Lawrence "Larry" Vincent—filed the Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses. (ECF No. 820). Several other firms have also moved for fees and expenses, namely Federman & Sherwood, (ECF No. 812), Kilgore & Kilgore, PLLC (ECF No. 815), and Robbins Geller Rudman & Dowd LLP, (ECF No. 817). Robbins Geller Rudman & Dowd has since withdrawn its request for fees and instead seeks only expenses. (ECF No. 823).

On July 31, 2017, the Court held a final fairness hearing regarding the Motion for Final Approval and heard argument on the fee and expense motions. For the reasons stated below and

on the record, the Motion for Final Approval of Class Action Settlement and Plan of Allocation is **GRANTED**;  Class Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses is **GRANTED**;  Federman & Sherwood's Motion for Attorney Fees and Reimbursement of Expenses is **GRANTED IN PART** and **DENIED IN PART**;  Kilgore & Kilgore's Motion for Award of Attorneys' Fees and Expenses is **GRANTED IN PART** and **DENIED IN PART**; and Robbins Geller Rudman & Dowd's Motion for Award of Expenses is **GRANTED**.

## I. Factual and Procedural Background

### a. Background of the Case

> Erica P. John Fund, Inc. (EPJ Fund), is the lead plaintiff in a putative class action against Halliburton and one of its executives (collectively Halliburton) alleging violations of section 10(b) of the Securities Exchange Act of 1934, and Securities and Exchange Commission Rule 10b–5.  According to EPJ Fund, between June 3, 1999, and December 7, 2001, Halliburton made a series of misrepresentations regarding its potential liability in asbestos litigation, its expected revenue from certain construction contracts, and the anticipated benefits of its merger with another company—all in an attempt to inflate the price of its stock. Halliburton subsequently made a number of corrective disclosures, which, EPJ Fund contends, caused the company's stock price to drop and investors to lose money.

*Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2405–08 (2014) (*Halliburton I*).

Numerous complaints alleging misrepresentations by Halliburton were filed in 2002 and consolidated into this action.  (ECF No. 22).  Four lead plaintiffs were appointed, including the Archdiocese of Milwaukee Supporting Fund, Inc. ("AMSF"), the precursor in name to EPJF. (*Id.* at 22).  Schiffrin & Barroway, LLP ("S&B") was appointed as lead counsel, and Federman & Sherwood ("F&S") and The Emerson Firm were appointed co-liaison counsel.  (*Id.*)

On May 10, 2004, all lead plaintiffs except for AMSF moved for preliminary approval of settlement, asserting that all claims had been settled for $6 million.  (ECF No. 94).  AMSF opposed the settlement, arguing that it had not been included in settlement discussions and that

the proposed figure was insufficient. AMSF further moved to have S&B removed as lead counsel. Following a final fairness hearing, the Court denied approval and held that there was insufficient proof that the proposed settlement was fair, reasonable, and adequate. (ECF No. 133 at 16). On October 7, 2004, Kilgore & Kilgore, PLLC ("K&K") was appointed local counsel for AMSF. (ECF No. 149). On May 3, 2005, S&B was removed as lead counsel. (ECF No. 195). AMSF became the sole remaining lead plaintiff in the action, and at its request and with the Court's approval, Scott+Scott, LLP and Lerach Coughlin Stoia Geller Rudman & Robbins LLP were appointed co-lead counsel. (*Id.*)

In February of 2007, Scott+Scott and Lerach Coughlin Stoia Geller Rudman & Robbins were relieved of their duties as lead counsel and were replaced by BSF. (ECF No. 308). AMSF subsequently changed its name to the "Erica P. John Fund, Inc." (ECF No. 472). At the class certification stage, the case was subject to multiple appeals, and the Supreme Court granted certiorari twice to resolve various issues. *See Halliburton I*, 563 U.S. 804 (2011); *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014) (*Halliburton II*). The following excerpt from *Halliburton II* provides a concise summary of the procedural history and legal issues raised during this stage:

> EPJ Fund moved to certify a class comprising all investors who purchased Halliburton common stock during the class period. . . . [E]xcept for one difficulty, the court would have also concluded that the class satisfied the requirement of Rule 23(b)(3) that "the questions of law or fact common to class members predominate over any questions affecting only individual members." The difficulty was that Circuit precedent required securities fraud plaintiffs to prove "loss causation"—a causal connection between the defendants' alleged misrepresentations and the plaintiffs' economic losses—in order to invoke Basic's presumption of reliance and obtain class certification. Because EPJ Fund had not demonstrated such a connection for any of Halliburton's alleged misrepresentations, the District Court refused to certify the proposed class. The United States Court of Appeals for the Fifth Circuit affirmed the denial of class certification on the same ground. *Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*, 597 F.3d 330 (2010).

We granted certiorari and vacated the judgment, finding nothing in "Basic or its logic" to justify the Fifth Circuit's requirement that securities fraud plaintiffs prove loss causation at the class certification stage in order to invoke Basic's presumption of reliance. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. — —, ——, 131 S.Ct. 2179, 2185–2186, 180 L.Ed.2d 24 (2011) (*Halliburton I*). "Loss causation," we explained, "addresses a matter different from whether an investor relied on a misrepresentation, presumptively or otherwise, when buying or selling a stock." We remanded the case for the lower courts to consider "any further arguments against class certification" that Halliburton had preserved.

On remand, Halliburton argued that class certification was inappropriate because the evidence it had earlier introduced to disprove loss causation also showed that none of its alleged misrepresentations had actually affected its stock price. . . . The District Court declined to consider Halliburton's argument, holding that the Basic presumption applied and certifying the class under Rule 23(b)(3).

The Fifth Circuit affirmed. 718 F.3d 423 (2013). The court found that Halliburton had preserved its price impact argument, but to no avail. *Id.,* at 435–436. While acknowledging that "Halliburton's price impact evidence could be used at the trial on the merits to refute the presumption of reliance," *id.,* at 433, the court held that Halliburton could not use such evidence for that purpose at the class certification *2407 stage, *id.,* at 435. "[P]rice impact evidence," the court explained, "does not bear on the question of common question predominance [under Rule 23(b)(3)], and is thus appropriately considered only on the merits after the class has been certified." *Ibid.* We once again granted certiorari, this time to resolve a conflict among the Circuits over whether securities fraud defendants may attempt to rebut the Basic presumption at the class certification stage with evidence of a lack of price impact.

*Halliburton II*, 134 S. Ct. at 2405–08. In *Halliburton II*, the Supreme Court held that Halliburton could introduce evidence of a lack of price impact at the class certification stage to show the absence of predominance. *Id.* at 2414–17. The Supreme Court again vacated the judgment of the Fifth Circuit and remanded the case to this Court for further proceedings. *Id.* at 2417. After briefing and oral argument addressing *Halliburton II*, this Court certified the class. (ECF No. 601). After Defendants took another appeal to the Fifth Circuit, EPJF filed the Stipulation of Settlement. (ECF No. 794).

### b. Summary of the Settlement

The Stipulation of Settlement is between EPJF, on behalf of itself and each of the class members, and Defendants Halliburton Company and David Lesar. (ECF No. 794). Plaintiffs are

agreeing to release all claims based on the purchase or acquisition of common stock during the Class Period, which is defined as between August 16, 1999, and December 7, 2001, inclusive. The Parties agreed to settle the case for $100,000,000.00 subject to the Court's approval. The Stipulation of Settlement does not include claims stemming from purchases of stock between December 8, 2001, and July 22, 2002, which are part of the *Magruder* putative class action. *See Magruder v. Halliburton Co.*, No. 3:05-cv-1156-M (N.D. Tex.). These claims are expressly not released.

## II. Motion for Final Approval of Class Action Settlement

Under Rule 23(e), a court must review any "settlement, voluntary dismissal, or compromise" of the "claims, issues, or defenses of a certified class." FED. R. CIV. P. 23(e). Rule 23(e) establishes certain procedures in considering a proposed settlement, each of which will be considered in turn:

> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

*Id.*

### a. Notice Must Be Directed in a Reasonable Manner to All Class Members

Notice of the settlement was reasonable, provided ample due process,[1] and satisfied the requirements for settlement notices set out in the Private Securities Litigation Act ("PSLA").[2] Notice was disseminated through the procedures provided in the Court's Preliminary Approval Order. (ECF No. 805). In the Motion for Final Approval, Class Counsel stated that by April 14, 2017, 42,194 copies of the notice had been mailed to potential class members identified through Halliburton's transfer agent records and their nominees, and as of June 28, 2017, an additional 67,008 copies had been sent. (ECF No. 818 at 21). Notice was published in *Investor's Business Daily* and disseminated on PR Newswire. (*Id.*) The Claims Administrator maintained a toll-free phone number and a website providing additional information; as of April 27, 2017, the Claims Administrator had received 56 calls and 174 hits on the website. (*Id.*) In terms of timing, the

---

[1] "There are no rigid rules to determine whether a settlement notice satisfies constitutional or Rule 23(e) requirements[.]" *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). Instead, "a settlement notice need only satisfy the broad reasonableness standards imposed by due process." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) (internal quotation marks omitted). Due process is satisfied if the notice provides class members with the "information reasonably necessary for them to make a decision whether to object to the settlement." *Id.*; *see also Wal–Mart Stores*, 396 F.3d at 114 (explaining that "the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings"). However, due process does not require actual notice to each party intended to be bound by the adjudication of a representative action. *Mullane v. Cent. Hanover Bank & Trust. Co.*, 339 U.S. 306, 313–14 (1950) ("A construction of the Due Process Clause which would place impossible or impracticable obstacles in the way could not be justified."); *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110–11 (10th Cir. 2001) (holding Rule 23 and due process requisites satisfied where the record indicated that only seventy-seven percent of class members actually received notice of the settlement).

[2] The PSLA requires that notices of settlement must state: (A) the amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis; (B) if the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter (as is the case here), a statement from each settling party concerning the issue or issues on which the parties disagree; (C) if any of the settling parties or their counsel intend to apply to the court for an award of attorneys' fees or costs from any fund established as part of the settlement, a statement indicating which parties or counsel intend to make such an application, the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought; (D) the name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members concerning any matter contained in any notice of settlement published or otherwise disseminated to the class; (E) a brief statement explaining the reasons why the parties are proposing the settlement; (F) such other information as may be required by the court. 15 U.S.C. § 78u-4(a)(7)(A)–(F).

class members had 87 days between the initial mailing of the notice on April 14, 2017, and the deadline to request exclusion from the class, which was on July 16, 2017. *See DeJulius v. New Eng. Health Care Emps. Pension Fund*, 429 F.3d 935, 946 (10th Cir. 2005) (notice program upheld as providing sufficient due process even though 70.7% of the class members received fewer than thirty-two days' notice); *Silber v. Mabon*, 18 F.3d 1449, 1452, 1454 (9th Cir. 1994) (due process requirement and Rule 23 satisfied when settlement notices were sent out forty days before the opt-out deadline). Furthermore, the fairness hearing was scheduled more than 75 days after the notice date. *See Schwartz v. TXU Corp.*, 2005 WL 3148350, at *11 (N.D. Tex. Nov. 8, 2005) (stating that a gap of 62 days between when notice was first sent out and the fairness hearing was adequate). Except for the lead plaintiff in *Magruder*, the Court received no objections to the settlement, and only one objection to the fees sought.

### b. The Proposed Settlement Must be Fair, Reasonable, and Adequate

Courts evaluate the *Reed* factors to determine whether a proposed class action settlement is fair, reasonable, and adequate. *See Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983). The *Reed* factors are: (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members. *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004). In light of the *Reed* factors, the proposed settlement is fair, reasonable, and adequate.

### i. Evidence that the Settlement Was Obtained by Fraud or Collusion

Nothing in the record indicates that the current settlement was the result of secret negotiations or improper collusion. No parties (other than the lead plaintiff in *Magruder*) have

objected, and those objections do not assert any fraud or collusion.  Furthermore, the settlement was obtained through formal mediation before former U.S. District Judge Layn R. Phillips, which strongly suggests that the settlement was not the result of improper dealings.  *See In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (noting that the "presence of a neutral mediator" is a factor "weighing in favor of a finding of non-collusiveness").

### ii.   The Complexity, Expense, and Likely Duration of the Litigation

Having been heard twice by the Supreme Court and multiple times by the Fifth Circuit, and having lasted more than fifteen years, this case is indisputably complex and of lengthy duration.

### iii.   Stage of the Litigation and Available Discovery

The litigation was set for trial, subject to the last appeal.  The parties have produced over 1.3 million documents and have taken 28 fact depositions.  The appendices to the cross-motions for summary judgment exceeded 9,400 pages.

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012) (internal quotation marks omitted).  Here, the parties have engaged in substantial and meaningful discovery, and thus the parties were fully aware of the complete facts and the strengths and weaknesses of their respective positions.

#### iv.   The Probability of Plaintiffs Prevailing on the Merits

EPJF succeeded in certifying the class on the December 7, 2001, disclosure and had a not insignificant probability of prevailing on the merits.  However, there remained a substantial risk for all parties in proceeding to trial.

#### v.   Range of Possible Recovery and Certainty of Damages

In the Motion for Final Approval, EPJF states that the "$100,000,000 all cash recovery constitutes approximately 11.8% of the maximum recoverable damages for the Class (approximately $848 million, as determined in consultation with Lead Plaintiff's damages expert)."  (ECF No. 818 at 14).  However, EPJF also points out that Defendants had strong arguments that the alleged misrepresentations were not wholly actionable, which would have limited "the maximum recoverable damages to as low as $233 million according to Lead Plaintiff's damages expert."[3]  (*Id.* at 14-15).  Under this lower recovery, the $100 million settlement would constitute 42.9% of the maximum recoverable damages for the class.

The focus of this factor is whether the settlement falls within the range of reasonableness.  The Court is not to try the case via the fairness hearing because "the very purpose of the compromise is to avoid the delay and expense of such a trial."  *Reed*, 703 F.2d at 172.  In ascertaining whether a settlement falls "within the range of possible approval," courts will compare the settlement amount to the relief the class could expect to recover at trial, i.e., the strength of the plaintiff's case.  *See, e.g.*, *In re Nat'l Football League Platers' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) ("To determine whether a settlement falls 'within the range of possible approval,' a court must 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'").  "The fact that a proposed settlement may

---

[3] At the final settlement hearing, Lead Plaintiff's damages expert provided testimony on how these estimated recoveries were calculated.

only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Parker v. Anderson*, 667 F.2d 1204, 1210 n.6 (5th Cir. 1982) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974)).

Here, the recovery is 11.8% to 42.9% of the maximum possible recovery, depending on the conservativeness of the figures set forth by EPJF. As final approval is frequently given to settlements even when "the settlement amount is a very small fraction of the damages amount projected by the Plaintiffs," this recovery is reasonable in light of the possible damages. *See In re Enron Corp. Sec., Derivative, & ERISA Litig.*, 228 F.R.D. 451, 566 (S.D. Tex. 2005). Even the "low" estimate, 11.8%, is a fairly sizeable recovery compared to other approved securities class action settlements. *See, e.g.*, *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483 (S.D.N.Y. 2009) (approving a settlement representing two percent of aggregated expected recovery). Furthermore, the amount to be recovered is more than fifteen times what the Court rejected in 2004, when it found a $6 million settlement not fair, reasonable, or adequate.

### vi. Opinions of Class Counsel, Class Representatives, and Absent Class Members

Class Counsel and Lead Plaintiff all agree to the settlement. *See also Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."). After notice to the class was given, the only person objecting to the Settlement is Magruder, who is not a member of the class. "Receipt of few or no objections can be viewed as indicative of the adequacy of the settlement." *In re Enron Corp.*, 228 F.R.D. at 567 (internal quotation marks omitted).

### c. The Parties Seeking Approval Must File a Statement Identifying Any Agreement Made in Connection with the Proposal

Rule 23(e) requires "[t]he parties seeking approval [to] file a statement identifying any agreement made in connection with the proposal." FED. R. CIV. P. 23(e)(3).  This requirement does not only concern disclosure of the basic settlement terms; "[i]t aims instead at related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others."  *Id.* Committee Notes (2003).  "The spirit of [Rule 23(e)(3)] is to compel identification of any agreement or understanding," written or oral, "that might have affected the interests of class members by altering what they may be receiving or foregoing."  *Slipchenko v. Brunel Energy, Inc.*, 2015 WL 338358, at *6 (S.D. Tex. Jan. 23, 2015) (quoting MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.631 (2004)).

The parties have satisfied this requirement by filing the Stipulation of Settlement, which publicly discloses the terms of the agreement between EPJF and Defendants made in connection with the settlement.  The Stipulation also describes a "supplemental confidential agreement" between the parties, which "gives Halliburton the right, but not the obligation, to terminate the settlement in the event that a certain portion of the Class delivers timely and valid requests for exclusion from the Class."  (ECF No. 794 at 36-37).

### d. An Additional Opt-Out Opportunity

Rule 23(e)(4) provides that "[i]f the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so."  Rule 23(e)(4) "comes into play when the opt-out opportunity expired before the members received notice of a proposed settlement."  *Slipchenko*, 2015 WL

338358, at *7.  This factor is inapplicable here.  The members of the class received notice of the Settlement well before the opt-out opportunity expired.[4]

### e. Class Member Objections

Class members must be provided an opportunity to object to the proposed settlement. FED. R. CIV. P. 23(e).  The notice sent to the class here informed them of their right to object and outlined the process for doing so.  To date, there have been a total of two objections filed to any aspect of the settlement: one by Patricia Magruder, the lead plaintiff in the *Magruder* class action, to the settlement itself, (ECF No. 810), and one by Channa Weeratunge in a one-page objection to Class Counsel's Motion for Award, (ECF No. 808).  As discussed later below, the Court holds that the fee award sought by Class Counsel is reasonable.

Magruder objects to the proposed settlement as being (1) unfair to the shareholders, and (b) an "unlawful infringement on the right of the Magruder Class Claims."  (ECF No. 810 at 1). Magruder argues that the release provided for in the Stipulation of Settlement is too broad, arguing that EPJF has "abandoned all other claims, and those [abandoned] claims are the subject of the Magruder Action."  (*Id.* at 4).

Magruder's objection is **OVERRULED**.  Because she is not a member of the class in this case, she lacks standing to object to the settlement.  An objector who does not prove her membership in the class lacks standing to object to a settlement reached in a securities class action.  *See Feder v. Electronic Data Systems Corp.*, 248 F. App'x 579, 580 (5th Cir. 2007) ("[O]nly class members have an interest in the settlement funds, and therefore only class members have standing to object to a settlement."); *see also In re Deepwater Horizon*, 739 F.3d 790, 809 (5th Cir. 2014) (holding that the district court did not abuse its discretion in deeming

---

[4] The deadline to submit requests for exclusion from the class was July 10, 2017.  (ECF No. 805 at 7).

objectors who did not substantiate their membership in the class to have waived and forfeited their objections to settlement); *Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942, 974–75 (E.D. Tex. 2000) (noting that an objector who failed to substantiate his membership in the class did not have "proper standing" to object to class action settlement).

Magruder, as the party seeking to establish jurisdiction, bears the burden of proving standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The Stipulation of Settlement defines the class as "all Persons (including, as to all such Persons, their beneficiaries) who purchased or otherwise acquired common stock of Halliburton Company between August 16, 1999 and December 7, 2001."[5] (ECF No. 794 at 3). Magruder purchased her shares on December 10, 2001.[6] (ECF No. 810 at 2). Magruder provides no other evidence showing that she is a member of the Class and cites to no other authority to suggest that non-class members have standing to object to a proposed settlement.

Instead, Magruder states that she "derives her status to object to this current settlement from (1) being an original objector to the *[earlier]* settlement and (2) as an intervenor who is now Lead Class Plaintiff in the Magruder Class Action." (ECF No. 810 at 3). The fact that Magruder is the lead plaintiff in another class action is irrelevant for determining standing to object to the proposed settlement in this class action. Furthermore, Magruder cites to no authority that being an objector in the earlier $6 million settlement gives standing for her to object now, after her case was severed from this action by the Court's June 3, 2005, Order. (ECF No. 207). Magruder's case became a distinct, independent action upon severance, and she did

---

[5] In response to the Court's March 21, 2017, Order, (ECF No. 802), EPJF and Halliburton updated the definition of "Released Claim" to remove any ambiguity about whether the release covered Magruder's claims. (*See* ECF No 804).

[6] "Patricia A. Magruder purchased 200 shares of Halliburton stock on December 10, 2001 at a price of $13.97 per share through her online account at CSFB Direct. December 10, 2001 (a Monday) was the first trading day after December 7, 2001 (a Friday). She continues to hold those shares to this date." (ECF No. 810 at 2).

not retain membership in this class.  *See also Allied Elevator, Inc. v. E. Tex. State Bank of Buna*, 965 F.2d 34, 36 (5th Cir. 1992) ("Severance under Rule 21 creates two separate actions or suits where previously there was but one.  Where a single claim is severed out of a suit, it proceeds as a discrete, independent action, and a court may render a final, appealable judgment in either one of the resulting two actions notwithstanding the continued existence of unresolved claims in the other.").

### III.    Class Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses

Class Counsel applies for attorney's fees in the total combined amount of $33,333,333.33, or one-third of the Settlement Fund, plus interest.  The request for one-third of the Fund is intended as an award to BSF, KSF, and Lawrence "Larry" Vincent, who "served as local counsel to BSF and later KSF in this action."  (ECF No. 820 at 4).  Class Counsel indicates that the award will be divided among Class Counsel as follows:

> BSF and KSF have agreed, after paying Mr. Vincent at his lodestar, with the same negative multiplier as Class counsel is seeking, to share remaining fees on a 65/35% basis with BSF receiving 65% of the fees and KSF 35%.

(*Id.* at 4 n.1).  In addition, Class Counsel seeks reimbursement for $5,969,540.84 in expenses, plus interest.  (*Id.* at 3).  Class Counsel also asks for a $100,000 compensation award, plus interest, to Lead Plaintiff.  (*Id.*)

Class Counsel argues that the requested fees are reasonable under either the "percentage of the fund" method or the "lodestar" method for calculating fees.  In their Reply to the Motion for Award, Class Counsel advocates using a "scaled back lodestar analysis" as a "cross-check" to the percentage method as "a rough gauge of the reasonableness of the proposed fees."  (ECF No. 831 at 5–6).  Class Counsel points to other district courts in the Fifth Circuit that have accepted fee awards calculated under the percentage method in light of the *Johnson* factors and have then

used the lodestar method as a rough means of checking their work. (*Id.* at 5). Class Counsel states that the requested award equates to a "negative multiplier of 0.77 of Class Counsel's lodestar," and thus argues that the requested award is also reasonable under the lodestar method. (ECF No. 820 at 3).

Broadly, Class Counsel argues that they are entitled to this fee for several reasons, including: overcoming the initial denial of class certification in *Halliburton I*, successfully overcoming efforts to eliminate the fraud-on-the-market presumption in *Halliburton II*, serving more than 60 third-party subpoenas, filing eight motions to compel, reviewing more than 1.3 million pages of documents, taking or defending 40 fact depositions, and taking or defending 11 expert depositions. (ECF No. 820 at 2). Class Counsel also describes the settlement as an "exceptional result," which was the result of many years of hard work. (*Id.*)

### a. Legal Standard

The use of a common fund to pay attorney's fees in class action settlements is well established. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). Courts typically use one of two methods for calculating attorney's fees in common fund cases: (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund, or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642–435 (5th Cir. 2012).

Regardless of whether the court uses the percentage method or the lodestar method, it must consider the *Johnson* factors in calculating attorney's fees. The *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989).

The PSLA expressly contemplates the percentage method, providing that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u–4(a)(6); *see also Union Asset Mgmt.*, 669 F.3d at 644–45 (affirming an 18% fee award in a PSLA case, so long as the *Johnson* framework for assessing the reasonableness of a fee award is used). The statute does not define "reasonable percentage," but the Motion for Final Approval cites to numerous courts in the Fifth Circuit that have approved applications for fee awards of 33⅓% in class actions. *See, e.g.*, *In re Olicom Sec. Litig.*, No. 94-0511 (N.D. Tex. Aug. 30, 1996); *Sims v. Shearson Lehman Bros., Inc.*, Fed. Sec. L. Rep. (CCH) ¶ 98, 134, at 98,976 (N.D. Tex. Nov. 29, 1993).

If the lodestar method is used, the lodestar is calculated by multiplying the number of hours that an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber*

*Co.*, 685 F.3d 486, 490 (5th Cir. 2012). The party seeking reimbursement of attorney's fees bears the burden of establishing the number of hours expended by presenting adequate time records as evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *See id.* The hours remaining are those reasonably expended, and there is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984)). The relevant legal community is the community in which the district court sits. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The burden is on the movant to "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11. After calculating the lodestar, the Court may either (1) accept the lodestar figure or (2) decrease or enhance it based on the circumstances of the case, taking into account the *Johnson* factors.

"[D]istrict courts in [the Fifth Circuit] regularly use the percentage method blended with a *Johnson* reasonableness check." *Union Asset Mgmt.*, 669 F.3d at 643 (endorsing the use of the percentage method, so long as it is cross-checked with "a meticulous *Johnson* analysis");[7] *see*

---

[7] "To be clear, we endorse the district courts' continued use of the percentage method cross-checked with the *Johnson* factors. We join the majority of circuits in allowing our district courts the flexibility to choose between the

*also In Re: Oil Spill*, 2016 WL 6215974, at \*19 (E.D. La. Oct. 25, 2016) ("[T]he loadstar [sic] cross-check is a streamlined process, avoiding the detailed analysis that goes into a traditional lodestar examination."). Courts often then apply a lodestar calculation as a cross-check of the percentage method. *See City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965696, at \*4 (W.D. La. Mar. 3, 2015) (conducting "a rough lodestar analysis to cross-check the reasonableness of the percentage fee award"); *In re Vioxx Prod. Liab. Litig.*, 2013 WL 5295707, at \*3 (E.D. La. Sept. 18, 2013) ("The lodestar analysis is not undertaken to calculate a specific fee, but only to provide a broad cross check on the reasonableness of the fee arrived at by the percentage method"). The lodestar cross-check is usually applied "to avoid windfall fees, i.e., to ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple." *Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1086 (S.D. Tex. 2012).

Furthermore, courts using a lodestar as a cross-check to the percentage method have relaxed the degree of scrutiny applied to counsel's billing records. *See, e.g.*, *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1086–87 ("Those circuits approving the lodestar cross-check have made it clear that district courts need not scrutinize counsel's billing records with the thoroughness required were the lodestar method applied by itself . . . . In this case, the court has reviewed the fees-and-costs reports that counsel submitted and has examined many of the pages thoroughly. It has not taken the extraordinary amount of time needed, however, for a thorough examination of all the time and billing records that counsel generated for purposes of a standalone lodestar analysis.").

---

percentage and lodestar methods in common fund cases, with their analyses under either approach informed by the *Johnson* considerations." *Union Asset Mgmt.*, 669 F.3d at 644.

Class Counsel argues that the proposed settlement is reasonable under both the percentage method and the lodestar method. Based on the Fifth Circuit's precedent, the Court believes that proceeding with the percentage method analyzed under the *Johnson* factors will be sufficient for analyzing fees. The Court will also perform a simplified lodestar analysis as a cross-check.

### a. Percentage Method

Class Counsel argues that the percentage of the fund that they request for their award of attorney's fees—one-third of the fund, or 33⅓%—is within the range of percentage fees awarded in the Fifth Circuit in other complex cases.

"The Manual for Complex Litigation states that '[a]ttorney fees awarded under the percentage method are often between 25% and 30% of the fund.'" *Klein v. O'Neal, Inc*., 705 F. Supp. 2d 632, 675 (N.D. Tex. 2010) (quoting MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 (2010)); *Schwartz*, 2005 WL 3148350, at *27 ("The requested fee award of 22.2% of the Settlement Fund is consistent with and, in fact, significantly less than awards made in similar cases."). However, numerous courts in this Circuit have awarded fees in the 30% to 36% range.[8]

---

[8] *See Hoeck v. Compusa, Inc. et al.*, No. 3:98–CV–0998–M (N.D. Tex. Oct. 14, 2003) (Lynn, C.J.) (approving 30% fee); *In re Firstplus Fin. Group, Inc. Sec. Litig., Master File*, No. 3:98–CV–2551–M (N.D. Tex. Oct. 14, 2003) (Lynn, C.J.) (approving 30% fee in securities class action); *Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, No. 4:00–CV–355-Y (N.D. Tex. Mar. 9, 2005) (Means, J.) (approving 30% fee in securities class action); *Scheiner v. i2 Techs., Inc., et al.*, No. 3:01–CV–418–H (N.D. Tex. Oct. 1, 2004) (Sanders, J.) (approving fee of 25% of $80 million settlement in securities class action); *Warstadt v. Hastings Entm't, Inc., et al.*, No. 2:00–CV–089–J (N.D. Tex. Mar. 10, 2003) (Robinson, J.) (approving 30% fee in securities class action); *Silver v. UICI, et al.*, No. 3:99-CV-2860–L (N.D. Tex. Mar 3, 2003) (Lindsay, J.) (approving 30% fee in securities class action); *In re Unistar Fin. Serv. Corp. Sec. Litig.*, No. 3:99–CV–1857–D (N.D. Tex. Aug. 17, 2001) (Fitzwater, J.) (approving 30% fee in a securities class action); *Kisilenko v. STB Sys., Inc.*, No. 3:99–CV–2872–M (N.D. Tex. Nov. 3, 2000) (Lynn, C.J.) (approving 30% fee in a securities class action); *In re Landry's Seafood Rests., Inc. Sec. Litig.*, No. H–99–1948 (S.D. Tex. Jun. 13, 2002) (Harmon, J.) (approving 30% fee in securities class action); *In re Intellicall Sec. Litig.*, No. 3:91–CV–0730–P (N.D. Tex. Sept. 22, 1993) (Solis, J.) (approving 30% fee in securities class action); *Robertson, et al. v. Strassner, et al.*, No. H–98–0364 (S.D. Tex. Jan. 5, 2000) (Atlas, J.) (approving 30% fee in a securities class action); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1156 (W.D. La. 1997) (Haik, J.) (approving fee of 36% of $127 million settlement); *Neibert, et al. v. Monarch Dental Corp., et al.*, No. 3:99–CV–762–X (N.D. Tex. Jun. 19, 2000) (Kendall, J.) (approving 30% fee); *In re Olicom Sec. Litig.*, No. 3:94–CV–0511–D (N.D. Tex. Aug. 30, 1996) (Fitzwater, J.) (approving 33–1/3% fee); *Belman, et al. v. Warrington, et al.*, No. H–91–3767 (S.D. Tex. Nov. 16, 1993) (Hoyt, J.) (approving 33% fee); *Sims v. Shearson Lehman Bros., Inc*., Fed. Sec. L. Rep. (CCH) ¶ 98, 134, at

"If the request is relatively close to the average awards in cases with similar characteristics, the court may feel a degree of confidence in approving the award." *Klein*, 705 F. Supp. 2d at 675.

Here, the 33⅓% requested is slightly above the fee range suggested by the Manual for Complex Litigation, but it is not necessarily excessive for that reason alone. The fee request is further analyzed in the context of the *Johnson* factors to see whether it is fair, reasonable, and adequate.

### b. *Johnson* Factors

"The court must scrutinize the agreed-to fees under the standards set forth in [*Johnson*], and not merely ratify a pre-arranged compact." *Strong v. BellSouth Telecomm., Inc.*, 137 F.3d 844, 849 (5th Cir. 1988). The court's analysis under *Johnson* must not be merely conclusory, but must establish grounds for the court's decision on each of the relevant factors. *Klein*, 705 F. Supp. 2d at 676; *but see In re High Sulfur*, 517 F.3d 220, 228–29 (5th Cir. 2008) ("If the district court has articulated and clearly applied the correct criteria, we will not require the trial court's findings to be so excruciatingly explicit in this area of minutiae that decisions of fee awards consume more paper than did the cases from which they arose."). However, "[e]ven though it is apparent that the Johnson factors must be addressed to ensure that the resulting fee is reasonable, not every factor need be necessarily considered." *In re Combustion, Inc.*, 968 F. Supp. 1116, 1135 (W.D. La. 1997).

---

98,976 (N.D. Tex. Nov. 29, 1993) (Kendall, J.) (approving fee of 33–1/3% of $30 million settlement in securities case); *In re ProNet, Inc.1933 Act Sec. Litig.*, No. 3:96–CV–1795–P (N.D. Tex. Nov. 19, 1997) (Solis, J.) (awarding 30% fee); *In re Granada P'ships Sec. Litig.*, No. H–90–0214 (S.D. Tex. Oct. 19, 1992) (Harmon, J.) (approving 30% fee); *Orzel v. Gilliam, et al.*, No. 3:90–CV–0044–G (N.D. Tex. May 16, 1995) (Fish, J.) (approving 30% fee in securities case); *Courtney, et al. v. Am. Airlines, Inc., et al.*, No. 4:97–CV–668–A (N.D. Tex. Sept.3, 1999) (McBryde, J.) (approving 30% fee); *Transamerican Ref. Corp. v. Dravo Corp.*, No. H–88–789 (S.D. Tex. Nov. 16, 1992) (Black, J.) (approving 30% fee); *Plains*, 2001 U.S. Dist. LEXIS 25532 (Rosenthal, J.) (approving 30% fee in securities class action). These cases were compiled by Judge Kinkeade in *Schwartz*, 2005 WL 3148350, at *27.

### i. Factor 1: The Time and Labor Required

This case is over fifteen years old. There are over 800 filings on the docket. The docket indicates that there have been at least 17 hearings. There were three appeals to the Fifth Circuit, and two to the Supreme Court. The Court concludes that this case has required an enormous amount of time and labor.

BSF was appointed Class Counsel on February 23, 2007. (ECF No. 308). In the joint declaration of Carl Goldfarb and Kim Miller, Class Counsel describes the efforts put forth to prosecute Lead Plaintiff's claims over the many years that this case has been pending. (ECF No. 819 at App.01–131). Class Counsel states that it has dedicated over 67,399.7 hours to the prosecution and resolution of the claims against Defendants. (*Id.* at App.64). The joint declaration also describes how Class Counsel "overcame various legal and factual hurdles, including two trips to the U.S. Supreme Court related to class certification, the completion of extensive fact and expert discovery, including at least 40 fact depositions (4 of which were two-day depositions), 11 expert depositions, the review of over 1.3 million pages of documents, and summary judgment and *Daubert* briefing." (*Id.* at App.63).

### ii. Factor 2: The Novelty and Difficulty of the Legal Issues

Class Counsel is correct that the multiple trips to the Supreme Court, and in particular the Supreme Court's reversal of Fifth Circuit precedent in *Halliburton I*, demonstrate the novelty and difficulty of the legal issues in this case:

> Class Counsel had to challenge and ultimately reverse the Fifth Circuit's now discredited precedent holding that plaintiffs had to establish loss causation by a preponderance of the evidence at class certification in order to invoke the fraud-on-the-market presumption. Even after doing so, because of the evolving case law, Class Counsel had to face novel legal questions regarding when and how the fraud-on-the-market presumption could be rebutted, what type of evidence or argument could be used to rebut the presumption at class certification, the quantum of evidence necessary to do so, and even what weight to accord the presumption

during the analysis. The fact that the Supreme Court agreed to hear this case twice, and the Fifth Circuit agreed to hear it three times is one indication of the novelty and difficulty of the issues presented, and weighs in favor of granting Class Counsel's fee request.

(ECF No. 820 at 13–14).

### iii. Factors 3 and 9: The Skill Required to Perform the Legal Service Properly and the Experience, Reputation, and Ability of the Attorneys

In its briefing, Class Counsel lumps in Factor 3, "the skill required to perform the legal service properly," with Factor 9, the "experience, reputation, and ability of the attorneys." (ECF No. 820 at 15). Class Counsel argues that this case required expertise at the trial, appellate, and Supreme Court levels. Furthermore, Class Counsel describes how much of the trial preparation—in particular, discovery and the dispositive motion preparation—occurred at the same time as the issues being heard on appeal. Class Counsel points to David Boies's "decades of experience in complex litigation" and KSF's specialized skills as securities class action litigators. (*Id.* at 16 ("Currently KSF is lead or co-counsel in ten securities putative class action litigations, including a number of high profile actions.")).

Class Counsel also points to the "quality of the opposition faced by Class Counsel" as a relevant factor in assessing their performance. *See Schwartz*, 2005 WL 3148350, at *30 ("The ability of Plaintiff's Counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation."). The Court agrees that, in this case, that was a substantial factor due to the very high quality of defense counsel's work.

### iv. Factor 4: The Preclusion of Other Employment by the Attorney as a Result of Taking the Case

Class Counsel "spent over 67,399 hours prosecuting the Action, with the bulk of that work taking place between February of 2007 and December 2016. Those hours were time that Class Counsel's attorneys could not devote to other matters." (ECF No. 820 at 17). The Court agrees that such a level of work would inevitably preclude other representations.

### v. Factor 5: The Customary Fee

Class Counsel points to similar fees awarded in prior, comparable cases. The Court believes that this is one of the *Johnson* factors that does not necessarily need to be considered in this case, because cases like these do not have "customary fees." *See In re Combustion, Inc.*, 968 F. Supp. at 1135 ("Even though it is apparent that the Johnson factors must be addressed to ensure that the resulting fee is reasonable, not every factor need be necessarily considered.").

### vi. Factor 6: Whether the Fee Is Fixed or Contingent

Class Counsel prosecuted this case on a fully contingent basis, and accordingly, this factor supports the requested fee. The contingent nature of Class Counsel's fee is also significant considering that at numerous points this case stood on shaky ground, such as when the Court denied class certification and was affirmed in doing so by the Fifth Circuit.

### vii. Factor 7: Time Limitations Imposed by the Client or Other Circumstances

This factor does not apply in this case because there is no indication that Lead Plaintiff imposed any time limits in the prosecution of this case.

### viii.  Factor 8: The Monetary Amount Involved and the Results Obtained

The Fifth Circuit has called this factor the "most critical" factor.  *See Migis v. Pearle Vision, Inc*., 135 F.3d 1041, 1047 (5th Cir. 1998) (degree of success is "most critical [*Johnson*] factor") (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

According to Lead Plaintiff's damages expert, if Plaintiffs prevailed at trial, the maximum amount of damages estimated was $848 million, and the minimum was $233 million. A settlement of $100 million reflects a reasonable recovery based on the estimated damages figures that the class could have hoped to recover at trial, and as discussed above, the current settlement is more than fifteen times larger than the earlier settlement that the Court rejected.

### ix.  Factor 10: Whether the Case Is Undesirable

Class Counsel points to BSF being the third lead counsel in this case as evidence of the undesirability of the case, as well as the uphill battle Class Counsel and Lead Plaintiff faced in continuing to prosecute this case after the Court denied class certification in 2008.  Additionally, the "risk of non-recovery" and "undertaking expensive litigation against . . . well-financed corporate defendants on a contingent fee" has been held to make a case undesirable, warranting a higher fee.  *Braud v. Transport Serv. Co*., 2010 WL 3283398, at *13 (E.D. La. Aug. 17, 2010).

### x.  Factor 11: The Nature and Duration of the Professional Relationship with the Client

BSF was appointed counsel for Lead Plaintiff on February 23, 2007, and thus has been Class Counsel for more than a decade.  Considering that Class Counsel was replaced twice before BSF was appointed, the longevity of BSF's appointment indicates that the professional relationship with Lead Plaintiff was positive.

### xi.  Factor 12: Awards in Similar Cases

The 33⅓% requested by Class Counsel is within the range of typical awards, and is not

the highest fee awarded in securities class action cases.  *See In re Combustion*, Inc., 968 F. Supp.

at 1156 (approving fee of 36% of $127 million settlement)*; see also In re Olicom Sec. Litig*., No.

3:94–CV–0511–D (N.D. Tex. Aug. 30, 1996) (approving 33⅓% fee); *Belman, et al. v.*

*Warrington, et al.*, No. H–91–3767 (S.D. Tex. Nov. 16, 1993) (approving fees representing 33%

of the settlement fund in securities case); *Sims v. Shearson Lehman Bros., Inc*., Fed. Sec. L. Rep.

(CCH) ¶ 98, 134, at 98,976 (N.D. Tex. Nov. 29, 1993) (approving fee of 33⅓% of $30 million

settlement in securities case).

### xii.  Conclusion

After considering all of the *Johnson* factors, the Court concludes that the percentage

requested by Class Counsel is reasonable and fair.  Compared to other common fund cases in this

Circuit, Class Counsel is not asking for an unusually large or high fee.  Furthermore, there are

significant considerations that further justify the fee, such as the dogged perseverance Class

Counsel showed in this case, such as eventually convincing the Supreme Court to overturn

adverse Fifth Circuit precedent.  Other than Channa Weeratunge's objection, which is

**OVERRULED**, there were no objections from class members to the fee award.  Although the

lack of objections is not a *Johnson* factor, the Court finds it relevant in considering the

reasonableness and fairness of the award.

### c.  Lodestar Method

A court is to apply a lodestar calculation as a cross-check of the percentage method.

Under this method, the court takes the recorded hours worked by the attorneys and multiplies

them by a reasonable hourly rate.  *See, e.g.*, *Forbush v. J.C. Penney Co*., 98 F.3d 817, 821 (5th

Cir. 1996). The resulting lodestar amount may then be adjusted upward or downward depending on the court's application of the *Johnson* factors. *See id.*

BSF presents evidence that it has spent 42,489.70 hours of attorney and other professional time prosecuting this action since February 23, 2007. (ECF No. 819 at App.133-34). Based on current rates,[9] BSF assert that its lodestar is equal to $26,738,490.50. (*Id.*) KSF asserts that it has been involved as "Special Counsel to Lead Plaintiff" since 2009. (*Id.* at App.137). KSF asserts that the firm has spent 24,910 hours prosecuting this action, resulting in a total lodestar amount of $16,385,469.50. (*Id.* at App.137-38)

Lawrence Vincent states that he began working with Lead Plaintiff in 2006, specifically to investigate the removal of then-lead class counsel William Lerach. (ECF No. 819 at App.142). After BSF was appointed lead counsel, Vincent states that he assisted primarily in appellate briefing and serving as local counsel. Vincent asserts that he has performed 321.8 hours of work in connection with the prosecution of the case and that the hourly rate he charges in comparable and non-contingent matters is $600, which results in his lodestar of $193,080. (*Id.* at App.140).

The total lodestar for Class Counsel (BSF, KSF, and Vincent) is $43,317,040.00, representing 67,721.5 hours of work.[10] The Court has examined the contemporaneous billing records submitted by Class Counsel and find them reasonable. The requested fee of $33,333,333.33 is less than the lodestar; specifically, Class Counsel is asking for 77% of their

---

[9] Both BSF and KSF state that each firm's lodestar was compiled using 2017 hourly rates for individuals still at each respective firm, and for individuals no longer at the firm, by using their last hourly rates. (ECF No. 819 at App.133).

[10] The Motion for Award states that Class Counsel "spent a total of more than 67,399" hours, which is the total number of hours worked by BSF and KSF, excluding Vincent's hours. (ECF No. 820 at 8). Similarly, the Motion for Award states that Class Counsel's total lodestar is $43,123,960.00, which is the total lodestar of BSF and KSF, excluding Vincent's individual lodestar. (*Id.*)

lodestar.[11] Because there is a strong presumption that the lodestar represents a reasonable fee, *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992), the fact that Class Counsel seeks an award less than the lodestar supports finding that the fee award is reasonable.

### d. Expenses

Class Counsel also seeks reimbursement of its reasonable expenses in the amount of $5,969,540.84, plus interest.  (ECF No. 820 at 24).  In the Motion for Preliminary Approval and in the Notice, Class Counsel indicated that it would seek a maximum of $7,500,000.00 in expenses, and thus the requested reimbursement is below the noticed expenses cap.  (ECF No. 795 at 16).  Class Counsel has provided a 472-page appendix detailing the expenses for which it seeks reimbursement.  (ECF No. 834).

"Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement."  *Billitteri v. Sec. Am., Inc.*, 2011 WL 3585983, at *10 (N.D. Tex. Aug. 4, 2011).  In *Schwartz*, Judge Kinkeade reimbursed expenses that were "reasonably and necessarily incurred in prosecuting this action and achieving the proposed Settlement."  2005 WL 3148350, at *34.  These expenses included consulting expert fees, transportation, meals and lodging, in-house and outsourced photocopying, research, court reporting fees and deposition transcripts, overnight courier services, postage, and other services. *Id.*

The joint declaration of Carl Goldfarb and Kim Miller, of BSF and KSF, respectively, describes why, and for what, the expenses were incurred.  (ECF No. 819 at App.070–72).  A significant amount—64% of the requested expenses, or $3,818,406.07—was spent on experts

---

[11] The inclusion or exclusion of Vincent's hours in the total lodestar does not dramatically change the 0.77 multiplier.  If Vincent's time is included in the lodestar, the requested fee is 0.7695 of the lodestar (i.e., $33,333,333.33 / $43,317,040).  If Vincent's time is excluded from the lodestar, the requested fee is 0.7729 (i.e., $33,333,333.33 / $43,123,960).

and consultants, which Class Counsel claims were necessary to establish the basic elements of Lead Plaintiff's claims, and thus were necessary in the prosecution of this case. Other large expenditures include document maintenance necessary to process and maintain the 1.3 million documents in this case (11% of total); legal research (7% of total); and mediation fees, which were shared with Defendants (0.6% of total). Overall, the expenses were reasonable and necessary for successful prosecution of this case, and there have been no objections to the amount requested. Accordingly, the expenses are reimbursed.

### e. $100,000 Award for Lead Plaintiff

Class Counsel seeks a $100,000 award for Lead Plaintiff as compensation for the time it dedicated in supervising this action. (ECF No. 820 at 3). Lead Plaintiff provides a declaration from the CEO of EPJF, Paula John, detailing the involvement of the Lead Plaintiff in this action, including discussing strategy, reviewing pleadings, participating in discovery, being deposed, and attending mediation. (ECF No. 819 at App.150–57). Paula John and EPJF's CFO, Patrick Byrne, argue that the time spent on this case precluded them from working on other matters. (*Id.* at App.155).

Representative parties may be awarded "reasonable costs and expenses (including lost wages)" relating to the representation of the class:

> The share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class. *Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class.*

15 U.S.C. § 77z-1(4) (emphasis added).

As stated at the July 31, 2017, hearing, the request for the $100,000 award for Lead Plaintiff is granted. Without the hard and diligent work of Lead Plaintiff over fifteen years, this recovery would not have been possible. The requested fee is reasonable based on the value of the time of Lead Plaintiff, and no one has objected to this award.

### f. Scott+Scott Expenses

Scott+Scott does not file a separate motion for its expenses. However, Class Counsel "has included in its application the request by [Scott+Scott] for reimbursement of $300,652.90." (ECF No. 820 at 25). In support, Class Counsel attaches Scott+Scott's expense report, (ECF No. 834), and the declaration of Geoffery Johnson, (ECF No. 819 at App.178-82).

The expenses requested by Scott+Scott are reasonable, and there have been no objections to the amount requested. A significant amount—55% of the requested expenses, or $163,933.33—was spent on experts, consultants, and investigators—which Mr. Johnson claims was necessary to contact confidential witnesses and to prepare confidential witness memoranda used to support allegations in the complaint—and thus was reasonably necessary in the successful prosecution of this case. *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 308 (2007) (allowing scienter to be inferred from confidential sources). Accordingly, the expenses are reimbursed.

## IV. F&S's Motion for Award of Attorney Fees and Reimbursement of Expenses

### a. Fees

For their work as original co-liaison counsel on behalf of the class, F&S seeks an award of attorney's fees in the amount of its actual lodestar, without a multiplier or interest, of $200,703.75. (ECF No. 812 at 1). F&S began serving as local counsel to original lead counsel, S&B, on December 6, 2002. (ECF No. 22). On February 10, 2005, following the failed $6 million settlement, S&B moved to withdraw as lead counsel. (ECF No. 160). On May 3, 2005,

the Court appointed EPJF as the sole Lead Plaintiff and appointed Scott+Scott and Lerach Coughlin Stoia Geller Rudman & Robbins as lead counsel.  (ECF No. 195).  F&S's involvement as counsel ceased at this time.

Lead Plaintiff opposes F&S's request for fees.  (ECF No. 825).  As a preliminary matter, deference is given to Lead Plaintiff's determination that non-lead counsel is not entitled to fees. The Third Circuit recognizes "that a presumption of correctness should . . . be accorded to the lead plaintiff's decision that a non-lead counsel's work, not made pursuant to an agreement between lead counsel and lead plaintiff, is not entitled to fees to be paid out of the common fund."  *In re Cendant Corp. Litig.*, 404 F.3d 173, 199 (3d Cir. 2005).  In *In re Enron*, Judge Harmon noted that she "does not believe that the Fifth Circuit would go so far as to accord a presumption of correctness, but would certainly give the Lead Plaintiff's determination considerable weight" in assessing whether fees should be denied to non-lead counsel.[12]  586 F. Supp. 2d at 765.  The Fifth Circuit does not appear to have commented on the amount of deference to be accorded.

The Court finds persuasive Lead Plaintiff's opposition to F&S receiving fees and note additionally that F&S has not articulated any substantial or independent benefit conferred to the Class.  *In re Enron Corp.*, 2008 WL 2566929, at *3 ("If an attorney creates a substantial benefit for the class in this period . . . then he or she will be entitled to compensation.").  If anything, F&S's efforts in supporting the failed settlement delayed the progression of the case and

---

[12] In an earlier opinion, Judge Harmon adopted the Third Circuit's test for identifying when the presumption of correctness, or "the weight that might be accorded the decision of a properly selected and effective Lead Plaintiff by the Fifth Circuit," can be overcome.  2008 WL 2566929, at *5 (S.D. Tex. June 24, 2008).  Specifically, Judge Harmon stated that a lead plaintiff's opposition to non-lead counsel receiving fees could be overcome if non-lead counsel could show (1) that the lead plaintiff had failed in its fiduciary representation of the class, or (2) that the denial of fees was erroneous because non-lead counsel "can and do specifically identify the benefits they independently provided to the class that would not have been provided by the services of lead counsel."  *Id.* (citing *Cendant*, 404 F.3d at 199–200).

threatened potential recovery.  A significant portion of F&S's requested fees are related to the proffered $6 million settlement, which was rejected, in part, because counsel failed to include all of the lead plaintiffs in settlement negotiations and failed to disclose material details to them. (ECF No. 133 at 12-13).  Further, F&S requests fees attending a hearing on August 25, 2003, on EPJF's Motion to Show Cause as to whether S&B violated its fiduciary duties to the class.  If F&S was there in a supportive capacity to S&B, it was in support of arguments made against EPJF's Motion and, therefore, arguments made against the Class.  *Cf. In re Enron*, 2008 WL 2566929, at *3 ("[An attorney] whose efforts create, discover, increase or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation including [fees].").  F&S also improperly requests fees in preparing a fee application in connection with the rejected $6 million settlement.[13]  *See Hadden v. Standard Supply & Hardware Co.*, 1997 WL 403239, at *3 (E.D. La. July 17, 1997) ("[W]ork relating to attorneys' fees applications is not compensable from a common fund and that the time spent working on attorneys' fees applications and research regarding attorneys' fees should not be included in the lodestar amount.").  The record overall indicates that F&S performed administrative services that did not benefit the class.  *See also In re Adelphia Communs. Corp. Sec. & Derivative Litig.*, 2008 U.S. Dist. LEXIS 67220 at *15-16 (S.D.N.Y. Sep. 3, 2008) ("[T]he filing of a complaint, without more, is not fee-worthy" unless the filing attorneys "alone discover grounds for a suit, based on their own investigation rather than on public reports" or lay out "factual research or legal theories that lead counsel did not discover, and upon which lead counsel later rely.").

---

[13] For example, 3.25 hours on August 11, 2004, for "Work for motion for approval of fees."  (ECF No. 814-1 at 21).

Because F&S did not provide a substantial or independent benefit to the Class and acted contrary to the wishes of at least the current Lead Plaintiff, who opposes its fee application, its requested fee award is denied.

### b. Expenses

F&S seeks reimbursement of out of pocket expenses in the amount of $10,922.05, without interest. (ECF No. 812 at 1). "Lead Plaintiff does not oppose reimbursement of [F&S's] expenses reasonably incurred in connection with the prosecution of the litigation." (ECF No 825 at 5).

F&S provides detailed expense sheets in support of its request. (ECF No. 814-1 at 39). However, some of the expenses appear to have been expended in support of the failed $6 million settlement. One entry for May 29, 2004, describes a $1,772.80 expense labeled "Copies-stipulation and settlement." (*Id.* at 37). Based on the docket sheet, the stipulation to the failed $6 million settlement was filed on May 10, 2004, and thus it appears that F&S seeks to be reimbursed for making copies of the earlier settlement which, if it had succeeded, would have dramatically reduced the class's recovery. F&S also requests reimbursement for expenses related to attending a hearing on August 25, 2003, on EPJF's Motion to Show Cause as to whether S&B violated its fiduciary duties to the class, which, as discussed, was detrimental to the class. Accordingly, the Court determines that the following expenses were not reasonably and necessarily incurred in prosecuting this action and in achieving the proposed settlement:

| Date | Expense | Amount |
|---|---|---|
| August 25, 2003 | Car Rental | $47.84 |
| August 25, 2003 | Meals | $36.50 |
| August 25, 2003 | Parking | $6.50 |
| May 29, 2004 | Copies-stipulation and settlement | $1,772.90 |
| May 29, 2004 | Postage-stipulation and settlement | $64.80 |
| | Total: | $1,928.54 |

The remainder of the claimed expenses of $8,993.51 is reimbursed.

**V.    K&K's Motion for Award of Attorneys' Fees and Expenses**

**a.  Fees**

K&K seeks $132,600.20 in fees for its work performed as local counsel for AMSF.  (ECF No. 815).  K&K's involvement as counsel ceased when Scott+Scott and Lerach Coughlin Stoia Geller Rudman & Robbins were relieved of their duties as lead counsel, and were replaced by BSF.  (ECF No. 308).  Lead Plaintiff opposes K&K's request for fees.  (ECF No. 825).

Unlike F&S, K&K was more actively involved in the litigation of this case, particularly in its opposition to the failed settlement.  K&K participated in "strategy regarding opposition to the Settlement, briefing on the opposition, and the preparation for . . . the hearing on the opposition."  (ECF No. 815 at 3).  Its work benefited the class by ultimately contributing to the current settlement.  K&K also assisted in drafting the third and fourth consolidated class action complaints, briefs on the motions to dismiss, traveling to California for strategy and discovery meetings, and traveling to Houston for mediation.  *Id.*  Notably, Defendants' Motion to Dismiss the third consolidated class action complaint was denied, in part, based on the relation-back doctrine, the arguments for which were "developed and briefed by K&K."  (Anderson Aff. ¶ 9, ECF No. 815-1).  Despite Lead Plaintiff's opposition, the Court finds that K&K has provided substantial or independent benefit to the class.  Moreover, the Court has examined the contemporaneous billing records and find them reasonable.  Accordingly, and for the reasons similar to the ones discussed in awarding fees to Class Counsel, the Court awards attorney's fees to K&K.

However, the Court makes two modifications to the fee award.  The total lodestar requested by K&K is $132,600.20, representing 305 hours of work.  The lodestar is based on

current billing rates. (ECF No. 815 at 6 & n.4). The lodestar must be calculated using historical rates, as opposed to current rates. It is true that "[t]he prevailing rate, unless other factors dictate, is the current rate that is paid to attorneys even though the litigation spans a number of years." *See Pruett v. Harris Cty. Bail Bond Bd.*, 593 F. Supp. 2d 944, 946 (S.D. Tex. 2008). One such factor that militates against using the current rate is when counsel seeks fees based mostly on work performed during the early stages of litigation. *See Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1280 (N.D. Cal. 2014) (reducing fee award from current (2014) rate because "overwhelming majority of [counsel's] time spent in this case (approximately 93%) occurred in 2013 and earlier"). K&K stopped all work on this case on February 23, 2007, more than 10 years before it submitted its request for fees. While the rate provided by K&K may reasonably reflects the value of its services today, using that rate causes an unwarranted increase in the overall fee award. Based on the record, the fee request, adjusted for historical rates, is $118,391.88. (*See* ECF No. 826 at ¶ 3c). Second, circumstances warrant an additional downward adjustment of K&K's lodestar. K&K should not be entitled to receive proportionally more attorney's fees than Class Counsel; the Court thus applies a 0.77 multiplier, the same multiplier applied to Class Counsel's lodestar. Accordingly, K&K is awarded $91,161.75 in attorney's fees.

### b. Expenses

K&K asks for $7,380.87 in expenses, plus interest, and provides a detailed expense report. (ECF No. 815 at 12). As with F&S, "Lead Plaintiff does not oppose reimbursement of [K&K's] expenses reasonably incurred in connection with the prosecution of the litigation." (ECF No. 820 at 5). After reviewing the expense report provided by K&K, the Court finds that

the expenses were reasonable and necessary for successful prosecution of this case.

Accordingly, the expenses are reimbursed.

## VI.    RGRD's Motion for Award of Expenses

RGRD served as co-lead counsel from May 3, 2005, through February 23, 2007.  RGRD

initially moved for fees and expenses; however, RGRD has since withdrawn its request for an

award of attorney's fees, and instead seeks only reimbursement of expenses.  (ECF No. 823).

RGRD seeks reimbursement for $112,513.85 in expenses.  (ECF No. 817 at 6).  RGRD

submits exhibits detailing its expenses, separated by category.  (ECF No. 817-1 at 6-7).  There

are no objections to RGRD's request for expenses.  After reviewing the evidence provided by

RGRD, the Court finds that the expenses were reasonable and necessary for successful

prosecution of this case.  Accordingly, the expenses are reimbursed.

## VII.    Conclusion

For the reasons stated below and on the record, the Motion for Final Approval of Class

Action Settlement is **GRANTED**.  Class Counsel's Motion for Award of Attorneys' Fees and

Reimbursement of Litigation Expenses is **GRANTED**.  Class Counsel is awarded

$33,333,333.33 in attorney's fees, plus interest accrued thereon.[14]  Class Counsel is reimbursed

$5,969,540.84 for expenses, plus interest accrued thereon.  Lead Plaintiff is awarded $100,000,

plus interest accrued thereon.  Scott+Scott is reimbursed $300,652.90 for expenses, plus interest

accrued thereon.

Federman & Sherwood's Motion for Attorney Fees and Reimbursement of Expenses is

**GRANTED IN PART** and **DENIED IN PART**.  F&S's is reimbursed $8,993.51 for expenses.

Kilgore & Kilgore's Motion for Award of Attorneys' Fees and Expenses is **GRANTED IN**

---

[14] Interest here refers only to the proportionate share of interest accrued by the Settlement Fund while held in
escrow.  (ECF No. 794 at 32).

**PART** and **DENIED IN PART**.   K&K is awarded $91,161.75 in attorney's fees, plus interest accrued thereon.  K&K is reimbursed $7,380.87 for expenses, plus interest accrued thereon. Robbins Geller Rudman & Dowd's Motion for Award of Expenses is **GRANTED**.  RGRD is reimbursed $112,513.85 for expenses, plus interest accrued thereon.

      **SO ORDERED.**

April 25, 2018.

**BARBARA M. G. LYNN**
**CHIEF JUDGE**